**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Brigade Leveraged Capital Structures Fund Ltd., Brigade Distressed Value Master Fund Ltd., Tasman Fund LP, Claren Road Credit Master Fund, Ltd., Claren Road Credit Opportunities Master Fund, Ltd., Fore Multi Strategy Master Fund, Ltd., Sola Ltd, Ultra Master Ltd, Solus Opportunities Fund 5 LP,<br><br>Plaintiffs,<br><br>- against -<br><br>The Government Development Bank for Puerto Rico,<br><br>Defendant. | **16-CV-1610**<br><br>**COMPLAINT** |

Brigade Leveraged Capital Structures Fund Ltd., Brigade Distressed Value Master Fund Ltd., Tasman Fund LP, Claren Road Credit Master Fund, Ltd., Claren Road Credit Opportunities Master Fund, Ltd., Fore Multi Strategy Master Fund, Ltd., Sola Ltd, Ultra Master Ltd, and Solus Opportunities Fund 5 LP (collectively, the "Holders"), by and though their attorneys Vicente & Cuebas and Davis Polk & Wardwell LLP, allege upon personal knowledge with regard to information about the Holders, and otherwise upon information and belief, as follows:

## NATURE OF THE ACTION

1.      Plaintiffs collectively hold a substantial amount of the nearly $3.75 billion of outstanding bonds issued by the Government Development Bank for Puerto Rico ("GDB"), the fiscal agent and financial advisor for the Commonwealth of Puerto Rico (the "Commonwealth").  GDB's bonds were widely marketed to investors, including to

Commonwealth residents, as safe, tax-advantaged investments, and a substantial portion of the bonds is held directly, or indirectly through asset management firms, mutual funds, cooperatives, and pension funds, by retirees and other individuals who rely on them for income.

2.      The Commissioner of Financial Institutions ("OCIF") recently found GDB to be insolvent—a finding noted by the Honorable José Antonio Fusté of this Court in his recent ruling in *Wal-Mart Puerto Rico, Inc. v. Zaragoza-Gomez*, No. 15-3018—and GDB is reportedly on the brink of defaulting on substantial bond payments due on May 1.[1] While denied by GDB President Melba Acosta-Febo, there have been multiple reports of rumors that GDB is shutting down and that assets and deposits are being transferred out of GDB.

3.      In light of GDB's precarious financial condition and the likelihood of an imminent default on GDB's bond obligations, GDB is prohibited by Puerto Rico law from making preferential payments and transfers to its creditors.[2]  Nevertheless, in contravention of the law, GDB has continued to make payments to selected creditors. Until GDB's debts are restructured and its ability to continue as a going concern is confirmed, GDB should be required to cease such payments, except to the extent the funds must be immediately used to maintain services essential to the public safety of

---

[1] For example, on March 29, Treasury Secretary Zaragoza, who is also a director of GDB, stated that "There is not enough liquidity to make that [May 1, 2016] payment."  *Puerto Rico Treasury Chief: GDB Under 'Constant Evaluation*,' REORG. RESEARCH, March 29, 2016.

[2] Section 562 of the GDB Act provides that "[a]ll transfers . . .  made while the Bank is insolvent, or in anticipation of insolvency, with the intent of preventing the application of the assets of the Bank in the manner prescribed . . . or with the intent of giving preference to one creditor over another, shall be null and ineffective."  7 L.P.R.A. § 562.

citizens of Puerto Rico, or to pay the ordinary course operating expenses of GDB such as utilities, rent, and employee wages.

4.      GDB's financial condition has resulted largely from a hopeless conflict between GDB's loyalties to the Commonwealth, on the one hand, and its loyalties to its own stakeholders and creditors on the other.  GDB's loyalties to the Commonwealth have led GDB to continue to extend credit to, and allow deposit withdrawals by, financially distressed instrumentalities of the Commonwealth despite the fact that such instrumentalities have little hope of repaying their loans from GDB.  The interests of the Commonwealth are now in direct opposition to the interests of GDB.  GDB's creditors will suffer serious and irreparable harm if GDB continues to prop up the Commonwealth's finances at the expense of GDB's own creditors.

5.      Because of its divided loyalties and the increasing pressure on GDB as Puerto Rico's finances have deteriorated, and in spite of GDB's insolvency and the duties owed to all of GDB's creditors, GDB's assets continue to be unlawfully and progressively dissipated to support selected GDB creditors in order to help the failing Commonwealth meet its liquidity needs.

6.      GDB's creditors cannot assess the full scope of GDB's preferential payments because GDB withheld such information from the market, leaving its less fortunate depositors and creditors in the dark.  However, one thing is clear: if GDB continues making preferential payments as selected governmental depositors race for the exits, it will be impossible for GDB to restructure its debts and remain a going concern, further destroying the value of GDB's debts and imperiling the financial stability of the Commonwealth as a whole.  While the Commonwealth government has announced that

legislation may be passed to declare a moratorium on creditor payments by GDB, if GDB's liquid assets have already been depleted by the time such legislation is passed, it will be too late and GDB will not have the liquidity to survive its own debt restructuring.

