## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

|  |  |
|---|---|
| Brigade Leveraged Capital Structures Fund Ltd., Brigade Distressed Value Master Fund Ltd., Tasman Fund LP, Claren Road Credit Master Fund, Ltd., Claren Road Credit Opportunities Master Fund, Ltd., Fir Tree Value Master Fund, L.P., Fir Tree Capital Opportunity Master Fund, L.P., Fir Tree Special Opportunities Fund IV, LP, Fir Tree Special Opportunities Fund V, LP, Fore Multi Strategy Master Fund, Ltd., Sola Ltd, Ultra Master Ltd, Solus Opportunities Fund 5 LP,<br><br>Plaintiffs,<br><br>- against -<br><br>Alejandro J. García Padilla, in his official capacity as Governor of Puerto Rico; Juan C. Zaragoza Gómez, in his official capacity as Secretary of the Puerto Rico Department of the Treasury, and John Doe, in his/her official capacity as receiver for the Government Development Bank for Puerto Rico,<br><br>Defendants. | **CIVIL NO. 16-01610 (FAB)**<br><br>**ORAL ARGUMENT REQUESTED** |

## PLAINTIFFS' MOTION FOR A DETERMINATION THAT THE PROMESA STAY DOES NOT STAY PLAINTIFFS' CONSTITUTIONAL CLAIMS, OR, IN THE ALTERNATIVE, FOR RELIEF FROM THE STAY

## <u>TABLE OF CONTENTS</u>

Preliminary Statement.................................................................................1

Background ..............................................................................................3

Argument ................................................................................................4

I.      PROMESA Section 405 Does Not Stay the Pending Constitutional Litigation......4

        A.     The Plain Language of Section 405 Does Not Stay Suits to Vindicate
               Constitutional Rights ................................................................4

        B.     Section 405 Lacks the "Clear and Convincing" Language Required to
               Stay Suits to Vindicate Constitutional Rights.................................7

II.     In the Alternative, Plaintiffs Should Be Granted Relief from the Stay to Allow
        Their Constitutional Claims to Proceed ...............................................10

        A.     Plaintiffs Will Suffer Serious Constitutional Injury if Their
               Constitutional Claims Are Stayed.............................................11

        B.     Granting Relief from the Stay Will Further the Public Interest and Will
               Not Cause Any Cognizable Harm to Defendants ......................14

Conclusion ............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Am. Civil Liberties Union v. Ashcroft*,
 322 F.3d 240 (3d Cir. 2003), *aff'd,* 542 U.S. 656 (2004) ...........................15

*Barnett Bank of Marion Cty. v. Nelson*,
 517 U.S. 25 (1996) ...........................................................................................6

*Brown v. Chestnut (In re Chestnut)*,
 422 F.3d 298 (5th Cir. 2005) .........................................................................10

*C&A, S.E. v. P.R. Solid Waste Mgmt. Auth.*,
 369 B.R. 87 (D.P.R. 2007) ..............................................................................11

*Goncalves v. Reno*,
 144 F.3d 110 (1st Cir. 1998) .......................................................................9, 13

*Gordon v. Holder*,
 721 F.3d 638 (D.C. Cir. 2013) ........................................................................15

*Goya Foods, Inc. v. Unanue-Casal (In re Unanue-Casal)*,
 159 B.R. 90 (D.P.R. 1993), *aff'd,* 23 F.3d 395 (1st Cir. 1994)...................11

*In re Guzman*,
 513 B.R. 202 (Bankr. D.P.R. 2014) .............................................................11

*Johnson v. Robinson*,
 415 U.S. 361 (1974).....................................................................................8, 13

*K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*,
 710 F.3d 99 (3d Cir. 2013)..............................................................................15

*Magriz v. Union de Tronquistas de Puerto Rico, Local 901*,
 765 F. Supp. 2d 143 (D.P.R. 2011)................................................................14

*Maracich v. Spears*,
 133 S. Ct. 2191 (2013)...................................................................................6, 7

*Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*,
 129 F.3d 1052 (9th Cir. 1997) ........................................................................10

*N.Y. Progress & Prot. PAC v. Walsh*,
 733 F.3d 483 (2d Cir. 2013) ...........................................................................15

*Puerto Rico v. Franklin California Tax-Free Trust*,
　136 S. Ct. 1938 (2016) .................................................................................1, 11, 12

*Reardon v. United States*,
　947 F.2d 1509 (1st Cir. 1991) ...................................................................................9

*Santa Clara Cty. Fair Ass'n, Inc. v. Sanders (In re Santa Clara Cty. Fair Ass'n, Inc.)*,
　180 B.R. 564 (9th Cir B.A.P. 1995)........................................................................14