7. If GDB is never restored to solvency, the recipients of preferential transfers will undoubtedly be pursued by a receiver for GDB or by its left-behind creditors seeking the return of unlawfully received funds. However, even if such funds can be recovered once they have been disbursed, the resulting web of disputes, litigation, and claims could cast a dark shadow over the financial condition of the Commonwealth and its instrumentalities for years to come. On the other hand, these disputes will likely be avoided if preferential transfers cease and GDB is given the time to successfully restructure its debt and be restored to solvency.

8. Plaintiffs therefore have no option but to seek the Court's intervention to enjoin further preferential transfers of GDB's assets in violation of Section 562 of the GDB Act 7 L.P.R.A. § 562 ("Section 562"), at least until GDB can effectuate a restructuring of its liabilities that returns it to solvency.

## PARTIES, JURISDICTION AND VENUE

9. Defendant GDB is a public corporation of the Commonwealth and maintains its principal executive offices within the Roberto Sánchez Vilella Government Center on De Diego Avenue in San Juan, Puerto Rico.

10. The following individuals serve in the management or as directors of GDB:

a. Melba Acosta-Febo is President of GDB and Chairwoman of GDB's board of directors. Immediately prior to assuming these positions, Ms. Acosta-Febo was Secretary of the Commonwealth's Department of the

Treasury.  Ms. Acosta-Febo is also Executive Director of COFINA.

Ms. Acosta-Febo is a resident of Puerto Rico.

b.   Alberto Bacó-Bagué is a member of GDB's board of directors and

Secretary of the Commonwealth's Department of Economic

Development and Commerce.  Mr. Bacó-Bagué is a resident of Puerto

Rico.

c.   Luis Cruz-Batista is a member of GDB's board of directors and Director

of the Commonwealth's Office of Management and Budget.  Mr. Cruz-

Batista is a resident of Puerto Rico.

d.   Juan C. Zaragoza Gómez is a member of GDB's board of directors and

Secretary of the Commonwealth's Department of the Treasury.

Mr. Zaragoza is a resident of Puerto Rico.[3]

e.   Fermín Contreras-Bordallo is Vice Chairman of GDB's board of

directors.  Mr. Contreras-Bordallo is a resident of Puerto Rico.

11.   Plaintiffs are investors that collectively hold a substantial amount of bonds

issued by GDB.  Plaintiffs include the following entities:

a.   Plaintiff Brigade Leveraged Capital Structures Fund Ltd. is an exempted

company organized under the laws of the Cayman Islands.  Its principal

place of business is in New York, New York.

b.   Plaintiff Brigade Distressed Value Master Fund Ltd. is an exempted

company organized under the laws of the Cayman Islands.  Its principal

place of business is New York, New York.

---

[3] It was reported on April 3, 2016, that Zaragoza Gómez  had resigned from GDB's board of directors.

    c.    Plaintiff Tasman Fund LP is a limited partnership organized under the laws of the Cayman Islands.  Its general partner is a limited liability company, of which no member is a citizen of Puerto Rico, a corporation organized under the laws of Puerto Rico, a corporation with a principal place of business in Puerto Rico, or an unincorporated entity with members who are citizens of Puerto Rico.  The limited partners of Tasman Fund LP are an exempted company organized under the laws of the Cayman Islands with a principal place of business in New York, New York, and individuals that are citizens of States of the United States.  No limited partner of Tasman Fund LP is a citizen of Puerto Rico, a corporation organized under the laws of Puerto Rico, a corporation with a principal place of business of Puerto Rico, or an unincorporated entity with members who are citizens of Puerto Rico.

    d.    Plaintiff Claren Road Credit Master Fund, Ltd. is an exempted limited company organized under the laws of the Cayman Islands.  Its principal place of business is in New York, New York.

    e.    Plaintiff Claren Road Credit Opportunities Master Fund, Ltd. is an exempted limited company organized under the laws of the Cayman Islands.  Its principal place of business is in New York, New York.

    f.    Plaintiff Fore Multi Strategy Master Fund, Ltd., is an exempted limited company organized under the laws of the Cayman Islands.  Its principal place of business is in the Cayman Islands.

g.    Plaintiff Sola Ltd is an exempted limited company organized under the laws of the Cayman Islands.  Its principal place of business is in the Cayman Islands.

h.    Plaintiff Ultra Master Ltd is an exempted limited company organized under the laws of the Cayman Islands.  Its principal place of business is in the Cayman Islands.