*Schwann v. FedEx Ground Package Sys.*,
　813 F.3d 429 (1st Cir. 2016) .....................................................................................6

*Sebelen Medina v. Banco Popular de Puerto Rico (In re Sebelen Medina)*,
　No. 14-06368, 2015 WL 2378975 (Bankr. D.P.R. May 13, 2015)............................11

*Shaw v. Delta Air Lines, Inc.*,
　463 U.S. 85 (1983)......................................................................................................6

*Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*,
　907 F.2d 1280 (2d Cir. 1990)...................................................................................10

*Tringali v. Hathaway Mach. Co.*,
　796 F.2d 553 (1st Cir. 1986) ...................................................................................10

*United States v. Dwinells*,
　508 F.3d 63 (1st Cir. 2007)........................................................................................8

*Webster v. Doe*,
　486 U.S. 592 (1988) ...................................................................................................9

**Statutes**

11 U.S.C. § 362.................................................................................................................5, 10

11 U.S.C. § 903...............................................................................................................11, 12

11 U.S.C. § 1129....................................................................................................................12

Puerto Rico Oversight, Management, and Economic Stability Act,
　S. Res. 2328, 114th Cong. (2016) (enacted) ....................................................... *passim*

Puerto Rico Emergency Moratorium and Financial Rehabilitation Act,
　Puerto Rico Law 21 of 2016 ............................................................................... *passim*

Puerto Rico Law 40 of 2016 ..................................................................................................13

TO THE HONORABLE COURT:

COME NOW Plaintiffs, by and through their undersigned counsel, and very respectfully state and pray as follows:

## PRELIMINARY STATEMENT

Less than 24 hours ago, President Obama signed into law the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA").  PROMESA provides a comprehensive legal structure to address Puerto Rico's public debt and displaces the hasty, *ad hoc*, and, at times, patently illegal prior attempts to address Puerto Rico's long-standing fiscal crisis.

Plaintiffs, holders of over $750 million of debt of the Government Development Bank for Puerto Rico ("GDB"), welcome PROMESA's enactment, but Plaintiffs continue to be injured by unconstitutional provisions of the Puerto Rico Emergency Moratorium and Financial Rehabilitation Act, Law 21 of 2016, as amended by Law 40 of 2016 (the "Moratorium Act").  As set forth in Plaintiffs' Amended Complaint, Dkt. 52 ("Am. Compl."), these provisions impair Plaintiffs' contractual rights and take Plaintiffs' property without just compensation in violation of the Contract Clauses and Takings Clauses of the Constitutions of the United States and of Puerto Rico, and discriminate against GDB creditors that are not Puerto Rico financial institutions in violation of the United States Constitution's Commerce Clause.  (Am. Compl. ¶¶ 36-45.)  Since the Amended Complaint was filed, Plaintiffs' entitlement to declaratory and injunctive relief has become all the more apparent.  The Supreme Court's ruling in *Puerto Rico v. Franklin California Tax-Free Trust*, 136 S. Ct. 1938 (2016), confirms that the Bankruptcy Code preempts laws of the Commonwealth of Puerto Rico ("Commonwealth") that—like the Moratorium Act—attempt to impose a debt restructuring on creditors without their consent.  And PROMESA expressly preempts laws that—like the Moratorium Act—are inconsistent with its

terms.  *See* Puerto Rico Oversight, Management, and Economic Stability Act, S. Res. 2328, 114th Cong. § 4 (2016) (enacted).

All the while, Plaintiffs have continued to negotiate with GDB and other holders of GDB bonds to elaborate the terms of a proposed restructuring that GDB and Plaintiffs reached on May 2, 2016.  (*See* Am. Compl. ¶ 27.)  This voluntary restructuring—an example of the voluntary agreements that PROMESA hopes to foster—contemplates a substantial reduction of the face amount of Plaintiffs' GDB bonds.  (*Id.*)  But these negotiations have been frustrated by the Moratorium Act's unconstitutional retroactive changes to creditor priorities and unfair discrimination among creditors of the same class.  (*Id.* ¶ 29.)

Plaintiffs therefore seek a ruling confirming that the stay imposed by section 405(b) of PROMESA—which broadly applies to creditor suits to enforce or recover liabilities of the Commonwealth and its instrumentalities—does not apply to the constitutional claims of the Amended Complaint.  Both the statutory text of PROMESA sections 405(a) and (b), and the guiding rule that only by "clear and convincing" language can Congress withdraw jurisdiction to hear constitutional claims, compel the conclusion that the PROMESA stay does not apply to Plaintiffs' constitutional claims.