i.    Plaintiff Solus Opportunities Fund 5 LP is a limited partnership organized under the laws of the State of Delaware.  Its general partner is a limited liability company, the sole member of which is a second limited liability company.  All of the members of that second limited liability company are either (i) citizens of States of the United States, or (ii) a limited partnership for which none of the partners are citizens of Puerto Rico, corporations organized under the laws of or with a principal place of business in Puerto Rico, or unincorporated entities with members that are citizens of Puerto Rico.  The sole limited partner of Solus Opportunities Fund 5 LP is a second limited partnership.  The sole limited partner of that second limited partnership is a corporation organized under the laws of Canada with a principal place of business in Canada.  The general partner of that second limited partnership is a limited liability company, the sole member of which is a second limited liability company.  All of the members of that second limited liability company are either (i) citizens of States of the United States, or (ii) a limited partnership for which none of the partners are citizens of Puerto

Rico, corporations organized under the laws of or with a principal place of business in Puerto Rico, or unincorporated entities with members that are citizens of Puerto Rico.

12.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332 because the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

13.   Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b)(1) because Defendant is a resident of the Commonwealth of Puerto Rico.

## GENERAL ALLEGATIONS

### THE GOVERNMENT DEVELOPMENT BANK FOR PUERTO RICO

14.   GDB is an entity established under the laws of the Commonwealth. GDB is effectively a public financing conduit:  it accepts funds from the Commonwealth, its public enterprises and instrumentalities, and from private parties; issues public bonds; and makes loans to the Commonwealth, municipalities, and other government agencies and enterprises to finance capital expenditures, expenses, and operational deficits of the Commonwealth and these entities.  GDB is also the Commonwealth's authorized fiscal agent and financial advisor.

15.   Unlike deposits at a federally insured bank, GDB's so-called "deposits" are not entitled to any statutory preference or priority over other creditors of GDB under applicable law.  As of the most recent public reports, GDB owed $3.9 billion in "deposits" to the Commonwealth, municipalities, and public entities.[4]

---

[4] Commonwealth of Puerto Rico, *Financial Information and Operating Data Report*, November 6, 2015, at 59.

16.   GDB has issued approximately $3.75 billion in outstanding principal amount of GDB bonds as an additional source of funding for its activities.  Much of GDB's bond debt is held by Commonwealth citizens, either directly by retirees and other investors who purchased GDB bonds, or indirectly through asset management firms, mutual funds, pension funds, and cooperatives that heavily invested in GDB bonds.

17.   As general unsecured claims against GDB, GDB's bond debt is on a parity with "deposits" that GDB owes to the Commonwealth, municipalities, and public entities.

### INSOLVENCY OF THE GOVERNMENT DEVELOPMENT BANK

18.   The Commonwealth of Puerto Rico is insolvent.  The Honorable José Antonio Fusté ruled only days ago that it is "beyond doubt" that the "Commonwealth . . . is insolvent and unable to pay its debts as they become due."[5]  Indeed, the Commonwealth's insolvency is so apparent that it was "unable to present any credible evidence to gainsay the overwhelming proof of insolvency."[6]  The Commonwealth maintains an illusion of liquidity only through extraordinary measures such as "paying" creditors by writing checks but then locking the checks in a vault "for months" so that the checks cannot be drawn.[7]

19.   GDB is also insolvent.  Credit ratings agencies downgraded the debt issued by GDB to junk bond status many months ago, and its bonds trade at a small fraction of their face value.  Despite this, as recently as November 6, 2015, GDB and the Commonwealth represented that GDB is balance-sheet solvent.  According to the Commonwealth, as of

---

[5] *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018, slip op. at 6:10-13 (D.P.R. Mar. 28, 2016).

[6] *Id.* at 6:14-15.

[7] *Id.* at 11:3-10, 9:19-21.

June 30, 2015, GDB had total liabilities of $8.8 billion and purported total assets of $10.7 billion.[8]  Such a statement amounted to a representation by the Commonwealth and GDB that they expected GDB's portfolio of loans to Commonwealth entities to be repaid.

20.    The vast majority of GDB's $10.7 billion in assets are loans made to the Commonwealth and other public entities in the Commonwealth.  Of this, debt of the Commonwealth to GDB represents $2.3 billion, debt of the Puerto Rico Highways and Transportation Authority to GDB represents $2.0 billion, and outstanding loans to, or bonds of, other public corporations represent an additional $2.5 billion.

21.    Even as GDB's financial condition has deteriorated, GDB has continued to extend loans to the Commonwealth and public instrumentalities, even where the chance of repayment of these loans is very slim.  As admitted in the Commonwealth's own report dated November 6, 2015, "During this period [Fiscal Years 2015 and 2016], GDB has continued to fund, in a limited manner, certain financial needs of the Commonwealth and its instrumentalities[.]"[9]

22.    Although GDB apparently accounts for this debt at its face value, the Commonwealth has admitted that many of these debts will not be repaid in accordance with their terms.  Reflecting this reality, the debt of all of these other entities is trading far below its face amounts due to the expectation that principal and interest on such debts will be impaired.