In the alternative, should the Court conclude that PROMESA would stay the constitutional claims of the Amended Complaint, the Court should grant relief from the stay "for cause shown" as authorized by PROMESA section 405(e).  Barring Plaintiffs from pursuing constitutional relief will exacerbate the injury they continue to suffer from the unconstitutional provisions of the Moratorium Act.  Allowing Plaintiffs to present the merits of their constitutional claims to this Court will foster ongoing negotiations for a voluntary restructuring of GDB, as this Court will be able to clarify the "ground rules": that the unconstitutional

provisions of the Moratorium Act should not be allowed to obstruct a fair and equitable restructuring.  For all of the reasons set forth below, Plaintiffs respectfully request that the Court determine that the stay imposed by PROMESA Section 405(b) does not apply to the claims of the Amended Complaint, or, in the alternative, grant Plaintiffs relief from the stay to allow the claims of the Amended Complaint to proceed to litigation on the merits.

## BACKGROUND

On May 20, 2016, Plaintiffs filed their Amended Complaint against Alejandro J. García Padilla, in his official capacity as Governor of Puerto Rico; Juan C. Zaragoza Gómez, in his official capacity as Secretary of the Puerto Rico Department of the Treasury, and John Doe, in his/her official capacity as receiver for GDB.  (*See* Am. Compl.)  The Amended Complaint asserts that certain provisions of the Moratorium Act violate the Contract Clauses and Takings Clauses of the Constitutions of the United States and of Puerto Rico, violate the Commerce Clause of the Constitution of the United States, are preempted by United States federal law and the Bankruptcy Clause of the United States Constitution, and unconstitutionally bar suit in federal court.  Plaintiffs do *not* assert any claim under their bonds or the contracts or statutes that govern their rights under the bonds, and do not seek money damages or other retrospective relief.

On June 30, 2016, President Obama signed PROMESA into law.  PROMESA provides for a comprehensive framework to address the current fiscal crisis of the Commonwealth and its government instrumentalities.  Among other provisions, Section 405 of PROMESA ("Section 405") imposes an automatic stay on certain suits or actions against the Commonwealth or any of its territorial instrumentalities (the "PROMESA Stay").  Under Section 405(b), the enactment of PROMESA "operates with respect to a Liability as a stay, applicable to all entities . . ." of, among other things,

3

> (1) the commencement or continuation, including the issuance or
> employment of process, of a judicial, administrative, or other action or
> proceeding against the Government of Puerto Rico that was or could
> have been commenced before the enactment of this Act, or to recover
> a Liability Claim against the Government of Puerto Rico that arose
> before the enactment of this Act[.]

PROMESA § 405(b).  Section 405(a) defines a "Liability" as

> a bond . . . including rights, entitlements, or obligations whether such
> rights, entitlements, or obligations arise from contract, statute, or any
> other source of law related to such a bond . . . of which—
> > (A)  the issuer, obligor, or guarantor is the Government of
> > Puerto Rico; and
> > (B)  the date of issuance or incurrence precedes the date of
> > enactment of this Act.

PROMESA § 405(a)(1).  Should an action fall within the scope of the Section 405(b) stay,

Section 405(e)(2) authorizes this Court to grant relief from the PROMESA Stay:

> On motion of or action filed by a party in interest and after notice and
> a hearing, the United States District Court for the District of Puerto
> Rico, for cause shown, shall grant relief from the stay provided under
> subsection (b) of this section.

## ARGUMENT

## I.  PROMESA Section 405 Does Not Stay the Pending Constitutional Litigation

### A.  The Plain Language of Section 405 Does Not Stay Suits to Vindicate Constitutional Rights

Plaintiffs' constitutional litigation is not subject to the PROMESA Stay.  The stay only

applies to an action with respect to a "Liability," and Plaintiffs' constitutional rights are not a

"Liability" as defined in Section 405(a).  Under Section 405(b), an action must satisfy two

requirements to be subject to the PROMESA Stay.  First, the action must be "with respect to a

Liability."  PROMESA § 405(b).  Second, if, and only if, the action is "with respect to a

Liability," the action must fall within one of the categories of actions enumerated in Section

405(b). Each of the PROMESA Stay's twin requirements are essential to PROMESA's

purposes: Section 405(b)(1) through (b)(7) are modeled on the automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a)(1)-(7), to capture a broad variety of actions to recover on a claim against the Commonwealth or its instrumentalities to obtain government property. Section 405(b)'s requirement that the stay apply only "with respect to a Liability," which has no analogue in the bankruptcy automatic stay, circumscribes these broad categories. Accordingly, Plaintiffs' ongoing prosecution of this suit is not subject to the PROMESA Stay even though it is the "continuation" of a proceeding that was commenced against the "Government of Puerto Rico"[1] before the enactment of PROMESA, *see* § 405(b)(1), because this is not a suit asserting rights that arise from "a Liability."[2]