23.    For example, the Commonwealth's general obligation bonds ("GOs") are trading at substantial discounts to par—presently, approximately 60 cents per dollar of

---

[8] Commonwealth of Puerto Rico, *Financial Information and Operating Data Report*, November 6, 2015, at 193.

[9] *Id.* at 45.

face value—reflecting the market perception that even bonds purported to be backed by the "full faith and credit" of the Commonwealth face a substantial risk of nonpayment. The Commonwealth's agents agree, having expressly stated that the Commonwealth is not able to service the outstanding GO debt.  The Working Group for the Fiscal and Economic Recovery of Puerto Rico (the "Working Group") has admitted that "even assuming the clawback of revenues supporting certain Commonwealth tax-supported debt, available resources may be insufficient to service all principal and interest on debt that has a constitutional priority."[10]  GDB Director and Treasury Secretary Zaragoza recently "declared that, as a matter of basic arithmetic, the Commonwealth will default later this year on its [GO] bonds despite their guaranteed priority over all other government debts."[11]

24.   Moreover, only a small fraction of the $2.3 billion of debt owed to GDB by the Commonwealth is GO debt with a constitutional priority, calling into serious question the degree to which the vast majority of these loans are collectible.

25.   The likelihood of full repayment of debts of other instrumentalities owed to GDB is equally dubious.  For example, it is estimated at least $3.5 billion of GDB's loans have been extended to instrumentalities of the Commonwealth that rely on discretionary appropriations in the Commonwealth budget in order to service their GDB debt.[12]  The Commonwealth has already withheld approximately $309 million in appropriations from various instrumentalities, including the Puerto Rico Highways and Transportation

---

[10] Working Group for the Fiscal and Economic Recovery of Puerto Rico, *Puerto Rico Fiscal and Economic Growth Plan*, at 6.

[11] *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018, slip op. at 7:16-19 (D.P.R. Mar. 28, 2016).

[12] *Government Development Bank for Puerto Rico Special Liquidity Update Dated October 17, 2014*, at 6.

Authority.[13]  The Commonwealth has admitted "substantial doubt" about whether these entities can service their GDB debt or continue as going concerns,[14] and recently admitted that $1.854 billion in GDB loans to other Commonwealth instrumentalities were classified as "impaired" as of June 30, 2014.[15]

26.   In light of the foregoing, GDB has been obliged to admit that its "financial condition and liquidity has significantly deteriorated . . . as a result of . . . the inability of the Commonwealth and its instrumentalities to repay their loans to GDB."[16]

27.   The liability side of GDB's balance sheet as of June 30, 2015 is quite clear. Over $4.2 billion in GDB bonds were then outstanding.  GDB also owed approximately $4.1 billion to depositors.  In addition, it had approximately $500 million of other liabilities.[17]

28.   A significant portion of GDB's $8.8 billion in liabilities is payable on demand or will mature in the near term, and by its own admission GDB will soon be unable to pay these liabilities, or even the interest on these liabilities, as they come due.[18]

29.   GDB claimed it had liquid assets of approximately $667 million as of January 2016,[19] but cautioned that GDB faces $535 million in debt service payments in the first

---

[13] Puerto Rico Fiscal and Economic Growth Plan, *Update Presentation*, Working Group for the Fiscal and Economic Recovery of Puerto Rico, January 18, 2016, at 7.

[14] *Commonwealth of Puerto Rico Basic Financial Statements and Required Supplementary Information*, Draft of Feb. 16, 2016, at 93.

[15] *Id.* at 160.

[16] Commonwealth of Puerto Rico, *Financial Information and Operating Data Report*, November 6, 2015, at 45.

[17] *Id.* at 59, 193.

[18] *Id.* at 193.

half of 2016, and must "disburse material . . . deposits during the period in order to maintain essential government services."[20]

30.   GDB also bears substantial, if unquantified, risks flowing from over $592 million in guarantees extended to private enterprises and $1.3 billion in standby letters of credit that GDB has extended to other Commonwealth instrumentalities.[21]

31.   GDB's claimed liquid assets simply cannot support "disburs[ing] material . . . deposits" and the $535 million of principal payments owed on GDB bonds maturing through Fiscal Year 2016 (*i.e.* through June 30, 2016).[22]   In the words of Puerto Rico Governor García Padilla, "this is math."[23]

32.   GDB's "fragile liquidity position"[24] means that allowing some depositors and creditors to receive preferential payments further exhausts GDB's ability to pay other depositors and creditors.  Once GDB spends it last remaining funds—and it is only a matter of time—many essential services in Puerto Rico may come to a halt and left-behind depositors and bondholders, including municipal depositors and Puerto Rico residents and entities who are bondholders, will suffer substantial losses.