Section 405(a) defines a Liability as "a bond . . . including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond" issued by the Commonwealth or its instrumentalities prior to the passage of PROMESA. Read together, Section 405(b)(1) applies to (1) suits with respect to the terms of a bond itself, (2) suits with respect to rights that "arise from" a contract related to such a bond, (3) suits with respect to rights that "arise from" a statute related to such a bond, or (4) suits with respect to rights arising from "any other source of law related to such a bond."

Plaintiffs' constitutional claims fall into none of these four categories of suit subject to the PROMESA Stay. The first three categories can easily be rejected: The rights Plaintiffs assert

---

[1] Section 405(i) provides that for Section 405 purposes, the "Government of Puerto Rico" includes individual government officers acting in their official capacity.

[2] None of the other clauses of Section 405(b) could even arguably apply to Plaintiffs' constitutional claims. Plaintiffs are not seeking to "enforce[] . . . a judgment" (§ 405(b)(2)); obtain possession of or control over property of the Government of Puerto Rico (§ 405(b)(3)); create, perfect, or enforce any lien (§ 405(b)(4), (5)); collect, assess, or recover any claim (§ 405(b)(6)); or setoff any debt (§ 405(b)(7)).

do not arise out of the GDB bonds that Plaintiffs hold, nor out of a contract "related to" their GDB bonds—for example, the Master Trust Indenture[3]—nor out of a statute "related to" their GDB bonds.  Plaintiffs' rights arise out of—are created by—the Constitutions of the United States and of Puerto Rico.

While the constitutions are certainly a "source of law[,]" they are not "related to" Plaintiffs' GDB bonds.  A source of law "related to" Puerto Rico's bonds must be a source of law that has a specific connection with, or a reference to, the bonds.  *See, e.g.*, *Barnett Bank of Marion Cty. v. Nelson*, 517 U.S. 25, 38-39 (1996) (collecting cases interpreting "relating to" as having a "connection with" or "reference to"); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) (explaining that a law "relates to" an employee benefit plan if the law "has a connection with or reference to such a plan").  The Constitutions of the United States and of Puerto Rico cannot meaningfully be said to have any more connection to Plaintiffs' GDB bonds than to any other right or property, and thus are not "related to" the GDB bonds.

Routine principles of statutory construction confirm that the constitutions are not "source[s] of law related to such bonds."  The Supreme Court and First Circuit have often looked to the purposes of a law and the canon of *noscitur a sociis*, "that words and people are known by their companions," to limit the scope of "related to" appearing in a statute, as, at the extremes, "everything is related to everything else."  *Maracich v. Spears*, 133 S. Ct. 2191, 2200-01 (2013) (internal quotations omitted); *Schwann v. FedEx Ground Package Sys.*, 813 F.3d 429, 436 (1st Cir. 2016).  Thus, in *Maracich*, the Supreme Court held that the phrase "in connection with litigation" did not include soliciting potential clients for future litigation.  *Maracich*, 133 S. Ct. at 2202.  Although soliciting clients for potential future litigation does bear some connection with

---

[3] Capitalized terms not defined herein have the meanings assigned to them in Plaintiffs' Amended Complaint.

litigation, the Court looked to the statute's enumerated examples of serving process, investigating anticipated litigation, executing judgments, or carrying out court orders, to conclude that "in connection with litigation" meant only steps inherent to the litigation process. *Id*. Here, the list of enumerated sources of rights "related to" Puerto Rico's bonds—the bond itself, a contract, or a statute—indicate that the PROMESA Stay is meant to be limited to rights inherently arising out of Puerto Rico's bonds, not constitutional rights that bear no more relation to Puerto Rico's bonds than they bear to any other right or property.

The Congressional findings and purposes set forth in Section 405 further demonstrate that the constitutions are not "related to" Plaintiffs' GDB bonds. All of the findings and purposes address the potential risk of creditor collection lawsuits and seek to foster voluntary restructuring of Puerto Rico's debt. *See, e.g.*, PROMESA § 405(m)(5)(B) (stay is necessary to "ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment based on accurate financial information"); § 405(n)(2) (purposes of stay include "allow [Puerto Rico] a limited period of time during which it can focus its resources on negotiating a voluntary resolution"). While these purposes may be accomplished by staying creditor actions asserting rights under a bond, a contract, or a statute governing bondholder rights, none of these purposes would be accomplished by staying litigation seeking to enjoin enforcement of an unconstitutional law. Section 405(a) thus cannot be read to include the constitutions as an "other source of law related to" Puerto Rico's bonds. *See, e.g.*, *Maracich*, 133 S. Ct. at 2200 (scope of "in connection with" must be limited to accomplish statute's purpose).