---

[19] Puerto Rico Fiscal and Economic Growth Plan, *Update Presentation*, Working Group for the Fiscal and Economic Recovery of Puerto Rico, January 18, 2016, at 9.

[20] *Id.*

[21] *Commonwealth of Puerto Rico Basic Financial Statements and Required Supplementary Information*, Draft of Feb. 16, 2016, at 238.

[22] Puerto Rico Fiscal and Economic Growth Plan, *Update Presentation*, Working Group for the Fiscal and Economic Recovery of Puerto Rico, January 18, 2016, at 9.

[23] Michael Corkery & Mary Williams Walsh, *Puerto Rico's Governor Says Island's Debts Are 'Not Payable,'* N.Y. TIMES, June 28, 2015, http://www.nytimes.com/2015/06/29/business/dealbook/puerto-ricos-governor-says-islands-debts-are-not-payable.html.

[24] Puerto Rico Fiscal and Economic Growth Plan, *Prepared by the Working Group for the Fiscal and Economic Recovery of Puerto Rico Pursuant to Executive Order 2015-022*, Sept. 9, 2015, at 13.

33.   Even if an agreement in principle could be reached regarding the terms of a restructuring between GDB and its creditors, it will take several months and in all likelihood the passage of federal restructuring legislation to implement any restructuring. In addition to being unlawful, any further material depletion of GDB's assets during that time, while GDB remains insolvent, will critically impair efforts to implement any restructuring.  This will result in severe consequences for the remaining creditors of GDB, the economy of Puerto Rico, and the Commonwealth's ability to generate revenue to support the provision of services to the public and to pay the Commonwealth's other debts.

## ONGOING PAYMENT OF ILLEGAL PREFERENCES

34.   GDB has been allowing selected creditors of GDB—particularly the Commonwealth's own instrumentalities and other governmental entities with deposits at GDB—to withdraw deposits even though GDB is insolvent and is not receiving required financial support from the Commonwealth.  However, given its current financial state, these withdrawals are in direct contravention of Section 562 and will remain illegal until a financial restructuring of GDB's balance sheet restores it to solvency.  Under Section 562, GDB is prohibited from making preferential transfers that in effect allow one creditor a full recovery on its debts while other creditors bear more than their fair share of the losses caused by GDB's actual or anticipated insolvency.

35.   The Commonwealth has had every incentive to cannibalize GDB to meet its own liquidity needs through preferential transfers even if such transfers make it impossible to restructure GDB.  The unfortunate depositors and bondholders left behind in GDB will be left to bear amplified losses.

36.   In addition to permitting preferential withdrawals by depositors, GDB agreed to move hundreds of millions of dollars of assets of GDB into a newly created trust for the benefit of certain privileged depositors—yet another preference.[25]  This purported trust for the benefit of the Municipal Revenue Collection Center is funded by proceeds of a special property tax and amounted to $515 million as of June 30, 2015 and $266 million as of July 31, 2015.[26]

37.   Unless these unlawful payments and transfers stop, GDB's assets will be utterly depleted before GDB can implement a restructuring.  GDB's failure will then be inevitable.  The remaining depositors and creditors will be left to absorb all of the losses resulting from GDB's improper and unlawful conduct, and will receive only a fraction of what they are owed.  They, or a GDB receiver on their behalf, will be forced to bring a spider's web of suits against other Commonwealth entities to recover assets preferentially or fraudulently transferred to such entities by GDB.  The only way to mitigate these disputes, preserve GDB's assets and liquidity, and restore its solvency is for illegal preferential transfers to stop now so that GDB will have the time to negotiate and implement a restructuring of its debts.

## GDB IS HOPELESSLY CONFLICTED, THUS NECESSITATING JUDICIAL INTERVENTION

### GDB Is Hopelessly Conflicted

38.   GDB currently has twin roles: its role as a financing conduit, in which it incurs debt to make loans to the Commonwealth and its instrumentalities; and its role as the fiscal agent and financial advisor for the financially troubled Commonwealth.  These

---

[25] *Id.* at 31.

[26] *Id.* at 30-31.

roles are currently at war.  In its financing role, GDB has duties to its depositors and creditors.  As fiscal agent and financial advisor to the Commonwealth, GDB is expected to help the Commonwealth and its instrumentalities gain access to all possible liquidity resources, including liquidity from GDB, and to help the Commonwealth and its instrumentalities reduce payments, including payments owed to GDB.

39.   GDB has consistently given priority to its role as fiscal agent and financial advisor to the Commonwealth at the expense of its own interests and the interests of its creditors.  This is no surprise, as the Governor of the Commonwealth, with the approval of the Executive Council of the Commonwealth, appoints the directors of GDB.  The majority of the directors of GDB occupy or have occupied senior positions in the Commonwealth government.