### B. Section 405 Lacks the "Clear and Convincing" Language Required to Stay Suits to Vindicate Constitutional Rights

Even if Section 405 could be read to encompass constitutional claims, such an ambiguous construction cannot justify applying the PROMESA Stay to this action because Congress can

only foreclose constitutional suits by "clear and convincing" language.  The doctrine of

constitutional avoidance maintains that "Congress is presumed to legislate in accordance with the

Constitution and that, therefore, as between two plausible constructions of a statute, an inquiring

court should avoid a constitutionally suspect one in favor of a constitutionally uncontroversial

alternative."  *United States v. Dwinells*, 508 F.3d 63, 70 (1st Cir. 2007).  Federal courts

stringently apply the doctrine of constitutional avoidance to laws arguably barring litigants from

raising constitutional claims.  The Supreme Court has repeatedly required "clear and convincing

evidence of congressional intent . . . before a statute will be construed to restrict access to

judicial review [of constitutional claims]."  *E.g.*, *Johnson v. Robinson*, 415 U.S. 361, 373-74

(1974) (internal quotations omitted).  And, in case after case, the Supreme Court has concluded

that Congress's use of categorical language barring suit does *not* demonstrate a "clear and

convincing" intent to close courts to constitutional claims, because such a reading would raise

serious questions concerning the constitutionality of the relevant statute.

  In *Johnson*, for example, the Court concluded that a law providing that "no court . . . of

the United States shall have power or jurisdiction to review" Veterans Administration

determinations did not limit the authority to review constitutional challenges to such

determinations.  *Id.* (internal quotations omitted).  The *Johnson* court reasoned that interpreting

the law to bar constitutional challenges would raise "serious questions concerning the

constitutionality" of the law, *id.* at 366, and that Congress had not demonstrated a "clear and

convincing" intent to limit review of constitutional claims notwithstanding the categorical

language of the statute, *id*. at 373-74.  Cases following *Johnson* reiterate that Congress must

make a "heightened showing" of "clear" intent to bar courts from hearing constitutional claims in

order to avoid the "serious constitutional question" that would arise if a federal statute barred

judicial review of the merits of constitutional claims.  *See, e.g.*, *Webster v. Doe*, 486 U.S. 592,

603-04 (1988) (statute granting CIA director discretion to terminate any CIA employee did not

bar judicial review of constitutional claims arising from termination); *Goncalves v. Reno*, 144

F.3d 110, 122 (1st Cir. 1998) ("The Supreme Court has often interpreted statutes to avoid serious

constitutional questions presented where statutory provisions appeared to foreclose review of

constitutional claims by an Article III court."); *Reardon v. United States*, 947 F.2d 1509, 1512,

1514-15 (1st Cir. 1991) (statute providing that "[n]o federal court shall have jurisdiction . . . to

review any challenges" to certain EPA actions did not bar constitutional due process challenges

in federal court as Congress did not demonstrate clear intent to bar federal courts from hearing

due process challenges).

Section 405 does not demonstrate *any* congressional intent to stay constitutional claims,

much less the requisite "clear and convincing" intent.  Nowhere in Section 405 did Congress

identify constitutional claims as among the claims subject to the stay.  To the contrary, the kinds

of claims identified in Section 405 are generally claims to collect on existing liabilities, to

impose new liabilities, or to create or execute upon security interests.  *See* PROMESA § 405(b).

Furthermore, if Section 405 were to apply to Plaintiffs' claims, Plaintiffs would be barred from

obtaining review of the Moratorium Act by any court during the pendency of the stay.  Plaintiffs

are not aware of a *single case* in which the Supreme Court or the First Circuit concluded that

Congress had "clearly and convincingly" intended to foreclose constitutional claims from review

by any tribunal.[4]  Section 405 cannot be the first statute to meet this high bar based on language

that is ambiguous at best.