40.   Melba Acosta-Febo, the current President and Chair of GDB's Board of Directors, is also the current Executive Director of COFINA, a former Secretary of the Treasury of the Commonwealth, and has been the public face of the Commonwealth's restructuring negotiations and proposals.

41.   Juan C. Zaragoza Gómez, another GDB board member, is the current Secretary of the Treasury.

42.   Luis Cruz-Batista, another GDB board member, is the current director of the Commonwealth's Office of Management and Budget.

43.    As just one example of GDB's acts to benefit the Commonwealth at the expense of GDB's own creditors, the Working Group admitted that GDB "has provided financing in the past and may continue to provide financing to governmental entities that do not have sufficient independent resources to cover their operating expenses" even

16

though doing so "may have an adverse effect on GDB's financial condition and liquidity."[27]  In addition, Ms. Acosta-Febo admitted that GDB's assets have been squandered by "deficit financing" of other Commonwealth instrumentalities by extending loans even though the borrowers "didn't have a source of repayment."[28]  As a result of such irresponsible lending, Ms. Acosta-Febo explained, GDB had extended loans to "many failed ventures that have not been able to pay their debts."[29]

44.   Since it would have been obvious that these irresponsible lending practices would inevitably lead to GDB's insolvency and default, GDB's actions violated its duties to its creditors.

### GDB Deliberately Hid Adverse Financial Information

45.   The preferred treatment of certain GDB creditors and the ongoing depletion of GDB's assets at the expense of creditors left behind in GDB has been facilitated by the deliberate failure to disclose adverse financial information by GDB and the Commonwealth.

46.   GDB, like the Commonwealth as a whole, has failed to release its final audited financial statements for Fiscal Year 2014—which ended 19 months ago at the end of June 2014—or Fiscal Year 2015—which ended nine months ago on June 30, 2015.  GDB's failure to issue audited financial reports is an independent breach of its legal duties and its directors' fiduciary duties.  GDB entered into continuous disclosure

---

[27] Commonwealth of Puerto Rico, *Financial Information and Operating Data Report*, November 6, 2015, at 194.

[28] Mary Williams Walsh & Michael Corkery, *Puerto Rican Bank Left Debt, Not Development*, N.Y. TIMES, November 30, 2015, at B1.

[29] *Id.*

agreements under Securities and Exchange Commission Rule 15c2-12 in connection with each of its bond issuances, pursuant to which it agreed to release audited financial statements.  GDB has failed to comply with these requirements.

47.   While creditors were left in the dark, GDB's liquidity declined precipitously. In GDB's most recent "Special Liquidity Update," released on October 28, 2015 and covering the period ending September 30, 2015, GDB was reported to have "Total Net Liquidity" of over $870 million.  According to the January 18, 2016 version of the Fiscal and Economic Growth Plan, GDB's liquidity has declined by over $200 million, to $667 million.

48.   Only recently, on February 16, 2016—after being pressured to do so[30]—did the Commonwealth release draft, unaudited financial statements as of June 30, 2014. Even though these unaudited statements cover a period that ended more than 18 months before their release and did not include an auditor's opinion, they contain a trove of negative information that had been concealed from creditors.

49.   For one, the unaudited 2014 statements reveal that the Commonwealth has concluded that "there is substantial doubt as to the ability" of GDB "to continue as a going concern."[31]  In addition, the Commonwealth and GDB openly admitted that many of the Commonwealth instrumentalities that owe substantial sums to GDB are likely to

---

[30] *See* Letter from Senator Orrin Hatch to Governor Alejandro García Padilla (Feb. 10, 2016) ("Unfortunately, it has been challenging to acquire recent verifiable financial information about Puerto Rico's financial condition. . . .  Please respond to the questions and requests for updated, verifiable information.")

[31] *Commonwealth of Puerto Rico Basic Financial Statements and Required Supplementary Information*, Draft of Feb. 16, 2016, at 19.

default on their debts to GDB, and disclosed that GDB has taken substantial loss reserves with respect to these and other loans.

50.     Recent sworn federal court testimony by GDB Director and Treasury Secretary Zaragoza revealed he was aware that KPMG was evaluating whether the Commonwealth could continue as a going concern, and that KPMG could not complete its evaluation or its audit because the Commonwealth had yet to satisfy KPMG's information requests.  KPMG for its part has confirmed that the Commonwealth has failed to comply with its information requests—and in some cases has ignored requests for well over a year.  The Honorable José Antonio Fusté thus determined that "the only reason why KPMG has been unable to finish its audit of Puerto Rico's 2014 financial statements is that the government has still not disclosed all of the necessary information to KPMG,"[32] and that "the Governor has continued to mislead the public about why the Commonwealth's audited financial statements had not yet been released."[33]

51.     And so, despite grave doubts about whether GDB could continue as a going concern and despite knowing that GDB's auditor was conducting its analysis of that very issue, the Commonwealth withheld this information from GDB creditors and apparently frustrated its auditor's work.