---

[4] If interpreted to stay Plaintiffs' constitutional claims, Section 405(b) would be unconstitutional as it
would bar any judicial forum for Plaintiffs to seek relief from the unconstitutional provisions of the Moratorium Act.
(....continued)

## II.   In the Alternative, Plaintiffs Should Be Granted Relief from the Stay to Allow Their Constitutional Claims to Proceed

Should the Court conclude that the PROMESA Stay applies to Plaintiffs' constitutional claims, the Court should grant Plaintiffs relief from the stay to allow the claims to proceed on the merits.  Section 405(e) empowers this Court to "grant relief from the stay provided under subsection (b) [of Section 405]" "for cause shown."  PROMESA § 405(e).  Neither PROMESA, nor Section 362 of the Bankruptcy Code upon which the PROMESA Stay was modeled, define "cause."  Courts of Appeals reviewing motions for relief from the Bankruptcy Code Section 362 automatic stay have uniformly held that the decision to grant relief from the stay is committed to the sound discretion of the court.  *See, e.g.*, *Brown v. Chestnut (In re Chestnut)*, 422 F.3d 298, 303-04 (5th Cir. 2005) (noting that 11 U.S.C. § 362 gives the bankruptcy court broad discretion to lift the automatic stay and "flexibility to address specific exigencies on a case-by-case basis"); *Nat'l Envtl. Waste Corp. v. City of Riverside (In re Nat'l Envtl. Waste Corp.)*, 129 F.3d 1052, 1054-55 (9th Cir. 1997) (finding bankruptcy court has "wide latitude in crafting relief from the automatic stay" and holding court did not abuse its discretion in "balanc[ing] the equities" in determining whether to lift the automatic stay (internal quotations omitted)); *Tringali v. Hathaway Mach. Co.*, 796 F.2d 553, 561 (1st Cir. 1986) (applying abuse of discretion standard to court's decision to lift the automatic stay).  While courts have considered many factors when evaluating whether to grant relief from the stay,[5] the analysis ultimately turns on an equitable,

---

(continued….)

Plaintiffs reserve the right to seek additional relief should Section 405(b)'s stay be interpreted to apply to the constitutional claims of Plaintiffs' Amended Complaint.

[5] For example, bankruptcy courts in the District of Puerto Rico have considered 12 factors based upon the factors enumerated by the Second Circuit in *Sonnax Industries, Inc. v. Tri Component Prods. Corp. (In re Sonnax Industries, Inc.)*, 907 F.2d 1280, 1286 (2d Cir. 1990):  (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for (….continued)

case-by-case balancing of the interests of the movant, the debtor, judicial economy and efficiency, and the public interest.  *See Sebelen Medina v. Banco Popular de Puerto Rico (In re Sebelen Medina)*, No. 14-06368, 2015 WL 2378975, at *4 (Bankr. D.P.R. May 13, 2015) (finding modification of automatic stay appropriate in light of judicial economy and efficiency); *In re Guzman*, 513 B.R. 202, 209 (Bankr. D.P.R. 2014) (finding partial resolution of the issues, lack of prejudice to other creditors, and judicial economy interests sufficient cause to modify the automatic stay).  The equities here tilt heavily in favor of granting Plaintiffs relief from the stay and allowing Plaintiffs' constitutional claims to be considered on the merits.  Plaintiffs will suffer constitutional injury if they are unable to defend their constitutional rights, the public interest will be greatly served by clarifying the "rules of the road" of any GDB restructuring under PROMESA, and Defendants will suffer no cognizable harm if required to address Plaintiffs' constitutional claims on the merits, as set forth below.

### A.    Plaintiffs Will Suffer Serious Constitutional Injury if Their Constitutional Claims Are Stayed

Plaintiffs will be left without a meaningful forum for relief if the constitutional claims of the Amended Complaint are not relieved from the PROMESA Stay.  As an initial matter, the Supreme Court's ruling in *Franklin California Tax-Free Trust* eliminated any doubt that the challenged provisions of the Moratorium Act are unconstitutional because Section 903(1) of the Bankruptcy Code, 11 U.S.C. 903(1), preempts any Commonwealth law that provides for a

---

(continued….)

defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.  *See, e.g., C&A, S.E. v. P.R. Solid Waste Mgmt. Auth.*, 369 B.R. 87, 94-95 (D.P.R. 2007) (considering nearly identical factors); *Goya Foods, Inc. v. Unanue-Casal (In re Unanue-Casal)*, 159 B.R. 90, 96-97 (D.P.R. 1993) (same), *aff'd*, 23 F.3d 395 (1st Cir. 1994).  But these factors are neither exhaustive nor exclusive.

restructuring of the debt of a Commonwealth instrumentality that binds creditors without their consent.  136 S. Ct. at 1942 ("That provision [Section 903(1)] bars Puerto Rico from enacting its own municipal bankruptcy scheme."); *see also* 11 U.S.C. § 903(1) ("[A] State law prescribing a method of composition of indebtedness of such municipality may not bind any creditor that does not consent to such composition.").  Like the Recovery Act invalidated in the *Franklin* case, the challenged provisions of the Moratorium Act are preempted because they purport to allow the restructuring of creditor claims against GDB without creditor consent.  *See* Moratorium Act §§ 301(H), 401(J), (K).