52.     Given the doubt the Commonwealth itself has cast on the reliability of GDB's unaudited information, and that the financial information is 19 months stale, the only plausible explanation for the failure to allow the completion and release of its audited

---

[32] *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018, slip op. at 104:18-20 (D.P.R. Mar. 28, 2016) (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

[33] *Id.* at 104:21-23.

financial statements is that it was anticipated that if the audit were completed GDB would receive a qualified auditor's opinion suggesting GDB no longer remains a viable going concern—making it impossible for GDB to continue making preferential payments to creditors in light of the stringent limitations on preferential treatment of creditors contained in Section 562.

53.   Despite GDB's efforts to frustrate OCIF's examination of GDB's financial condition, OCIF completed its review and concluded that GDB's liquidity stands at "critically deficient"[34] levels and that "the continued viability of the Government Development Bank is questionable."[35]

54.   Until recently, however, GDB stubbornly refused to recognize the gravity of its predicament and the inability of the Commonwealth to support GDB.  As OCIF found, "[GDB] does not properly account for 'off-balance sheet items,' like its '$1 billion in unfunded loan commitments' and '$1.3 billion in standby letters of credit.'"[36] Furthermore, "[GDB]'s 'projected inflows from the Puerto Rico Treasury Department are significantly overstated.'"[37]  As a result, "[GDB] is currently experiencing a 'liquidity shortfall' that will culminate in a shortfall of negative $1.348 billion in June 2016."[38]

---

[34] *Id.* at 17:8-11 (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

[35] Transcript of Evidentiary Hearing at 151:11-16, *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018 (D.P.R. Feb. 2, 2016) (Acosta-Febo) (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

[36] *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018, slip op. at 17:14-17 (D.P.R. Mar. 28, 2016) (brackets in original omitted) (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

[37] *Id.* at 17:19-20.

[38] *Id.* at 17:16-19 (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

Stating the obvious, "[GDB]'s 'risk tolerance limits' are 'too liberal in light of its liquidity risk profile' and 'do not provide any cushion for unexpected liquidity events or contingent liabilities that require additional disbursements of cash.'"[39]

55.   According to the Honorable José Antonio Fusté, "[w]hat [OCIF] discovered may explain why [GDB] was so slow to cooperate."[40]   GDB's grave liquidity crisis ultimately led OCIF to conclude that GDB "is insolvent"[41]—as the Honorable José Antonio Fusté noted in his *Wal-Mart* ruling. [42]

56.   Whatever its reason, GDB's and the Commonwealth's questionable disclosure practices are particularly damaging to GDB and to the rights of GDB's creditors.  The withheld information includes the precise degree to which GDB's assets have been depleted for the benefit of the Commonwealth and its instrumentalities, as well as the degree to which select creditors of GDB have been knowingly and deliberately preferred over others at a time when GDB is insolvent.  GDB's failure to disclose such essential information and to frankly acknowledge and face its own financial problems has delayed it from developing plans to restore GDB's solvency and restructure its debts, and has permitted GDB to continue making illegal preferential payments in violation of Section 562.

---

[39]*Id.* at 17:11-14 (brackets in original omitted) (quoting Office of the Commissioner of Financial Institutions of Puerto Rico, *Targeted Liquidity Review of the Government Development Bank*, Nov. 9, 2015).

[40] *Id.* at 17:6-7.

[41] *Wal-Mart P.R., Inc. v. Zaragoza-Gomez*, No. 15-3018, slip op. at 17:21 (D.P.R. Mar. 28, 2016) (quoting Letter from Rafael Blanco-Latorre to Melba Acosta-Febo (Dec. 2, 2015)).

[42] *Id.*

## IMMINENT IRREPARABLE HARM TO CREDITORS OF GDB
## AND THE PEOPLE OF PUERTO RICO

57.   The Commonwealth's and GDB's failure to disclose relevant financial information can no longer hide the reality that GDB is insolvent and will default on its obligations in the near term, or the fact that GDB's payments to creditors at this time violate Section 562.

58.   Plaintiffs and all creditors of GDB will suffer irreparable harm if GDB is allowed to continue to make illegal preferential payments and transfers in violation of Section 562 and other applicable laws, further depleting its already insufficient assets. Such payments and transfers irreparably harm creditors both because they inequitably increase the losses that creditors not receiving illegal preferences—including depositors, retail investors, mutual funds, and financial investors—will suffer if GDB's solvency cannot be restored, and because such illegal payments frustrate GDB's ability to negotiate and implement a restructuring plan that restores it to viability.