PROMESA's enactment also independently preempts the challenged provisions of the Moratorium Act.  As Defendants have conceded in a pleading to this Court in another action, "Section 4 of PROMESA provides as follows: 'The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act.'"  Defendants' Motion Requesting the Setting of a Single Deadline to Answer the Complaint or Otherwise Plead and to Address Plaintiff's Motion for Partial Summary Judgment, *Nat'l Pub. Fin. Guarantee Corp. v. Padilla*, Civil No. 16-2101 (D.P.R. June 27, 2016), ECF No. 26 (quoting PROMESA § 4).  The challenged provisions of the Moratorium Act are thus preempted by PROMESA as the Moratorium Act purports to authorize a GDB restructuring that would be illegal under PROMESA.  As just one example, PROMESA requires that a plan of reorganization for GDB must comply with the strictures of Section 1129 of the Bankruptcy Code, which forbids unfair discrimination among creditors of the same class and permits a plan to impair unconsenting creditors only if it satisfies the "fair and equitable" standard and the absolute priority rule.  *See* 11 U.S.C. § 1129(b)(1), (b)(2)(A), (b)(2)(B); PROMESA § 301 (applying 11 U.S.C. § 1129(b)(1), (b)(2)(A), (b)(2)(B), among other provisions of Title 11, to a

case under PROMESA).  The receivership provisions of the Moratorium Act, by contrast, purport to *mandate* unfair discrimination among creditors of equal rank, based upon, among other things, whether the creditor is a financial institution based in Puerto Rico.  *See* P.R. Law 40 of 2016 § 6 (directing receiver appointed under Moratorium Act to "preserve and prioritize the safety, soundness and stability of [Puerto Rico-based] depository financial institutions and their deposits").  These provisions of the Moratorium Act also contain no protections to assure unconsenting creditors that creditor recoveries will satisfy the "fair and equitable" standard or respect legal priorities.  Moratorium Act §§ 301, 401 (requiring only that creditors receive a minimum liquidation value).

PROMESA's enactment has also further strengthened Plaintiffs' other constitutional claims.  While the unconstitutional provisions of the Moratorium Act were neither reasonable nor necessary to restructure GDB even before PROMESA's enactment, PROMESA now provides a complete legal framework for restructuring GDB based upon the established principles of the Bankruptcy Code.  Unless this Court grants relief from the PROMESA Stay, Plaintiffs will continue to suffer injury from the patently unconstitutional provisions of the Moratorium Act.

Finally, Plaintiffs should be relieved from the PROMESA Stay because staying their constitutional claims would raise "serious constitutional questions" about the constitutionality of the application of the stay to such claims.  *See* Part I.B, *supra*; *see, e.g.*, *Johnson*, 415 U.S. at 373-74.  The doctrine of constitutional avoidance counsels in favor of granting relief from the stay rather than inviting a constitutional challenge to the PROMESA Stay.  *Johnson*, 415 U.S. at 373-74; *Goncalves*, 144 F.3d at 122.

**B.      Granting Relief from the Stay Will Further the Public Interest and Will Not Cause Any Cognizable Harm to Defendants**

In contrast, Defendants will suffer no cognizable harm if required to litigate this action on the merits.  Plaintiffs seek only prospective relief declaring the challenged provisions of the Moratorium Act unconstitutional and enjoining defendants from enforcing those unconstitutional provisions.  The Amended Complaint does not seek money damages or otherwise seek to compel payments due on the GDB bonds that are presently subject to the Moratorium Act.  Indeed, the only economic cost to the Commonwealth will be the cost of litigating this action, which is both *de minimis* in comparison to the balance of Plaintiffs' GDB bonds—let alone Puerto Rico's many billions in public debt—and insufficient to deny relief from the stay.  *E.g.*, *Santa Clara Cty. Fair Ass'n, Inc. v. Sanders (In re Santa Clara Cty. Fair Ass'n, Inc.)*, 180 B.R. 564, 566 (9th Cir B.A.P. 1995) (noting "[o]rdinarily, litigation costs to a bankruptcy estate do not compel a court to deny stay relief" before affirming an order granting relief from the stay (collecting cases)).