59.   If GDB cannot speedily be restructured in a manner that restores its solvency and allows depositors to be paid in the ordinary course, all creditors of GDB—and all citizens of Puerto Rico—will suffer irreparable harm.  Governmental depositors may suffer losses, essential services may have to be suspended, and the Commonwealth, the favored recipients of improper transfers, and the participants in the mismanagement of GDB will become mired down in legal disputes.  Only by preserving the status quo now can the Court mitigate these harms, both by maximizing the possibility of a restructuring of GDB and by minimizing further illegal transfers whether or not a restructuring occurs.

## CLAIMS FOR RELIEF

## COUNT

### Injunction Barring Illegal Transfers

60.   Holders reallege and incorporate by reference as though set forth in full the allegations in paragraphs 1 through 59, inclusive.

61.   Section 562 provides that all transfers "made while the Bank is insolvent, or in anticipation of insolvency, with the intent of preventing the application of the assets of the Bank in the manner prescribed in §§ 551-568 of this title, or with the intent of giving preference to one creditor over another, shall be null and ineffective."

62.   GDB is insolvent or anticipates insolvency.

63.   GDB knowingly has made and continues to make transfers of money, property, and things of value to certain favored creditors while it is insolvent or anticipates insolvency with the intention of giving preference to one creditor over another, to the prejudice of depositors, holders of GDB bond debt, and other GDB creditors left behind in GDB.

64.   As long as GDB continues to make such preferential transfers, GDB irreparably harms all creditors not receiving illegal transfers.  Each preferential transfer irreparably harms creditors by depleting the funds left to pay such creditors as their debts become due and increases the losses they will bear should GDB be placed into receivership.  Each preferential transfer also frustrates GDB's ability to negotiate a restructuring with its bondholders and other creditors and so hastens and increases the likelihood of GDB's default and entry into receivership.

65.   Under these circumstances, a monetary judgment against GDB will be of no value to creditors.  There is no question what GDB owes to its creditors—the question is

whether GDB will have assets left with which to pay the sums it undisputedly owes. Once GDB's assets have been dissipated by preferential payments, left-behind creditors will suffer increased losses that no money judgment against GDB can remedy.

66.    Given GDB's insolvency, GDB will suffer no cognizable harm and will likely benefit from being ordered to comply with the clear mandates of Section 562, which will maximize the likelihood that GDB can be restored to viability and successfully restructured. The balance of the hardships thus favors enjoining such transfers until further order of the Court.

67.    Catastrophic losses to GDB creditors and the potential for serious harm to Puerto Rico as a whole can only be averted by a restructuring of GDB.

68.    Accordingly, the Court should enjoin GDB, until further order of the Court, from making payments to its creditors or making any transfers of its assets for less than fair consideration, with such exceptions as the Court may require for funds that must be immediately used to maintain services essential to the public safety of citizens of Puerto Rico, or to pay the ordinary course operating expenses of GDB such as utilities, rent, and employee wages.

69.    Further, the Court should declare that payments or transfers made by GDB in contravention of such injunction are null and ineffective.

**WHEREFORE**, the Holders pray for judgment as follows:

a)  Enjoining, until further order of the Court, GDB from making payments to creditors, except to the extent the funds must be immediately used to maintain services essential to the public safety of citizens of Puerto Rico, or to pay the ordinary course operating expenses of GDB such as utilities, rent, and employee wages;

b)  Enjoining, until further order of the Court, GDB from forgiving or compromising debts owed to GDB;

c)  Declaring transfers by GDB in violation of said injunction null and ineffective;

d)  Awarding the Holders' costs, attorneys' and experts' fees, and expenses of suit; and

e)  Such other relief as the Court may deem just and proper.

Dated:   April 4, 2016
         San Juan, Puerto Rico

By:   /s/ Harold D. Vicente

Harold D. Vicente (USDC-PR No. 117711)
VICENTE & CUEBAS
P.O. Box 11609
San Juan, Puerto Rico 00910
Telephone: (787) 751-8000
hvicente@vc-law.net

Donald S. Bernstein*
Benjamin S. Kaminetzky*
Brian M. Resnick*
Marc J. Tobak*
Davis Polk & Wardwell LLP
450 Lexington Avenue
New York, NY 10017
(212) 450-4000
donald.bernstein@davispolk.com
ben.kaminetzky@davispolk.com
brian.resnick@davispolk.com
marc.tobak@davispolk.com
*Applications for *pro hac vice* admission to be submitted

*Attorneys for Brigade Leveraged Capital Structures Fund Ltd.; Brigade Distressed Value Master Fund Ltd.; Tasman Fund LP; Claren Road Credit Master Fund, Ltd.; Claren Road Credit Opportunities Master Fund, Ltd.; Fore Multi Strategy Master Fund, Ltd.; Sola Ltd; Ultra Master Ltd; and Solus Opportunities Fund 5 LP*