Allowing Plaintiffs to litigate their constitutional claims will also further the public interest—and the goals of PROMESA—by fostering voluntary restructuring and by clarifying the "rules of the road" that would apply in any judicial restructuring under PROMESA.  As Plaintiffs detail in their Amended Complaint, the unconstitutional provisions of the Moratorium Act have frustrated voluntary restructuring by emboldening certain GDB creditors to hold out for higher recoveries than will be received by creditors of equal rank.  (Am. Compl. ¶ 29.)  In addition, Courts routinely hold that granting injunctive relief from a constitutional violation is in the public's interest.  *See Magriz v. Union de Tronquistas de Puerto Rico, Local 901*, 765 F. Supp. 2d 143 (D.P.R. 2011) ("When a constitutional violation is likely, moreover, the public interest militates in favor of injunctive relief because it is always in the public interest to prevent

violation of a party's constitutional rights." (internal quotations omitted)); *see, e.g.*, *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013); *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013); *K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 114 (3d Cir. 2013); *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 251, n.11 (3d Cir. 2003), *aff'd,* 542 U.S. 656 (2004).  In sum, granting relief from the PROMESA Stay and addressing the merits of Plaintiffs' claims will foster the public interest and Congress's aims for PROMESA.

## CONCLUSION

For all of the foregoing reasons, the Court should issue an order clarifying that the PROMESA Stay does not apply to the claims of Plaintiffs' Amended Complaint, or, in the alternative, an order granting relief from the stay and allowing Plaintiffs to continue litigating the claims of the Amended Complaint to a final judgment on the merits.

Dated:   July 1, 2016                         Respectfully Submitted,
      San Juan, Puerto Rico

                             By:   /s/ Harold D. Vicente

Donald S. Bernstein*                          Harold D. Vicente (USDC-PR No. 117711)
Benjamin S. Kaminetzky*                       VICENTE & CUEBAS
Brian M. Resnick*                             P.O. Box 11609
Marc J. Tobak*                                San Juan, Puerto Rico 00910
DAVIS POLK & WARDWELL LLP                     Telephone: (787) 751-8000
450 Lexington Avenue                          hvicente@vc-law.net
New York, NY 10017
(212) 450-4000
donald.bernstein@davispolk.com
ben.kaminetzky@davispolk.com
brian.resnick@davispolk.com
marc.tobak@davispolk.com
*Admitted *pro hac vice*                      *Attorneys for Plaintiffs Brigade Leveraged Capital Structures Fund Ltd.; Brigade Distressed Value Master Fund Ltd.; Tasman Fund LP; Claren Road Credit Master Fund, Ltd.; Claren Road Credit Opportunities Master Fund, Ltd.; Fore Multi Strategy Master Fund, Ltd.; Sola Ltd; Ultra Master Ltd; and Solus Opportunities Fund 5 LP*

<table>
<tr><td></td><td>By:</td><td>/s/ Harold D. Vicente</td></tr>
</table>

|  |  |
|---|---|
| Jayne S. Robinson* | Harold D. Vicente (USDC-PR No. 117711) |
| K. Ann McDonald* | VICENTE & CUEBAS |
| Brett G. Canna* | P.O. Box 11609 |
| ROBINSON MCDONALD & CANNA LLP | San Juan, Puerto Rico 00910 |
| 61 Broadway, Suite 1415 | Telephone: (787) 751-8000 |
| New York, NY 10006 | hvicente@vc-law.net |
| Tel: (212) 953-3400 |  |
| Fax: (212) 953-3690 |  |
| jrobinson@rmc-llp.com |  |
| amcdonald@rmc-llp.com |  |
| bcanna@rmc-llp.com |  |
| *Admitted *pro hac vice* | *Attorneys for Plaintiffs Fir Tree Value Master Fund, L.P.; Fir Tree Capital Opportunity Master Fund, L.P.; Fir Tree Special Opportunities Fund IV, LP; and Fir Tree Special Opportunities Fund V, LP* |

## <u>CERTIFICATE OF ELECTRONIC FILING AND SERVICE</u>

I hereby certify that on July 1, 2016, I caused to be electronically filed the Plaintiffs'

Motion for a Determination That the PROMESA Stay Does Not Stay Plaintiffs' Constitutional

Claims, or, in the Alternative, for Relief from the Stay Pursuant to Section 405(e) with the Clerk

of Court using the CM/ECF system, which will send notification of such filing to all counsel of

record.


Dated:   July 1, 2016
       San Juan, Puerto Rico

                      /s/ Harold D. Vicente
                      Harold D. Vicente (USDC-PR No. 117711)
                      VICENTE & CUEBAS
                      P.O. Box 11609
                      San Juan, Puerto Rico 00910
                      Telephone: (787) 751-8000
                      hvicente@vc-law.net