# EXHIBIT A



S. 2328

# One Hundred Fourteenth Congress
## of the
## United States of America

### AT THE SECOND SESSION

*Begun and held at the City of Washington on Monday,*
*the fourth day of January, two thousand and sixteen*

## An Act

To reauthorize and amend the National Sea Grant College Program Act, and for
other purposes.

*Be it enacted by the Senate and House of Representatives of*
*the United States of America in Congress assembled,*

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) SHORT TITLE.—This Act may be cited as the "Puerto Rico
Oversight, Management, and Economic Stability Act" or
"PROMESA".

(b) TABLE OF CONTENTS.—The table of contents of this Act
is as follows:

Sec. 1. Short title; table of contents.
Sec. 2. Effective date.
Sec. 3. Severability.
Sec. 4. Supremacy.
Sec. 5. Definitions.
Sec. 6. Placement.
Sec. 7. Compliance with Federal laws.

TITLE I—ESTABLISHMENT AND ORGANIZATION OF OVERSIGHT BOARD

Sec. 101. Financial Oversight and Management Board.
Sec. 102. Location of Oversight Board.
Sec. 103. Executive Director and staff of Oversight Board.
Sec. 104. Powers of Oversight Board.
Sec. 105. Exemption from liability for claims.
Sec. 106. Treatment of actions arising from Act.
Sec. 107. Budget and funding for operation of Oversight Board.
Sec. 108. Autonomy of Oversight Board.
Sec. 109. Ethics.

TITLE II—RESPONSIBILITIES OF OVERSIGHT BOARD

Sec. 201. Approval of fiscal plans.
Sec. 202. Approval of budgets.
Sec. 203. Effect of finding of noncompliance with budget.
Sec. 204. Review of activities to ensure compliance with fiscal plan.
Sec. 205. Recommendations on financial stability and management responsibility.
Sec. 206. Oversight Board duties related to restructuring.
Sec. 207. Oversight Board authority related to debt issuance.
Sec. 208. Required reports.
Sec. 209. Termination of Oversight Board.
Sec. 210. No full faith and credit of the United States.
Sec. 211. Analysis of pensions.
Sec. 212. Intervention in litigation.

TITLE III—ADJUSTMENTS OF DEBTS

Sec. 301. Applicability of other laws; definitions.
Sec. 302. Who may be a debtor.
Sec. 303. Reservation of territorial power to control territory and territorial instrumentalities.
Sec. 304. Petition and proceedings relating to petition.
Sec. 305. Limitation on jurisdiction and powers of court.

Sec. 306. Jurisdiction.
Sec. 307. Venue.
Sec. 308. Selection of presiding judge.
Sec. 309. Abstention.
Sec. 310. Applicable rules of procedure.
Sec. 311. Leases.
Sec. 312. Filing of plan of adjustment.
Sec. 313. Modification of plan.
Sec. 314. Confirmation.
Sec. 315. Role and capacity of Oversight Board.
Sec. 316. Compensation of professionals.
Sec. 317. Interim compensation.

TITLE IV—MISCELLANEOUS PROVISIONS

Sec. 401. Rules of construction.
Sec. 402. Right of Puerto Rico to determine its future political status.
Sec. 403. First minimum wage in Puerto Rico.
Sec. 404. Application of regulation to Puerto Rico.
Sec. 405. Automatic stay upon enactment.
Sec. 406. Purchases by territory governments.
Sec. 407. Protection from inter-debtor transfers.
Sec. 408. GAO report on Small Business Administration programs in Puerto Rico.
Sec. 409. Congressional Task Force on Economic Growth in Puerto Rico.
Sec. 410. Report.
Sec. 411. Report on territorial debt.
Sec. 412. Expansion of HUBZones in Puerto Rico.
Sec. 413. Determination on debt.

TITLE V—PUERTO RICO INFRASTRUCTURE REVITALIZATION

Sec. 501. Definitions.
Sec. 502. Position of Revitalization Coordinator.
Sec. 503. Critical projects.
Sec. 504. Miscellaneous provisions.
Sec. 505. Federal agency requirements.
Sec. 506. Judicial review.
Sec. 507. Savings clause.

TITLE VI—CREDITOR COLLECTIVE ACTION

Sec. 601. Creditor Collective action.
Sec. 602. Applicable law.

TITLE VII—SENSE OF CONGRESS REGARDING PERMANENT, PRO-GROWTH
FISCAL REFORMS

Sec. 701. Sense of Congress regarding permanent, pro-growth fiscal reforms.

**SEC. 2. EFFECTIVE DATE.**

(a) IN GENERAL.—Except as provided in subsection (b), this Act shall take effect on the date of the enactment of this Act.

(b) TITLE III AND TITLE VI.—

(1) Title III shall apply with respect to cases commenced under title III on or after the date of the enactment of this Act.

(2) Titles III and VI shall apply with respect to debts, claims, and liens (as such terms are defined in section 101 of title 11, United States Code) created before, on, or after such date.

**SEC. 3. SEVERABILITY.**

(a) IN GENERAL.—Except as provided in subsection (b), if any provision of this Act or the application thereof to any person or circumstance is held invalid, the remainder of this Act, or the application of that provision to persons or circumstances other than those as to which it is held invalid, is not affected thereby, provided that title III is not severable from titles I and II, and titles I and II are not severable from title III.

(b) UNIFORMITY.—If a court holds invalid any provision of this Act or the application thereof on the ground that the provision

S. 2328—3

fails to treat similarly situated territories uniformly, then the court shall, in granting a remedy, order that the provision of this Act or the application thereof be extended to any other similarly situated territory, provided that the legislature of that territory adopts a resolution signed by the territory's governor requesting the establishment and organization of a Financial Oversight and Management Board pursuant to section 101.

**SEC. 4. SUPREMACY.**

The provisions of this Act shall prevail over any general or specific provisions of territory law, State law, or regulation that is inconsistent with this Act.

**SEC. 5. DEFINITIONS.**

In this Act—

(1) AGREED ACCOUNTING STANDARDS.—The term "agreed accounting standards" means modified accrual accounting standards or, for any period during which the Oversight Board determines in its sole discretion that a territorial government is not reasonably capable of comprehensive reporting that complies with modified accrual accounting standards, such other accounting standards as proposed by the Oversight Board.

(2) BOND.—The term "Bond" means a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law, in any case, related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form of which the issuer, obligor, or guarantor is the territorial government.

(3) BOND CLAIM.—The term "Bond Claim" means, as it relates to a Bond—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(4) BUDGET.—The term "Budget" means the Territory Budget or an Instrumentality Budget, as applicable.

(5) PUERTO RICO.—The term "Puerto Rico" means the Commonwealth of Puerto Rico.

(6) COMPLIANT BUDGET.—The term "compliant budget" means a budget that is prepared in accordance with—

(A) agreed accounting standards; and

(B) the applicable Fiscal Plan.

(7) COVERED TERRITORIAL INSTRUMENTALITY.—The term "covered territorial instrumentality" means a territorial instrumentality designated by the Oversight Board pursuant to section 101 to be subject to the requirements of this Act.

(8) COVERED TERRITORY.—The term "covered territory" means a territory for which an Oversight Board has been established under section 101.

S. 2328—4

(9) EXECUTIVE DIRECTOR.—The term "Executive Director" means an Executive Director appointed under section 103(a).

(10) FISCAL PLAN.—The term "Fiscal Plan" means a Territory Fiscal Plan or an Instrumentality Fiscal Plan, as applicable.

(11) GOVERNMENT OF PUERTO RICO.—The term "Government of Puerto Rico" means the Commonwealth of Puerto Rico, including all its territorial instrumentalities.

(12) GOVERNOR.—The term "Governor" means the chief executive of a covered territory.

(13) INSTRUMENTALITY BUDGET.—The term "Instrumentality Budget" means a budget for a covered territorial instrumentality, designated by the Oversight Board in accordance with section 101, submitted, approved, and certified in accordance with section 202.

(14) INSTRUMENTALITY FISCAL PLAN.—The term "Instrumentality Fiscal Plan" means a fiscal plan for a covered territorial instrumentality, designated by the Oversight Board in accordance with section 101, submitted, approved, and certified in accordance with section 201.

(15) LEGISLATURE.—The term "Legislature" means the legislative body responsible for enacting the laws of a covered territory.

(16) MODIFIED ACCRUAL ACCOUNTING STANDARDS.—The term "modified accrual accounting standards" means recognizing revenues as they become available and measurable and recognizing expenditures when liabilities are incurred, in each case as defined by the Governmental Accounting Standards Board, in accordance with generally accepted accounting principles.

(17) OVERSIGHT BOARD.—The term "Oversight Board" means a Financial Oversight and Management Board established in accordance with section 101.

(18) TERRITORIAL GOVERNMENT.—The term "territorial government" means the government of a covered territory, including all covered territorial instrumentalities.

(19) TERRITORIAL INSTRUMENTALITY.—

(A) IN GENERAL.—The term "territorial instrumentality" means any political subdivision, public agency, instrumentality—including any instrumentality that is also a bank—or public corporation of a territory, and this term should be broadly construed to effectuate the purposes of this Act.

(B) EXCLUSION.—The term "territorial instrumentality" does not include an Oversight Board.

(20) TERRITORY.—The term "territory" means—

(A) Puerto Rico;

(B) Guam;

(C) American Samoa;

(D) the Commonwealth of the Northern Mariana Islands; or

(E) the United States Virgin Islands.

(21) TERRITORY BUDGET.—The term "Territory Budget" means a budget for a territorial government submitted, approved, and certified in accordance with section 202.

S. 2328—5

(22) TERRITORY FISCAL PLAN.—The term "Territory Fiscal Plan" means a fiscal plan for a territorial government submitted, approved, and certified in accordance with section 201.

### SEC. 6. PLACEMENT.

The Law Revision Counsel is directed to place this Act as chapter 20 of title 48, United States Code.

### SEC. 7. COMPLIANCE WITH FEDERAL LAWS.

Except as otherwise provided in this Act, nothing in this Act shall be construed as impairing or in any manner relieving a territorial government, or any territorial instrumentality thereof, from compliance with Federal laws or requirements or territorial laws and requirements implementing a federally authorized or federally delegated program protecting the health, safety, and environment of persons in such territory.

# TITLE I—ESTABLISHMENT AND ORGANIZATION OF OVERSIGHT BOARD

### SEC. 101. FINANCIAL OVERSIGHT AND MANAGEMENT BOARD.

(a) PURPOSE.—The purpose of the Oversight Board is to provide a method for a covered territory to achieve fiscal responsibility and access to the capital markets.

(b) ESTABLISHMENT.—

(1) PUERTO RICO.—A Financial Oversight and Management Board is hereby established for Puerto Rico.

(2) CONSTITUTIONAL BASIS.—The Congress enacts this Act pursuant to article IV, section 3 of the Constitution of the United States, which provides Congress the power to dispose of and make all needful rules and regulations for territories.

(c) TREATMENT.—An Oversight Board established under this section—

(1) shall be created as an entity within the territorial government for which it is established in accordance with this title; and

(2) shall not be considered to be a department, agency, establishment, or instrumentality of the Federal Government.

(d) OVERSIGHT OF TERRITORIAL INSTRUMENTALITIES.—

(1) DESIGNATION.—

(A) IN GENERAL.—An Oversight Board, in its sole discretion at such time as the Oversight Board determines to be appropriate, may designate any territorial instrumentality as a covered territorial instrumentality that is subject to the requirements of this Act.

(B) BUDGETS AND REPORTS.—The Oversight Board may require, in its sole discretion, the Governor to submit to the Oversight Board such budgets and monthly or quarterly reports regarding a covered territorial instrumentality as the Oversight Board determines to be necessary and may designate any covered territorial instrumentality to be included in the Territory Budget; except that the Oversight Board may not designate a covered territorial instrumentality to be included in the Territory Budget if applicable territory law does not require legislative approval of such covered territorial instrumentality's budget.

S. 2328—6

(C) SEPARATE INSTRUMENTALITY BUDGETS AND REPORTS.—The Oversight Board in its sole discretion may or, if it requires a budget from a covered territorial instrumentality whose budget does not require legislative approval under applicable territory law, shall designate a covered territorial instrumentality to be the subject of an Instrumentality Budget separate from the applicable Territory Budget and require that the Governor develop such an Instrumentality Budget.

(D) INCLUSION IN TERRITORY FISCAL PLAN.—The Oversight Board may require, in its sole discretion, the Governor to include a covered territorial instrumentality in the applicable Territory Fiscal Plan. Any covered territorial instrumentality submitting a separate Instrumentality Fiscal Plan must also submit a separate Instrumentality Budget.

(E) SEPARATE INSTRUMENTALITY FISCAL PLANS.—The Oversight Board may designate, in its sole discretion, a covered territorial instrumentality to be the subject of an Instrumentality Fiscal Plan separate from the applicable Territory Fiscal Plan and require that the Governor develop such an Instrumentality Fiscal Plan. Any covered territorial instrumentality submitting a separate Instrumentality Fiscal Plan shall also submit a separate Instrumentality Budget.

(2) EXCLUSION.—

(A) IN GENERAL.—An Oversight Board, in its sole discretion, at such time as the Oversight Board determines to be appropriate, may exclude any territorial instrumentality from the requirements of this Act.

(B) TREATMENT.—A territorial instrumentality excluded pursuant to this paragraph shall not be considered to be a covered territorial instrumentality.

(e) MEMBERSHIP.—

(1) IN GENERAL.—

(A) The Oversight Board shall consist of seven members appointed by the President who meet the qualifications described in subsection (f) and section 109(a).

(B) The Board shall be comprised of one Category A member, one Category B member, two Category C members, one Category D member, one Category E member, and one Category F member.

(2) APPOINTED MEMBERS.—

(A) The President shall appoint the individual members of the Oversight Board, of which—

(i) the Category A member should be selected from a list of individuals submitted by the Speaker of the House of Representatives;

(ii) the Category B member should be selected from a separate, non-overlapping list of individuals submitted by the Speaker of the House of Representatives;

(iii) the Category C members should be selected from a list submitted by the Majority Leader of the Senate;

S. 2328—7

(iv) the Category D member should be selected from a list submitted by the Minority Leader of the House of Representatives;

(v) the Category E member should be selected from a list submitted by the Minority Leader of the Senate; and

(vi) the Category F member may be selected in the President's sole discretion.

(B) After the President's selection of the Category F Board member, for purposes of subparagraph (A) and within a timely manner—

(i) the Speaker of the House of Representatives shall submit two non-overlapping lists of at least three individuals to the President; one list shall include three individuals who maintain a primary residence in the territory or have a primary place of business in the territory;

(ii) the Senate Majority Leader shall submit a list of at least four individuals to the President;

(iii) the Minority Leader of the House of Representatives shall submit a list of at least three individuals to the President; and

(iv) the Minority Leader of the Senate shall submit a list of at least three individuals to the President.

(C) If the President does not select any of the names submitted under subparagraphs (A) and (B), then whoever submitted such list may supplement the lists provided in this subsection with additional names.

(D) The Category A member shall maintain a primary residence in the territory or have a primary place of business in the territory.

(E) With respect to the appointment of a Board member in Category A, B, C, D, or E, such an appointment shall be by and with the advice and consent of the Senate, unless the President appoints an individual from a list, as provided in this subsection, in which case no Senate confirmation is required.

(F) In the event of a vacancy of a Category A, B, C, D, or E Board seat, the corresponding congressional leader referenced in subparagraph (A) shall submit a list pursuant to this subsection within a timely manner of the Board member's resignation or removal becoming effective.

(G) With respect to an Oversight Board for Puerto Rico, in the event any of the 7 members have not been appointed by September 1, 2016, then the President shall appoint an individual from the list for the current vacant category by September 15, 2016, provided that such list includes at least 2 individuals per vacancy who meet the requirements set forth in subsection (f) and section 109, and are willing to serve.

(3) EX OFFICIO MEMBER.—The Governor, or the Governor's designee, shall be an ex officio member of the Oversight Board without voting rights.

(4) CHAIR.—The voting members of the Oversight Board shall designate one of the voting members of the Oversight Board as the Chair of the Oversight Board (referred to hereafter

S. 2328—8

in this Act as the "Chair") within 30 days of the full appointment of the Oversight Board.

(5) TERM OF SERVICE.—

(A) IN GENERAL.—Each appointed member of the Oversight Board shall be appointed for a term of 3 years.

(B) REMOVAL.—The President may remove any member of the Oversight Board only for cause.

(C) CONTINUATION OF SERVICE UNTIL SUCCESSOR APPOINTED.—Upon the expiration of a term of office, a member of the Oversight Board may continue to serve until a successor has been appointed.

(D) REAPPOINTMENT.—An individual may serve consecutive terms as an appointed member, provided that such reappointment occurs in compliance with paragraph (6).

(6) VACANCIES.—A vacancy on the Oversight Board shall be filled in the same manner in which the original member was appointed.

(f) ELIGIBILITY FOR APPOINTMENTS.—An individual is eligible for appointment as a member of the Oversight Board only if the individual—

(1) has knowledge and expertise in finance, municipal bond markets, management, law, or the organization or operation of business or government; and

(2) prior to appointment, an individual is not an officer, elected official, or employee of the territorial government, a candidate for elected office of the territorial government, or a former elected official of the territorial government.

(g) NO COMPENSATION FOR SERVICE.—Members of the Oversight Board shall serve without pay, but may receive reimbursement from the Oversight Board for any reasonable and necessary expenses incurred by reason of service on the Oversight Board.

(h) ADOPTION OF BYLAWS FOR CONDUCTING BUSINESS OF OVERSIGHT BOARD.—

(1) IN GENERAL.—As soon as practicable after the appointment of all members and appointment of the Chair, the Oversight Board shall adopt bylaws, rules, and procedures governing its activities under this Act, including procedures for hiring experts and consultants. Such bylaws, rules, and procedures shall be public documents, and shall be submitted by the Oversight Board upon adoption to the Governor, the Legislature, the President, and Congress. The Oversight Board may hire professionals as it determines to be necessary to carry out this Act.

(2) ACTIVITIES REQUIRING APPROVAL OF MAJORITY OF MEMBERS.—Under the bylaws adopted pursuant to paragraph (1), the Oversight Board may conduct its operations under such procedures as it considers appropriate, except that an affirmative vote of a majority of the members of the Oversight Board's full appointed membership shall be required in order for the Oversight Board to approve a Fiscal Plan under section 201, to approve a Budget under section 202, to cause a legislative act not to be enforced under section 204, or to approve or disapprove an infrastructure project as a Critical Project under section 503.

(3) ADOPTION OF RULES AND REGULATIONS OF TERRITORIAL GOVERNMENT.—The Oversight Board may incorporate in its

S. 2328—9

bylaws, rules, and procedures under this subsection such rules and regulations of the territorial government as it considers appropriate to enable it to carry out its activities under this Act with the greatest degree of independence practicable.

(4) EXECUTIVE SESSION.—Upon a majority vote of the Oversight Board's full voting membership, the Oversight Board may conduct its business in an executive session that consists solely of the Oversight Board's voting members and any professionals the Oversight Board determines necessary and is closed to the public, but only for the business items set forth as part of the vote to convene an executive session.

## SEC. 102. LOCATION OF OVERSIGHT BOARD.

The Oversight Board shall have an office in the covered territory and additional offices as it deems necessary. At any time, any department or agency of the United States may provide the Oversight Board use of Federal facilities and equipment on a reimbursable or non-reimbursable basis and subject to such terms and conditions as the head of that department or agency may establish.

## SEC. 103. EXECUTIVE DIRECTOR AND STAFF OF OVERSIGHT BOARD.

(a) EXECUTIVE DIRECTOR.—The Oversight Board shall have an Executive Director who shall be appointed by the Chair with the consent of the Oversight Board. The Executive Director shall be paid at a rate determined by the Oversight Board.

(b) STAFF.—With the approval of the Chair, the Executive Director may appoint and fix the pay of additional personnel as the Executive Director considers appropriate, except that no individual appointed by the Executive Director may be paid at a rate greater than the rate of pay for the Executive Director unless the Oversight Board provides for otherwise. The staff shall include a Revitalization Coordinator appointed pursuant to Title V of this Act. Any such personnel may include private citizens, employees of the Federal Government, or employees of the territorial government, provided, however, that the Executive Director may not fix the pay of employees of the Federal Government or the territorial government.

(c) INAPPLICABILITY OF CERTAIN EMPLOYMENT AND PROCUREMENT LAWS.—The Executive Director and staff of the Oversight Board may be appointed and paid without regard to any provision of the laws of the covered territory or the Federal Government governing appointments and salaries. Any provision of the laws of the covered territory governing procurement shall not apply to the Oversight Board.

(d) STAFF OF FEDERAL AGENCIES.—Upon request of the Chair, the head of any Federal department or agency may detail, on a reimbursable or nonreimbursable basis, and in accordance with the Intergovernmental Personnel Act of 1970 (5 U.S.C. 3371–3375), any of the personnel of that department or agency to the Oversight Board to assist it in carrying out its duties under this Act.

(e) STAFF OF TERRITORIAL GOVERNMENT.—Upon request of the Chair, the head of any department or agency of the covered territory may detail, on a reimbursable or nonreimbursable basis, any of the personnel of that department or agency to the Oversight Board to assist it in carrying out its duties under this Act.

S. 2328—10

### SEC. 104. POWERS OF OVERSIGHT BOARD.

(a) HEARINGS AND SESSIONS.—The Oversight Board may, for the purpose of carrying out this Act, hold hearings, sit and act at times and places, take testimony, and receive evidence as the Oversight Board considers appropriate. The Oversight Board may administer oaths or affirmations to witnesses appearing before it.

(b) POWERS OF MEMBERS AND AGENTS.—Any member or agent of the Oversight Board may, if authorized by the Oversight Board, take any action that the Oversight Board is authorized to take by this section.

(c) OBTAINING OFFICIAL DATA.—

(1) FROM FEDERAL GOVERNMENT.—Notwithstanding sections 552 (commonly known as the Freedom of Information Act), 552a (commonly known as the Privacy Act of 1974), and 552b (commonly known as the Government in the Sunshine Act) of title 5, United States Code, the Oversight Board may secure directly from any department or agency of the United States information necessary to enable it to carry out this Act, with the approval of the head of that department or agency.

(2) FROM TERRITORIAL GOVERNMENT.—Notwithstanding any other provision of law, the Oversight Board shall have the right to secure copies, whether written or electronic, of such records, documents, information, data, or metadata from the territorial government necessary to enable the Oversight Board to carry out its responsibilities under this Act. At the request of the Oversight Board, the Oversight Board shall be granted direct access to such information systems, records, documents, information, or data as will enable the Oversight Board to carry out its responsibilities under this Act. The head of the entity of the territorial government responsible shall provide the Oversight Board with such information and assistance (including granting the Oversight Board direct access to automated or other information systems) as the Oversight Board requires under this paragraph.

(d) OBTAINING CREDITOR INFORMATION.—

(1) Upon request of the Oversight Board, each creditor or organized group of creditors of a covered territory or covered territorial instrumentality seeking to participate in voluntary negotiations shall provide to the Oversight Board, and the Oversight Board shall make publicly available to any other participant, a statement setting forth—

(A) the name and address of the creditor or of each member of an organized group of creditors; and

(B) the nature and aggregate amount of claims or other economic interests held in relation to the issuer as of the later of—

(i) the date the creditor acquired the claims or other economic interests or, in the case of an organized group of creditors, the date the group was formed; or

(ii) the date the Oversight Board was formed.

(2) For purposes of this subsection, an organized group shall mean multiple creditors that are—

(A) acting in concert to advance their common interests, including, but not limited to, retaining legal counsel to represent such multiple entities; and

S. 2328—11

(B) not composed entirely of affiliates or insiders of one another.

(3) The Oversight Board may request supplemental statements to be filed by each creditor or organized group of creditors quarterly, or if any fact in the most recently filed statement has changed materially.

(e) GIFTS, BEQUESTS, AND DEVISES.—The Oversight Board may accept, use, and dispose of gifts, bequests, or devises of services or property, both real and personal, for the purpose of aiding or facilitating the work of the Oversight Board. Gifts, bequests, or devises of money and proceeds from sales of other property received as gifts, bequests, or devises shall be deposited in such account as the Oversight Board may establish and shall be available for disbursement upon order of the Chair, consistent with the Oversight Board's bylaws, or rules and procedures. All gifts, bequests or devises and the identities of the donors shall be publicly disclosed by the Oversight Board within 30 days of receipt.

(f) SUBPOENA POWER.—

(1) IN GENERAL.—The Oversight Board may issue subpoenas requiring the attendance and testimony of witnesses and the production of books, records, correspondence, memoranda, papers, documents, electronic files, metadata, tapes, and materials of any nature relating to any matter under investigation by the Oversight Board. Jurisdiction to compel the attendance of witnesses and the production of such materials shall be governed by the statute setting forth the scope of personal jurisdiction exercised by the covered territory, or in the case of Puerto Rico, 32 L.P.R.A. App. III. R. 4. 7., as amended.

(2) FAILURE TO OBEY A SUBPOENA.—If a person refuses to obey a subpoena issued under paragraph (1), the Oversight Board may apply to the court of first instance of the covered territory. Any failure to obey the order of the court may be punished by the court in accordance with civil contempt laws of the covered territory.

(3) SERVICE OF SUBPOENAS.—The subpoena of the Oversight Board shall be served in the manner provided by the rules of procedure for the courts of the covered territory, or in the case of Puerto Rico, the Rules of Civil Procedure of Puerto Rico, for subpoenas issued by the court of first instance of the covered territory.

(g) AUTHORITY TO ENTER INTO CONTRACTS.—The Executive Director may enter into such contracts as the Executive Director considers appropriate (subject to the approval of the Chair) consistent with the Oversight Board's bylaws, rules, and regulations to carry out the Oversight Board's responsibilities under this Act.

(h) AUTHORITY TO ENFORCE CERTAIN LAWS OF THE COVERED TERRITORY.—The Oversight Board shall ensure the purposes of this Act are met, including by ensuring the prompt enforcement of any applicable laws of the covered territory prohibiting public sector employees from participating in a strike or lockout. In the application of this subsection, with respect to Puerto Rico, the term "applicable laws" refers to 3 L.P.R.A. 1451q and 3 L.P.R.A. 1451r, as amended.

(i) VOLUNTARY AGREEMENT CERTIFICATION.—

(1) IN GENERAL.—The Oversight Board shall issue a certification to a covered territory or covered territorial instrumentality if the Oversight Board determines, in its sole discretion,

S. 2328—12

that such covered territory or covered territorial instrumentality, as applicable, has successfully reached a voluntary agreement with holders of its Bond Claims to restructure such Bond Claims—

(A) except as provided in subparagraph (C), if an applicable Fiscal Plan has been certified, in a manner that provides for a sustainable level of debt for such covered territory or covered territorial instrumentality, as applicable, and is in conformance with the applicable certified Fiscal Plan;

(B) except as provided in subparagraph (C), if an applicable Fiscal Plan has not yet been certified, in a manner that provides, in the Oversight Board's sole discretion, for a sustainable level of debt for such covered territory or covered territorial instrumentality; or

(C) notwithstanding subparagraphs (A) and (B), if an applicable Fiscal Plan has not yet been certified and the voluntary agreement is limited solely to an extension of applicable principal maturities and interest on Bonds issued by such covered territory or covered territorial instrumentality, as applicable, for a period of up to one year during which time no interest will be paid on the Bond Claims affected by the voluntary agreement.

(2) EFFECTIVENESS.—The effectiveness of any voluntary agreement referred to in paragraph (1) shall be conditioned on—

(A) the Oversight Board delivering the certification described in paragraph (1); and

(B) the agreement of a majority in amount of the Bond Claims of a covered territory or a covered territorial instrumentality that are to be affected by such agreement, provided, however, that such agreement is solely for purposes of serving as a Qualifying Modification pursuant to subsection 601(g) of this Act and shall not alter existing legal rights of holders of Bond Claims against such covered territory or covered territorial instrumentality that have not assented to such agreement until an order approving the Qualifying Modification has been entered pursuant to section 601(m)(1)(D) of this Act.

(3) PREEXISTING VOLUNTARY AGREEMENTS.—Any voluntary agreement that the territorial government or any territorial instrumentality has executed before May 18, 2016, with holders of a majority in amount of Bond Claims that are to be affected by such agreement to restructure such Bond Claims shall be deemed to be in conformance with the requirements of this subsection.

(j) RESTRUCTURING FILINGS.—

(1) IN GENERAL.—Subject to paragraph (3), before taking an action described in paragraph (2) on behalf of a debtor or potential debtor in a case under title III, the Oversight Board must certify the action.

(2) ACTIONS DESCRIBED.—The actions referred to in paragraph (1) are—

(A) the filing of a petition; or

(B) the submission or modification of a plan of adjustment.

S. 2328—13

(3) CONDITION FOR PLANS OF ADJUSTMENT.—The Oversight Board may certify a plan of adjustment only if it determines, in its sole discretion, that it is consistent with the applicable certified Fiscal Plan.

(k) CIVIL ACTIONS TO ENFORCE POWERS.—The Oversight Board may seek judicial enforcement of its authority to carry out its responsibilities under this Act.

(l) PENALTIES.—

(1) ACTS PROHIBITED.—Any officer or employee of the territorial government who prepares, presents, or certifies any information or report for the Oversight Board or any of its agents that is intentionally false or misleading, or, upon learning that any such information is false or misleading, fails to immediately advise the Oversight Board or its agents thereof in writing, shall be subject to prosecution and penalties under any laws of the territory prohibiting the provision of false information to government officials, which in the case of Puerto Rico shall include 33 L.P.R.A. 4889, as amended.

(2) ADMINISTRATIVE DISCIPLINE.—In addition to any other applicable penalty, any officer or employee of the territorial government who knowingly and willfully violates paragraph (1) or takes any such action in violation of any valid order of the Oversight Board or fails or refuses to take any action required by any such order, shall be subject to appropriate administrative discipline, including (when appropriate) suspension from duty without pay or removal from office, by order of the Governor.

(3) REPORT BY GOVERNOR ON DISCIPLINARY ACTIONS TAKEN.—In the case of a violation of paragraph (2) by an officer or employee of the territorial government, the Governor shall immediately report to the Oversight Board all pertinent facts together with a statement of the action taken thereon.

(m) ELECTRONIC REPORTING.—The Oversight Board may, in consultation with the Governor, ensure the prompt and efficient payment and administration of taxes through the adoption of electronic reporting, payment and auditing technologies.

(n) ADMINISTRATIVE SUPPORT SERVICES.—Upon the request of the Oversight Board, the Administrator of General Services or other appropriate Federal agencies shall promptly provide to the Oversight Board, on a reimbursable or non-reimbursable basis, the administrative support services necessary for the Oversight Board to carry out its responsibilities under this Act.

(o) INVESTIGATION OF DISCLOSURE AND SELLING PRACTICES.—The Oversight Board may investigate the disclosure and selling practices in connection with the purchase of bonds issued by a covered territory for or on behalf of any retail investors including any underrepresentation of risk for such investors and any relationships or conflicts of interest maintained by such broker, dealer, or investment adviser is as provided in applicable laws and regulations.

(p) FINDINGS OF ANY INVESTIGATION.—The Oversight Board shall make public the findings of any investigation referenced in subsection (o).

**SEC. 105. EXEMPTION FROM LIABILITY FOR CLAIMS.**

The Oversight Board, its members, and its employees shall not be liable for any obligation of or claim against the Oversight

S. 2328—14

Board or its members or employees or the territorial government resulting from actions taken to carry out this Act.

**SEC. 106. TREATMENT OF ACTIONS ARISING FROM ACT.**

(a) JURISDICTION.—Except as provided in section 104(f)(2) (relating to the issuance of an order enforcing a subpoena), and title III (relating to adjustments of debts), any action against the Oversight Board, and any action otherwise arising out of this Act, in whole or in part, shall be brought in a United States district court for the covered territory or, for any covered territory that does not have a district court, in the United States District Court for the District of Hawaii.

(b) APPEAL.—Notwithstanding any other provision of law, any order of a United States district court that is issued pursuant to an action brought under subsection (a) shall be subject to review only pursuant to a notice of appeal to the applicable United States Court of Appeals.

(c) TIMING OF RELIEF.—Except with respect to any orders entered to remedy constitutional violations, no order of any court granting declaratory or injunctive relief against the Oversight Board, including relief permitting or requiring the obligation, borrowing, or expenditure of funds, shall take effect during the pendency of the action before such court, during the time appeal may be taken, or (if appeal is taken) during the period before the court has entered its final order disposing of such action.

(d) EXPEDITED CONSIDERATION.—It shall be the duty of the applicable United States District Court, the applicable United States Court of Appeals, and, as applicable, the Supreme Court of the United States to advance on the docket and to expedite to the greatest possible extent the disposition of any matter brought under this Act.

(e) REVIEW OF OVERSIGHT BOARD CERTIFICATIONS.—There shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this Act.

**SEC. 107. BUDGET AND FUNDING FOR OPERATION OF OVERSIGHT BOARD.**

(a) SUBMISSION OF BUDGET.—The Oversight Board shall submit a budget for each fiscal year during which the Oversight Board is in operation, to the President, the House of Representatives Committee on Natural Resources and the Senate Committee on Energy and Natural Resources, the Governor, and the Legislature.

(b) FUNDING.—The Oversight Board shall use its powers with respect to the Territory Budget of the covered territory to ensure that sufficient funds are available to cover all expenses of the Oversight Board.

(1) PERMANENT FUNDING.—Within 30 days after the date of enactment of this Act, the territorial government shall designate a dedicated funding source, not subject to subsequent legislative appropriations, sufficient to support the annual expenses of the Oversight Board as determined in the Oversight Board's sole and exclusive discretion.

(2)(A) INITIAL FUNDING.—On the date of establishment of an Oversight Board in accordance with section 101(b) and on the 5th day of each month thereafter, the Governor of the covered territory shall transfer or cause to be transferred the greater of $2,000,000 or such amount as shall be determined

S. 2328—15

by the Oversight Board pursuant to subsection (a) to a new account established by the territorial government, which shall be available to and subject to the exclusive control of the Oversight Board, without any legislative appropriations of the territorial government.

(B) TERMINATION.—The initial funding requirements under subparagraph (A) shall terminate upon the territorial government designating a dedicated funding source not subject to subsequent legislative appropriations under paragraph (1).

(3) REMISSION OF EXCESS FUNDS.—If the Oversight Board determines in its sole discretion that any funds transferred under this subsection exceed the amounts required for the Oversight Board's operations as established pursuant to subsection (a), any such excess funds shall be periodically remitted to the territorial government.

**SEC. 108. AUTONOMY OF OVERSIGHT BOARD.**

(a) IN GENERAL.—Neither the Governor nor the Legislature may—

(1) exercise any control, supervision, oversight, or review over the Oversight Board or its activities; or

(2) enact, implement, or enforce any statute, resolution, policy, or rule that would impair or defeat the purposes of this Act, as determined by the Oversight Board.

(b) OVERSIGHT BOARD LEGAL REPRESENTATION.—In any action brought by, on behalf of, or against the Oversight Board, the Oversight Board shall be represented by such counsel as it may hire or retain so long as the representation complies with the applicable professional rules of conduct governing conflicts of interests.

**SEC. 109. ETHICS.**

(a) CONFLICT OF INTEREST.—Notwithstanding any ethics provision governing employees of the covered territory, all members and staff of the Oversight Board shall be subject to the Federal conflict of interest requirements described in section 208 of title 18, United States Code.

(b) FINANCIAL DISCLOSURE.—Notwithstanding any ethics provision governing employees of the covered territory, all members of the Oversight Board and staff designated by the Oversight Board shall be subject to disclosure of their financial interests, the contents of which shall conform to the same requirements set forth in section 102 of the Ethics in Government Act of 1978 (5 U.S.C. App.).

# TITLE II—RESPONSIBILITIES OF OVERSIGHT BOARD

**SEC. 201. APPROVAL OF FISCAL PLANS.**

(a) IN GENERAL.—As soon as practicable after all of the members and the Chair have been appointed to the Oversight Board in accordance with section 101(e) in the fiscal year in which the Oversight Board is established, and in each fiscal year thereafter during which the Oversight Board is in operation, the Oversight Board shall deliver a notice to the Governor providing a schedule for the process of development, submission, approval, and certification of Fiscal Plans. The notice may also set forth a schedule for revisions to any Fiscal Plan that has already been certified,

S. 2328—16

which revisions must be subject to subsequent approval and certification by the Oversight Board. The Oversight Board shall consult with the Governor in establishing a schedule, but the Oversight Board shall retain sole discretion to set or, by delivery of a subsequent notice to the Governor, change the dates of such schedule as it deems appropriate and reasonably feasible.

(b) REQUIREMENTS.—

(1) IN GENERAL.—A Fiscal Plan developed under this section shall, with respect to the territorial government or covered territorial instrumentality, provide a method to achieve fiscal responsibility and access to the capital markets, and—

(A) provide for estimates of revenues and expenditures in conformance with agreed accounting standards and be based on—

(i) applicable laws; or

(ii) specific bills that require enactment in order to reasonably achieve the projections of the Fiscal Plan;

(B) ensure the funding of essential public services;

(C) provide adequate funding for public pension systems;

(D) provide for the elimination of structural deficits;

(E) for fiscal years covered by a Fiscal Plan in which a stay under titles III or IV is not effective, provide for a debt burden that is sustainable;

(F) improve fiscal governance, accountability, and internal controls;

(G) enable the achievement of fiscal targets;

(H) create independent forecasts of revenue for the period covered by the Fiscal Plan;

(I) include a debt sustainability analysis;

(J) provide for capital expenditures and investments necessary to promote economic growth;

(K) adopt appropriate recommendations submitted by the Oversight Board under section 205(a);

(L) include such additional information as the Oversight Board deems necessary;

(M) ensure that assets, funds, or resources of a territorial instrumentality are not loaned to, transferred to, or otherwise used for the benefit of a covered territory or another covered territorial instrumentality of a covered territory, unless permitted by the constitution of the territory, an approved plan of adjustment under title III, or a Qualifying Modification approved under title VI; and

(N) respect the relative lawful priorities or lawful liens, as may be applicable, in the constitution, other laws, or agreements of a covered territory or covered territorial instrumentality in effect prior to the date of enactment of this Act.

(2) TERM.—A Fiscal Plan developed under this section shall cover a period of fiscal years as determined by the Oversight Board in its sole discretion but in any case a period of not less than 5 fiscal years from the fiscal year in which it is certified by the Oversight Board.

(c) DEVELOPMENT, REVIEW, APPROVAL, AND CERTIFICATION OF FISCAL PLANS.—

(1) TIMING REQUIREMENT.—The Governor may not submit to the Legislature a Territory Budget under section 202 for

S. 2328—17

a fiscal year unless the Oversight Board has certified the Territory Fiscal Plan for that fiscal year in accordance with this subsection, unless the Oversight Board in its sole discretion waives this requirement.

(2) FISCAL PLAN DEVELOPED BY GOVERNOR.—The Governor shall submit to the Oversight Board any proposed Fiscal Plan required by the Oversight Board by the time specified in the notice delivered under subsection (a).

(3) REVIEW BY THE OVERSIGHT BOARD.—The Oversight Board shall review any proposed Fiscal Plan to determine whether it satisfies the requirements set forth in subsection (b) and, if the Oversight Board determines in its sole discretion that the proposed Fiscal Plan—

(A) satisfies such requirements, the Oversight Board shall approve the proposed Fiscal Plan; or

(B) does not satisfy such requirements, the Oversight Board shall provide to the Governor—

(i) a notice of violation that includes recommendations for revisions to the applicable Fiscal Plan; and

(ii) an opportunity to correct the violation in accordance with subsection (d)(1).

(d) REVISED FISCAL PLAN.—

(1) IN GENERAL.—If the Governor receives a notice of violation under subsection (c)(3), the Governor shall submit to the Oversight Board a revised proposed Fiscal Plan in accordance with subsection (b) by the time specified in the notice delivered under subsection (a). The Governor may submit as many revised Fiscal Plans to the Oversight Board as the schedule established in the notice delivered under subsection (a) permits.

(2) DEVELOPMENT BY OVERSIGHT BOARD.—If the Governor fails to submit to the Oversight Board a Fiscal Plan that the Oversight Board determines in its sole discretion satisfies the requirements set forth in subsection (b) by the time specified in the notice delivered under subsection (a), the Oversight Board shall develop and submit to the Governor and the Legislature a Fiscal Plan that satisfies the requirements set forth in subsection (b).

(e) APPROVAL AND CERTIFICATION.—

(1) APPROVAL OF FISCAL PLAN DEVELOPED BY GOVERNOR.— If the Oversight Board approves a Fiscal Plan under subsection (c)(3), it shall deliver a compliance certification for such Fiscal Plan to the Governor and the Legislature.

(2) DEEMED APPROVAL OF FISCAL PLAN DEVELOPED BY OVERSIGHT BOARD.—If the Oversight Board develops a Fiscal Plan under subsection (d)(2), such Fiscal Plan shall be deemed approved by the Governor, and the Oversight Board shall issue a compliance certification for such Fiscal Plan to the Governor and the Legislature.

(f) JOINT DEVELOPMENT OF FISCAL PLAN.—Notwithstanding any other provision of this section, if the Governor and the Oversight Board jointly develop a Fiscal Plan for the fiscal year that meets the requirements under this section, and that the Governor and the Oversight Board certify that the fiscal plan reflects a consensus between the Governor and the Oversight Board, then such Fiscal Plan shall serve as the Fiscal Plan for the territory or territorial instrumentality for that fiscal year.

S. 2328—18

**SEC. 202. APPROVAL OF BUDGETS.**

(a) REASONABLE SCHEDULE FOR DEVELOPMENT OF BUDGETS.—As soon as practicable after all of the members and the Chair have been appointed to the Oversight Board in the fiscal year in which the Oversight Board is established, and in each fiscal year thereafter during which the Oversight Board is in operation, the Oversight Board shall deliver a notice to the Governor and the Legislature providing a schedule for developing, submitting, approving, and certifying Budgets for a period of fiscal years as determined by the Oversight Board in its sole discretion but in any case a period of not less than one fiscal year following the fiscal year in which the notice is delivered. The notice may also set forth a schedule for revisions to Budgets that have already been certified, which revisions must be subject to subsequent approval and certification by the Oversight Board. The Oversight Board shall consult with the Governor and the Legislature in establishing a schedule, but the Oversight Board shall retain sole discretion to set or, by delivery of a subsequent notice to the Governor and the Legislature, change the dates of such schedule as it deems appropriate and reasonably feasible.

(b) REVENUE FORECAST.—The Oversight Board shall submit to the Governor and Legislature a forecast of revenues for the period covered by the Budgets by the time specified in the notice delivered under subsection (a), for use by the Governor in developing the Budget under subsection (c).

(c) BUDGETS DEVELOPED BY GOVERNOR.—

(1) GOVERNOR'S PROPOSED BUDGETS.—The Governor shall submit to the Oversight Board proposed Budgets by the time specified in the notice delivered under subsection (a). In consultation with the Governor in accordance with the process specified in the notice delivered under subsection (a), the Oversight Board shall determine in its sole discretion whether each proposed Budget is compliant with the applicable Fiscal Plan and—

(A) if a proposed Budget is a compliant budget, the Oversight Board shall—

(i) approve the Budget; and
(ii) if the Budget is a Territory Budget, submit the Territory Budget to the Legislature; or

(B) if the Oversight Board determines that the Budget is not a compliant budget, the Oversight Board shall provide to the Governor—

(i) a notice of violation that includes a description of any necessary corrective action; and
(ii) an opportunity to correct the violation in accordance with paragraph (2).

(2) GOVERNOR'S REVISIONS.—The Governor may correct any violations identified by the Oversight Board and submit a revised proposed Budget to the Oversight Board in accordance with paragraph (1). The Governor may submit as many revised Budgets to the Oversight Board as the schedule established in the notice delivered under subsection (a) permits. If the Governor fails to develop a Budget that the Oversight Board determines is a compliant budget by the time specified in the notice delivered under subsection (a), the Oversight Board shall develop and submit to the Governor, in the case of an

S. 2328—19

Instrumentality Budget, and to the Governor and the Legislature, in the case of a Territory Budget, a revised compliant budget.

(d) BUDGET APPROVAL BY LEGISLATURE.—

(1) LEGISLATURE ADOPTED BUDGET.—The Legislature shall submit to the Oversight Board the Territory Budget adopted by the Legislature by the time specified in the notice delivered under subsection (a). The Oversight Board shall determine whether the adopted Territory Budget is a compliant budget and—

(A) if the adopted Territory Budget is a compliant budget, the Oversight Board shall issue a compliance certification for such compliant budget pursuant to subsection (e); and

(B) if the adopted Territory Budget is not a compliant budget, the Oversight Board shall provide to the Legislature—

(i) a notice of violation that includes a description of any necessary corrective action; and

(ii) an opportunity to correct the violation in accordance with paragraph (2).

(2) LEGISLATURE'S REVISIONS.—The Legislature may correct any violations identified by the Oversight Board and submit a revised Territory Budget to the Oversight Board in accordance with the process established under paragraph (1) and by the time specified in the notice delivered under subsection (a). The Legislature may submit as many revised adopted Territory Budgets to the Oversight Board as the schedule established in the notice delivered under subsection (a) permits. If the Legislature fails to adopt a Territory Budget that the Oversight Board determines is a compliant budget by the time specified in the notice delivered under subsection (a), the Oversight Board shall develop a revised Territory Budget that is a compliant budget and submit it to the Governor and the Legislature.

(e) CERTIFICATION OF BUDGETS.—

(1) CERTIFICATION OF DEVELOPED AND APPROVED TERRITORY BUDGETS.—If the Governor and the Legislature develop and approve a Territory Budget that is a compliant budget by the day before the first day of the fiscal year for which the Territory Budget is being developed and in accordance with the process established under subsections (c) and (d), the Oversight Board shall issue a compliance certification to the Governor and the Legislature for such Territory Budget.

(2) CERTIFICATION OF DEVELOPED INSTRUMENTALITY BUDGETS.—If the Governor develops an Instrumentality Budget that is a compliant budget by the day before the first day of the fiscal year for which the Instrumentality Budget is being developed and in accordance with the process established under subsection (c), the Oversight Board shall issue a compliance certification to the Governor for such Instrumentality Budget.

(3) DEEMED CERTIFICATION OF TERRITORY BUDGETS.—If the Governor and the Legislature fail to develop and approve a Territory Budget that is a compliant budget by the day before the first day of the fiscal year for which the Territory Budget is being developed, the Oversight Board shall submit a Budget to the Governor and the Legislature (including any revision

S. 2328—20

to the Territory Budget made by the Oversight Board pursuant to subsection (d)(2)) and such Budget shall be—

(A) deemed to be approved by the Governor and the Legislature;

(B) the subject of a compliance certification issued by the Oversight Board to the Governor and the Legislature; and

(C) in full force and effect beginning on the first day of the applicable fiscal year.

(4) DEEMED CERTIFICATION OF INSTRUMENTALITY BUDGETS.—If the Governor fails to develop an Instrumentality Budget that is a compliant budget by the day before the first day of the fiscal year for which the Instrumentality Budget is being developed, the Oversight Board shall submit an Instrumentality Budget to the Governor (including any revision to the Instrumentality Budget made by the Oversight Board pursuant to subsection (c)(2)) and such Budget shall be—

(A) deemed to be approved by the Governor;

(B) the subject of a compliance certification issued by the Oversight Board to the Governor; and

(C) in full force and effect beginning on the first day of the applicable fiscal year.

(f) JOINT DEVELOPMENT OF BUDGETS.—Notwithstanding any other provision of this section, if, in the case of a Territory Budget, the Governor, the Legislature, and the Oversight Board, or in the case of an Instrumentality Budget, the Governor and the Oversight Board, jointly develop such Budget for the fiscal year that meets the requirements under this section, and that the relevant parties certify that such budget reflects a consensus among them, then such Budget shall serve as the Budget for the territory or territorial instrumentality for that fiscal year.

SEC. 203. EFFECT OF FINDING OF NONCOMPLIANCE WITH BUDGET.

(a) SUBMISSION OF REPORTS.—Not later than 15 days after the last day of each quarter of a fiscal year (beginning with the fiscal year determined by the Oversight Board), the Governor shall submit to the Oversight Board a report, in such form as the Oversight Board may require, describing—

(1) the actual cash revenues, cash expenditures, and cash flows of the territorial government for the preceding quarter, as compared to the projected revenues, expenditures, and cash flows contained in the certified Budget for such preceding quarter; and

(2) any other information requested by the Oversight Board, which may include a balance sheet or a requirement that the Governor provide information for each covered territorial instrumentality separately.

(b) INITIAL ACTION BY OVERSIGHT BOARD.—

(1) IN GENERAL.—If the Oversight Board determines, based on reports submitted by the Governor under subsection (a), independent audits, or such other information as the Oversight Board may obtain, that the actual quarterly revenues, expenditures, or cash flows of the territorial government are not consistent with the projected revenues, expenditures, or cash flows set forth in the certified Budget for such quarter, the Oversight Board shall—

S. 2328—21

(A) require the territorial government to provide such additional information as the Oversight Board determines to be necessary to explain the inconsistency; and

(B) if the additional information provided under subparagraph (A) does not provide an explanation for the inconsistency that the Oversight Board finds reasonable and appropriate, advise the territorial government to correct the inconsistency by implementing remedial action.

(2) DEADLINES.—The Oversight Board shall establish the deadlines by which the territorial government shall meet the requirements of subparagraphs (A) and (B) of paragraph (1).

(c) CERTIFICATION.—

(1) INCONSISTENCY.—If the territorial government fails to provide additional information under subsection (b)(1)(A), or fails to correct an inconsistency under subsection (b)(1)(B), prior to the applicable deadline under subsection (b)(2), the Oversight Board shall certify to the President, the House of Representatives Committee on Natural Resources, the Senate Committee on Energy and Natural Resources, the Governor, and the Legislature that the territorial government is inconsistent with the applicable certified Budget, and shall describe the nature and amount of the inconsistency.

(2) CORRECTION.—If the Oversight Board determines that the territorial government has initiated such measures as the Oversight Board considers sufficient to correct an inconsistency certified under paragraph (1), the Oversight Board shall certify the correction to the President, the House of Representatives Committee on Natural Resources, the Senate Committee on Energy and Natural Resources, the Governor, and the Legislature.

(d) BUDGET REDUCTIONS BY OVERSIGHT BOARD.—If the Oversight Board determines that the Governor, in the case of any then-applicable certified Instrumentality Budgets, and the Governor and the Legislature, in the case of the then-applicable certified Territory Budget, have failed to correct an inconsistency identified by the Oversight Board under subsection (c), the Oversight Board shall—

(1) with respect to the territorial government, other than covered territorial instrumentalities, make appropriate reductions in nondebt expenditures to ensure that the actual quarterly revenues and expenditures for the territorial government are in compliance with the applicable certified Territory Budget or, in the case of the fiscal year in which the Oversight Board is established, the budget adopted by the Governor and the Legislature; and

(2) with respect to covered territorial instrumentalities at the sole discretion of the Oversight Board—

(A) make reductions in nondebt expenditures to ensure that the actual quarterly revenues and expenses for the covered territorial instrumentality are in compliance with the applicable certified Budget or, in the case of the fiscal year in which the Oversight Board is established, the budget adopted by the Governor and the Legislature or the covered territorial instrumentality, as applicable; or

(B)(i) institute automatic hiring freezes at the covered territorial instrumentality; and

S. 2328—22

(ii) prohibit the covered territorial instrumentality from entering into any contract or engaging in any financial or other transactions, unless the contract or transaction was previously approved by the Oversight Board.

(e) TERMINATION OF BUDGET REDUCTIONS.—The Oversight Board shall cancel the reductions, hiring freezes, or prohibition on contracts and financial transactions under subsection (d) if the Oversight Board determines that the territorial government or covered territorial instrumentality, as applicable, has initiated appropriate measures to reduce expenditures or increase revenues to ensure that the territorial government or covered territorial instrumentality is in compliance with the applicable certified Budget or, in the case of the fiscal year in which the Oversight Board is established, the budget adopted by the Governor and the Legislature.

## SEC. 204. REVIEW OF ACTIVITIES TO ENSURE COMPLIANCE WITH FISCAL PLAN.

(a) SUBMISSION OF LEGISLATIVE ACTS TO OVERSIGHT BOARD.—

(1) SUBMISSION OF ACTS.—Except to the extent that the Oversight Board may provide otherwise in its bylaws, rules, and procedures, not later than 7 business days after a territorial government duly enacts any law during any fiscal year in which the Oversight Board is in operation, the Governor shall submit the law to the Oversight Board.

(2) COST ESTIMATE; CERTIFICATION OF COMPLIANCE OR NON-COMPLIANCE.—The Governor shall include with each law submitted to the Oversight Board under paragraph (1) the following:

(A) A formal estimate prepared by an appropriate entity of the territorial government with expertise in budgets and financial management of the impact, if any, that the law will have on expenditures and revenues.

(B) If the appropriate entity described in subparagraph (A) finds that the law is not significantly inconsistent with the Fiscal Plan for the fiscal year, it shall issue a certification of such finding.

(C) If the appropriate entity described in subparagraph (A) finds that the law is significantly inconsistent with the Fiscal Plan for the fiscal year, it shall issue a certification of such finding, together with the entity's reasons for such finding.

(3) NOTIFICATION.—The Oversight Board shall send a notification to the Governor and the Legislature if—

(A) the Governor submits a law to the Oversight Board under this subsection that is not accompanied by the estimate required under paragraph (2)(A);

(B) the Governor submits a law to the Oversight Board under this subsection that is not accompanied by either a certification described in paragraph (2)(B) or (2)(C); or

(C) the Governor submits a law to the Oversight Board under this subsection that is accompanied by a certification described in paragraph (2)(C) that the law is significantly inconsistent with the Fiscal Plan.

(4) OPPORTUNITY TO RESPOND TO NOTIFICATION.—

(A) FAILURE TO PROVIDE ESTIMATE OR CERTIFICATION.—After sending a notification to the Governor and the

S. 2328—23

Legislature under paragraph (3)(A) or (3)(B) with respect to a law, the Oversight Board may direct the Governor to provide the missing estimate or certification (as the case may be), in accordance with such procedures as the Oversight Board may establish.

(B) SUBMISSION OF CERTIFICATION OF SIGNIFICANT INCONSISTENCY WITH FISCAL PLAN AND BUDGET.—In accordance with such procedures as the Oversight Board may establish, after sending a notification to the Governor and Legislature under paragraph (3)(C) that a law is significantly inconsistent with the Fiscal Plan, the Oversight Board shall direct the territorial government to—

(i) correct the law to eliminate the inconsistency; or

(ii) provide an explanation for the inconsistency that the Oversight Board finds reasonable and appropriate.

(5) FAILURE TO COMPLY.—If the territorial government fails to comply with a direction given by the Oversight Board under paragraph (4) with respect to a law, the Oversight Board may take such actions as it considers necessary, consistent with this Act, to ensure that the enactment or enforcement of the law will not adversely affect the territorial government's compliance with the Fiscal Plan, including preventing the enforcement or application of the law.

(6) PRELIMINARY REVIEW OF PROPOSED ACTS.—At the request of the Legislature, the Oversight Board may conduct a preliminary review of proposed legislation before the Legislature to determine whether the legislation as proposed would be consistent with the applicable Fiscal Plan under this subtitle, except that any such preliminary review shall not be binding on the Oversight Board in reviewing any law subsequently submitted under this subsection.

(b) EFFECT OF APPROVED FISCAL PLAN ON CONTRACTS, RULES, AND REGULATIONS.—

(1) TRANSPARENCY IN CONTRACTING.—The Oversight Board shall work with a covered territory's office of the comptroller or any functionally equivalent entity to promote compliance with the applicable law of any covered territory that requires agencies and instrumentalities of the territorial government to maintain a registry of all contracts executed, including amendments thereto, and to remit a copy to the office of the comptroller for inclusion in a comprehensive database available to the public. With respect to Puerto Rico, the term "applicable law" refers to 2 L.P.R.A. 97, as amended.

(2) AUTHORITY TO REVIEW CERTAIN CONTRACTS.—The Oversight Board may establish policies to require prior Oversight Board approval of certain contracts, including leases and contracts to a governmental entity or government-owned corporations rather than private enterprises that are proposed to be executed by the territorial government, to ensure that such proposed contracts promote market competition and are not inconsistent with the approved Fiscal Plan.

(3) SENSE OF CONGRESS.—It is the sense of Congress that any policies established by the Oversight Board pursuant to paragraph (2) should be designed to make the government contracting process more effective, to increase the public's faith

in this process, to make appropriate use of the Oversight Board's time and resources, to make the territorial government a facilitator and not a competitor to private enterprise, and to avoid creating any additional bureaucratic obstacles to efficient contracting.

(4) AUTHORITY TO REVIEW CERTAIN RULES, REGULATIONS, AND EXECUTIVE ORDERS.—The provisions of this paragraph shall apply with respect to a rule, regulation, or executive order proposed to be issued by the Governor (or the head of any department or agency of the territorial government) in the same manner as such provisions apply to a contract.

(5) FAILURE TO COMPLY.—If a contract, rule, regulation, or executive order fails to comply with policies established by the Oversight Board under this subsection, the Oversight Board may take such actions as it considers necessary to ensure that such contract, rule, executive order or regulation will not adversely affect the territorial government's compliance with the Fiscal Plan, including by preventing the execution or enforcement of the contract, rule, executive order or regulation.

(c) RESTRICTIONS ON BUDGETARY ADJUSTMENTS.—

(1) SUBMISSIONS OF REQUESTS TO OVERSIGHT BOARD.—If the Governor submits a request to the Legislature for the reprogramming of any amounts provided in a certified Budget, the Governor shall submit such request to the Oversight Board, which shall analyze whether the proposed reprogramming is significantly inconsistent with the Budget, and submit its analysis to the Legislature as soon as practicable after receiving the request.

(2) NO ACTION PERMITTED UNTIL ANALYSIS RECEIVED.—The Legislature shall not adopt a reprogramming, and no officer or employee of the territorial government may carry out any reprogramming, until the Oversight Board has provided the Legislature with an analysis that certifies such reprogramming will not be inconsistent with the Fiscal Plan and Budget.

(3) PROHIBITION ON ACTION UNTIL OVERSIGHT BOARD IS APPOINTED.—

(A) During the period after a territory becomes a covered territory and prior to the appointment of all members and the Chair of the Oversight Board, such covered territory shall not enact new laws that either permit the transfer of any funds or assets outside the ordinary course of business or that are inconsistent with the constitution or laws of the territory as of the date of enactment of this Act, provided that any executive or legislative action authorizing the movement of funds or assets during this time period may be subject to review and rescission by the Oversight Board upon appointment of the Oversight Board's full membership.

(B) Upon appointment of the Oversight Board's full membership, the Oversight Board may review, and in its sole discretion, rescind, any law that—

(i) was enacted during the period between, with respect to Puerto Rico, May 4, 2016; or with respect to any other territory, 45 days prior to the establishment of the Oversight Board for such territory, and the date of appointment of all members and the Chair of the Oversight Board; and

S. 2328—25

(ii) alters pre-existing priorities of creditors in a manner outside the ordinary course of business or inconsistent with the territory's constitution or the laws of the territory as of, in the case of Puerto Rico, May 4, 2016, or with respect to any other territory, 45 days prior to the establishment of the Oversight Board for such territory; but such rescission shall only be to the extent that the law alters such priorities.

(d) IMPLEMENTATION OF FEDERAL PROGRAMS.—In taking actions under this Act, the Oversight Board shall not exercise applicable authorities to impede territorial actions taken to—

(1) comply with a court-issued consent decree or injunction, or an administrative order or settlement with a Federal agency, with respect to Federal programs;

(2) implement a federally authorized or federally delegated program;

(3) implement territorial laws, which are consistent with a certified Fiscal Plan, that execute Federal requirements and standards; or

(4) preserve and maintain federally funded mass transportation assets.

SEC. 205. RECOMMENDATIONS ON FINANCIAL STABILITY AND MANAGEMENT RESPONSIBILITY.

(a) IN GENERAL.—The Oversight Board may at any time submit recommendations to the Governor or the Legislature on actions the territorial government may take to ensure compliance with the Fiscal Plan, or to otherwise promote the financial stability, economic growth, management responsibility, and service delivery efficiency of the territorial government, including recommendations relating to—

(1) the management of the territorial government's financial affairs, including economic forecasting and multiyear fiscal forecasting capabilities, information technology, placing controls on expenditures for personnel, reducing benefit costs, reforming procurement practices, and placing other controls on expenditures;

(2) the structural relationship of departments, agencies, and independent agencies within the territorial government;

(3) the modification of existing revenue structures, or the establishment of additional revenue structures;

(4) the establishment of alternatives for meeting obligations to pay for the pensions of territorial government employees;

(5) modifications or transfers of the types of services that are the responsibility of, and are delivered by the territorial government;

(6) modifications of the types of services that are delivered by entities other than the territorial government under alternative service delivery mechanisms;

(7) the effects of the territory's laws and court orders on the operations of the territorial government;

(8) the establishment of a personnel system for employees of the territorial government that is based upon employee performance standards;

(9) the improvement of personnel training and proficiency, the adjustment of staffing levels, and the improvement of

S. 2328—26

training and performance of management and supervisory personnel; and

(10) the privatization and commercialization of entities within the territorial government.

(b) RESPONSE TO RECOMMENDATIONS BY THE TERRITORIAL GOVERNMENT.—

(1) IN GENERAL.—In the case of any recommendations submitted under subsection (a) that are within the authority of the territorial government to adopt, not later than 90 days after receiving the recommendations, the Governor or the Legislature (whichever has the authority to adopt the recommendation) shall submit a statement to the Oversight Board that provides notice as to whether the territorial government will adopt the recommendations.

(2) IMPLEMENTATION PLAN REQUIRED FOR ADOPTED RECOMMENDATIONS.—If the Governor or the Legislature (whichever is applicable) notifies the Oversight Board under paragraph (1) that the territorial government will adopt any of the recommendations submitted under subsection (a), the Governor or the Legislature (whichever is applicable) shall include in the statement a written plan to implement the recommendation that includes—

(A) specific performance measures to determine the extent to which the territorial government has adopted the recommendation; and

(B) a clear and specific timetable pursuant to which the territorial government will implement the recommendation.

(3) EXPLANATIONS REQUIRED FOR RECOMMENDATIONS NOT ADOPTED.—If the Governor or the Legislature (whichever is applicable) notifies the Oversight Board under paragraph (1) that the territorial government will not adopt any recommendation submitted under subsection (a) that the territorial government has authority to adopt, the Governor or the Legislature shall include in the statement explanations for the rejection of the recommendations, and the Governor or the Legislature shall submit such statement of explanations to the President and Congress.

**SEC. 206. OVERSIGHT BOARD DUTIES RELATED TO RESTRUCTURING.**

(a) REQUIREMENTS FOR RESTRUCTURING CERTIFICATION.—The Oversight Board, prior to issuing a restructuring certification regarding an entity (as such term is defined in section 101 of title 11, United States Code), shall determine, in its sole discretion, that—

(1) the entity has made good-faith efforts to reach a consensual restructuring with creditors;

(2) the entity has—

(A) adopted procedures necessary to deliver timely audited financial statements; and

(B) made public draft financial statements and other information sufficient for any interested person to make an informed decision with respect to a possible restructuring;

(3) the entity is either a covered territory that has adopted a Fiscal Plan certified by the Oversight Board, a covered territorial instrumentality that is subject to a Territory Fiscal Plan

certified by the Oversight Board, or a covered territorial instrumentality that has adopted an Instrumentality Fiscal Plan certified by the Oversight Board; and

(4)(A) no order approving a Qualifying Modification under section 601 has been entered with respect to such entity; or

(B) if an order approving a Qualifying Modification has been entered with respect to such entity, the entity is unable to make its debt payments notwithstanding the approved Qualifying Modification, in which case, all claims affected by the Qualifying Modification shall be subject to a title III case.

(b) ISSUANCE OF RESTRUCTURING CERTIFICATION.—The issuance of a restructuring certification under this section requires a vote of no fewer than 5 members of the Oversight Board in the affirmative, which shall satisfy the requirement set forth in section 302(2) of this Act.

## SEC. 207. OVERSIGHT BOARD AUTHORITY RELATED TO DEBT ISSUANCE.

For so long as the Oversight Board remains in operation, no territorial government may, without the prior approval of the Oversight Board, issue debt or guarantee, exchange, modify, repurchase, redeem, or enter into similar transactions with respect to its debt.

## SEC. 208. REQUIRED REPORTS.

(a) ANNUAL REPORT.—Not later than 30 days after the last day of each fiscal year, the Oversight Board shall submit a report to the President, Congress, the Governor and the Legislature, describing—

(1) the progress made by the territorial government in meeting the objectives of this Act during the fiscal year;

(2) the assistance provided by the Oversight Board to the territorial government in meeting the purposes of this Act during the fiscal year;

(3) recommendations to the President and Congress on changes to this Act or other Federal laws, or other actions of the Federal Government, that would assist the territorial government in complying with any certified Fiscal Plan;

(4) the precise manner in which funds allocated to the Oversight Board under section 107 and, as applicable, section 104(e) have been spent by the Oversight Board during the fiscal year; and

(5) any other activities of the Oversight Board during the fiscal year.

(b) REPORT ON DISCRETIONARY TAX ABATEMENT AGREEMENTS.— Within six months of the establishment of the Oversight Board, the Governor shall submit a report to the Oversight Board documenting all existing discretionary tax abatement or similar tax relief agreements to which the territorial government, or any territorial instrumentality, is a party, provided that—

(1) nothing in this Act shall be interpreted to limit the power of the territorial government or any territorial instrumentality to execute or modify discretionary tax abatement or similar tax relief agreements, or to enforce compliance with the terms and conditions of any discretionary tax abatement or similar tax relief agreement, to which the territorial government or any territorial instrumentality is a party; and

S. 2328—28

(2) the members and staff of the Oversight Board shall not disclose the contents of the report described in this subsection, and shall otherwise comply with all applicable territorial and Federal laws and regulations regarding the handling of confidential taxpayer information.

(c) QUARTERLY REPORTS OF CASH FLOW.—The Oversight Board, when feasible, shall report on the amount of cash flow available for the payment of debt service on all notes, bonds, debentures, credit agreements, or other instruments for money borrowed whose enforcement is subject to a stay or moratorium hereunder, together with any variance from the amount set forth in the debt sustainability analysis of the Fiscal Plan under section 201(b)(1)(I).

**SEC. 209. TERMINATION OF OVERSIGHT BOARD.**

An Oversight Board shall terminate upon certification by the Oversight Board that—

(1) the applicable territorial government has adequate access to short-term and long-term credit markets at reasonable interest rates to meet the borrowing needs of the territorial government; and

(2) for at least 4 consecutive fiscal years—

(A) the territorial government has developed its Budgets in accordance with modified accrual accounting standards; and

(B) the expenditures made by the territorial government during each fiscal year did not exceed the revenues of the territorial government during that year, as determined in accordance with modified accrual accounting standards.

**SEC. 210. NO FULL FAITH AND CREDIT OF THE UNITED STATES.**

(a) IN GENERAL.—The full faith and credit of the United States is not pledged for the payment of any principal of or interest on any bond, note, or other obligation issued by a covered territory or covered territorial instrumentality. The United States is not responsible or liable for the payment of any principal of or interest on any bond, note, or other obligation issued by a covered territory or covered territorial instrumentality.

(b) SUBJECT TO APPROPRIATIONS.—Any claim to which the United States is determined to be liable under this Act shall be subject to appropriations.

(c) FUNDING.—No Federal funds shall be authorized by this Act for the payment of any liability of the territory or territorial instrumentality.

**SEC. 211. ANALYSIS OF PENSIONS.**

(a) DETERMINATION.—If the Oversight Board determines, in its sole discretion, that a pension system of the territorial government is materially underfunded, the Oversight Board shall conduct an analysis prepared by an independent actuary of such pension system to assist the Oversight Board in evaluating the fiscal and economic impact of the pension cash flows.

(b) PROVISIONS OF ANALYSIS.—An analysis conducted under subsection (a) shall include—

(1) an actuarial study of the pension liabilities and funding strategy that includes a forward looking projection of payments of at least 30 years of benefit payments and funding strategy to cover such payments;

S. 2328—29

(2) sources of funding to cover such payments;

(3) a review of the existing benefits and their sustainability; and

(4) a review of the system's legal structure and operational arrangements, and any other studies of the pension system the Oversight Board shall deem necessary.

(c) SUPPLEMENTARY INFORMATION.—In any case, the analysis conducted under subsection (a) shall include information regarding the fair market value and liabilities using an appropriate discount rate as determined by the Oversight Board.

**SEC. 212. INTERVENTION IN LITIGATION.**

(a) INTERVENTION.—The Oversight Board may intervene in any litigation filed against the territorial government.

(b) INJUNCTIVE RELIEF.—

(1) IN GENERAL.—If the Oversight Board intervenes in a litigation under subsection (a), the Oversight Board may seek injunctive relief, including a stay of litigation.

(2) NO INDEPENDENT BASIS FOR RELIEF.—This section does not create an independent basis on which injunctive relief, including a stay of litigation, may be granted.

# TITLE III—ADJUSTMENTS OF DEBTS

**SEC. 301. APPLICABILITY OF OTHER LAWS; DEFINITIONS.**

(a) SECTIONS APPLICABLE TO CASES UNDER THIS TITLE.—Sections 101 (except as otherwise provided in this section), 102, 104, 105, 106, 107, 108, 112, 333, 344, 347(b), 349, 350(b), 351, 361, 362, 364(c), 364(d), 364(e), 364(f), 365, 366, 501, 502, 503, 504, 506, 507(a)(2), 509, 510, 524(a)(1), 524(a)(2), 544, 545, 546, 547, 548, 549(a), 549(c), 549(d), 550, 551, 552, 553, 555, 556, 557, 559, 560, 561, 562, 902 (except as otherwise provided in this section), 922, 923, 924, 925, 926, 927, 928, 942, 944, 945, 946, 1102, 1103, 1109, 1111(b), 1122, 1123(a)(1), 1123(a)(2), 1123(a)(3), 1123(a)(4), 1123(a)(5), 1123(b), 1123(d), 1124, 1125, 1126(a), 1126(b), 1126(c), 1126(e), 1126(f), 1126(g), 1127(d), 1128, 1129(a)(2), 1129(a)(3), 1129(a)(6), 1129(a)(8), 1129(a)(10), 1129(b)(1), 1129(b)(2)(A), 1129(b)(2)(B), 1142(b), 1143, 1144, 1145, and 1146(a) of title 11, United States Code, apply in a case under this title and section 930 of title 11, United States Code, applies in a case under this title; however, section 930 shall not apply in any case during the first 120 days after the date on which such case is commenced under this title.

(b) MEANINGS OF TERMS.—A term used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), has the meaning given to the term for the purpose of the applicable section, unless the term is otherwise defined in this title.

(c) DEFINITIONS.—In this title:

(1) AFFILIATE.—The term "affiliate" means, in addition to the definition made applicable in a case under this title by subsection (a)—

(A) for a territory, any territorial instrumentality; and

(B) for a territorial instrumentality, the governing territory and any of the other territorial instrumentalities of the territory.

S. 2328—30

(2) DEBTOR.—The term "debtor" means the territory or covered territorial instrumentality concerning which a case under this title has been commenced.

(3) HOLDER OF A CLAIM OR INTEREST.—The term "holder of a claim or interest", when used in section 1126 of title 11, United States Code, made applicable in a case under this title by subsection (a)—

(A) shall exclude any Issuer or Authorized Instrumentality of the Territory Government Issuer (as defined under Title VI of this Act) or a corporation, trust or other legal entity that is controlled by the Issuer or an Authorized Territorial Instrumentality of the Territory Government Issuer, provided that the beneficiaries of such claims, to the extent they are not referenced in this subparagraph, shall not be excluded, and that, for each excluded trust or other legal entity, the court shall, upon the request of any participant or beneficiary of such trust or entity, at any time after the commencement of the case, order the appointment of a separate committee of creditors pursuant to section 1102(a)(2) of title 11, United States Code; and

(B) with reference to Insured Bonds, shall mean the monoline insurer insuring such Insured Bond to the extent such insurer is granted the right to vote Insured Bonds for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents pursuant to which such Insured Bond was issued and insured.

(4) INSURED BOND.—The term "Insured Bond" means a bond subject to a financial guarantee or similar insurance contract, policy and/or surety issued by a monoline insurer.

(5) PROPERTY OF THE ESTATE.—The term "property of the estate", when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means property of the debtor.

(6) STATE.—The term "State" when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a) means State or territory when used in reference to the relationship of a State to the municipality of the State or the territorial instrumentality of a territory, as applicable.

(7) TRUSTEE.—The term "trustee", when used in a section of title 11, United States Code, made applicable in a case under this title by subsection (a), means the Oversight Board, except as provided in section 926 of title 11, United States Code. The term "trustee" as described in this paragraph does not mean the U.S. Trustee, an official of the United States Trustee Program, which is a component of the United States Department of Justice.

(d) REFERENCE TO TITLE.—Solely for purposes of this title, a reference to "this title", "this chapter", or words of similar import in a section of title 11, United States Code, made applicable in a case under this title by subsection (a) or to "this title", "title 11", "Chapter 9", "Chapter 11", "the Code", or words of similar import in the Federal Rules of Bankruptcy Procedure made applicable in a case under this title shall be deemed to be a reference to this title.

S. 2328—31

(e) SUBSTANTIALLY SIMILAR.—In determining whether claims are "substantially similar" for the purpose of section 1122 of title 11, United States Code, made applicable in a case under this title by subsection (a), the Oversight Board shall consider whether such claims are secured and whether such claims have priority over other claims.

(f) OPERATIVE CLAUSES.—A section made applicable in a case under this title by subsection (a) that is operative if the business of the debtor is authorized to be operated is operative in a case under this title.

### SEC. 302. WHO MAY BE A DEBTOR.

An entity may be a debtor under this title if—

(1) the entity is—

(A) a territory that has requested the establishment of an Oversight Board or has had an Oversight Board established for it by the United States Congress in accordance with section 101 of this Act; or

(B) a covered territorial instrumentality of a territory described in paragraph (1)(A);

(2) the Oversight Board has issued a certification under section 206(b) of this Act for such entity; and

(3) the entity desires to effect a plan to adjust its debts.

### SEC. 303. RESERVATION OF TERRITORIAL POWER TO CONTROL TERRITORY AND TERRITORIAL INSTRUMENTALITIES.

Subject to the limitations set forth in titles I and II of this Act, this title does not limit or impair the power of a covered territory to control, by legislation or otherwise, the territory or any territorial instrumentality thereof in the exercise of the political or governmental powers of the territory or territorial instrumentality, including expenditures for such exercise, but whether or not a case has been or can be commenced under this title—

(1) a territory law prescribing a method of composition of indebtedness or a moratorium law, but solely to the extent that it prohibits the payment of principal or interest by an entity not described in section 109(b)(2) of title 11, United States Code, may not bind any creditor of a covered territory or any covered territorial instrumentality thereof that does not consent to the composition or moratorium;

(2) a judgment entered under a law described in paragraph (1) may not bind a creditor that does not consent to the composition; and

(3) unlawful executive orders that alter, amend, or modify rights of holders of any debt of the territory or territorial instrumentality, or that divert funds from one territorial instrumentality to another or to the territory, shall be preempted by this Act.

### SEC. 304. PETITION AND PROCEEDINGS RELATING TO PETITION.

(a) COMMENCEMENT OF CASE.—A voluntary case under this title is commenced by the filing with the district court of a petition by the Oversight Board pursuant to the determination under section 206 of this Act.

(b) OBJECTION TO PETITION.—After any objection to the petition, the court, after notice and a hearing, may dismiss the petition if the petition does not meet the requirements of this title; however, this subsection shall not apply in any case during the first 120

S. 2328—32

days after the date on which such case is commenced under this title.

(c) ORDER FOR RELIEF.—The commencement of a case under this title constitutes an order for relief.

(d) APPEAL.—The court may not, on account of an appeal from an order for relief, delay any proceeding under this title in the case in which the appeal is being taken, nor shall any court order a stay of such proceeding pending such appeal.

(e) VALIDITY OF DEBT.—The reversal on appeal of a finding of jurisdiction shall not affect the validity of any debt incurred that is authorized by the court under section 364(c) or 364(d) of title 11, United States Code.

(f) JOINT FILING OF PETITIONS AND PLANS PERMITTED.—The Oversight Board, on behalf of debtors under this title, may file petitions or submit or modify plans of adjustment jointly if the debtors are affiliates; provided, however, that nothing in this title shall be construed as authorizing substantive consolidation of the cases of affiliated debtors.

(g) JOINT ADMINISTRATION OF AFFILIATED CASES.—If the Oversight Board, on behalf of a debtor and one or more affiliates, has filed separate cases and the Oversight Board, on behalf of the debtor or one of the affiliates, files a motion to administer the cases jointly, the court may order a joint administration of the cases.

(h) PUBLIC SAFETY.—This Act may not be construed to permit the discharge of obligations arising under Federal police or regulatory laws, including laws relating to the environment, public health or safety, or territorial laws implementing such Federal legal provisions. This includes compliance obligations, requirements under consent decrees or judicial orders, and obligations to pay associated administrative, civil, or other penalties.

(i) VOTING ON DEBT ADJUSTMENT PLANS NOT STAYED.—Notwithstanding any provision in this title to the contrary, including sections of title 11, United States Code, incorporated by reference, nothing in this section shall prevent the holder of a claim from voting on or consenting to a proposed modification of such claim under title VI of this Act.

SEC. 305. LIMITATION ON JURISDICTION AND POWERS OF COURT.

Subject to the limitations set forth in titles I and II of this Act, notwithstanding any power of the court, unless the Oversight Board consents or the plan so provides, the court may not, by any stay, order, or decree, in the case or otherwise, interfere with—

(1) any of the political or governmental powers of the debtor;

(2) any of the property or revenues of the debtor; or

(3) the use or enjoyment by the debtor of any income-producing property.

SEC. 306. JURISDICTION.

(a) FEDERAL SUBJECT MATTER JURISDICTION.—The district courts shall have—

(1) except as provided in paragraph (2), original and exclusive jurisdiction of all cases under this title; and

(2) except as provided in subsection (b), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, original but not exclusive jurisdiction of all civil proceedings arising

S. 2328—33

under this title, or arising in or related to cases under this title.

(b) PROPERTY JURISDICTION.—The district court in which a case under this title is commenced or is pending shall have exclusive jurisdiction of all property, wherever located, of the debtor as of the commencement of the case.

(c) PERSONAL JURISDICTION.—The district court in which a case under this title is pending shall have personal jurisdiction over any person or entity.

(d) REMOVAL, REMAND, AND TRANSFER.—

(1) REMOVAL.—A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce the police or regulatory power of the governmental unit, to the district court for the district in which the civil action is pending, if the district court has jurisdiction of the claim or cause of action under this section.

(2) REMAND.—The district court to which the claim or cause of action is removed under paragraph (1) may remand the claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision not to remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291 or 1292 of title 28, United States Code, or by the Supreme Court of the United States under section 1254 of title 28, United States Code.

(3) TRANSFER.—A district court shall transfer any civil proceeding arising under this title, or arising in or related to a case under this title, to the district court in which the case under this title is pending.

(e) APPEAL.—

(1) An appeal shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district court.

(2) The court of appeals for the circuit in which a case under this title has venue pursuant to section 307 of this title shall have jurisdiction of appeals from all final decisions, judgments, orders and decrees entered under this title by the district court.

(3) The court of appeals for the circuit in which a case under this title has venue pursuant to section 307 of this title shall have jurisdiction to hear appeals of interlocutory orders or decrees if—

(A) the district court on its own motion or on the request of a party to the order or decree certifies that—

(i) the order or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the order or decree involves a question of law requiring the resolution of conflicting decisions; or

(iii) an immediate appeal from the order or decree may materially advance the progress of the case or proceeding in which the appeal is taken; and

(B) the court of appeals authorizes the direct appeal of the order or decree.

S. 2328—34

(4) If the district court on its own motion or on the request of a party determines that a circumstance specified in clauses (i), (ii), or (iii) of paragraph (3)(A) exists, then the district court shall make the certification described in paragraph (3).

(5) The parties may supplement the certification with a short statement of the basis for the certification issued by the district court under paragraph (3)(A).

(6) Except as provided in section 304(d), an appeal of an interlocutory order or decree does not stay any proceeding of the district court from which the appeal is taken unless the district court, or the court of appeals in which the appeal is pending, issues a stay of such proceedings pending the appeal.

(7) Any request for a certification in respect to an interlocutory appeal of an order or decree shall be made not later than 60 days after the entry of the order or decree.

(f) REALLOCATION OF COURT STAFF.—Notwithstanding any law to the contrary, the clerk of the court in which a case is pending shall reallocate as many staff and assistants as the clerk deems necessary to ensure that the court has adequate resources to provide for proper case management.

## SEC. 307. VENUE.

(a) IN GENERAL.—Venue shall be proper in—

(1) with respect to a territory, the district court for the territory or, for any territory that does not have a district court, the United States District Court for the District of Hawaii; and

(2) with respect to a covered territorial instrumentality, the district court for the territory in which the covered territorial instrumentality is located or, for any territory that does not have a district court, the United States District Court for the District of Hawaii.

(b) ALTERNATIVE VENUE.—

(1) If the Oversight Board so determines in its sole discretion, then venue shall be proper in the district court for the jurisdiction in which the Oversight Board maintains an office that is located outside the territory.

(2) With respect to paragraph (1), the Oversight Board may consider, among other things—

(A) the resources of the district court to adjudicate a case or proceeding; and

(B) the impact on witnesses who may be called in such a case or proceeding.

## SEC. 308. SELECTION OF PRESIDING JUDGE.

(a) For cases in which the debtor is a territory, the Chief Justice of the United States shall designate a district court judge to sit by designation to conduct the case.

(b) For cases in which the debtor is not a territory, and no motion for joint administration of the debtor's case with the case of its affiliate territory has been filed or there is no case in which the affiliate territory is a debtor, the chief judge of the court of appeals for the circuit embracing the district in which the case is commenced shall designate a district court judge to conduct the case.

S. 2328—35

**SEC. 309. ABSTENTION.**

Nothing in this title prevents a district court in the interests of justice from abstaining from hearing a particular proceeding arising in or related to a case under this title.

**SEC. 310. APPLICABLE RULES OF PROCEDURE.**

The Federal Rules of Bankruptcy Procedure shall apply to a case under this title and to all civil proceedings arising in or related to cases under this title.

**SEC. 311. LEASES.**

A lease to a territory or territorial instrumentality shall not be treated as an executory contract or unexpired lease for the purposes of section 365 or 502(b)(6) of title 11, United States Code, solely by reason of the lease being subject to termination in the event the debtor fails to appropriate rent.

**SEC. 312. FILING OF PLAN OF ADJUSTMENT.**

(a) EXCLUSIVITY.—Only the Oversight Board, after the issuance of a certificate pursuant to section 104(j) of this Act, may file a plan of adjustment of the debts of the debtor.

(b) DEADLINE FOR FILING PLAN.—If the Oversight Board does not file a plan of adjustment with the petition, the Oversight Board shall file a plan of adjustment at the time set by the court.

**SEC. 313. MODIFICATION OF PLAN.**

The Oversight Board, after the issuance of a certification pursuant to section 104(j) of this Act, may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of this title. After the Oversight Board files a modification, the plan as modified becomes the plan.

**SEC. 314. CONFIRMATION.**

(a) OBJECTION.—A special tax payer may object to confirmation of a plan.

(b) CONFIRMATION.—The court shall confirm the plan if—

(1) the plan complies with the provisions of title 11 of the United States Code, made applicable to a case under this title by section 301 of this Act;

(2) the plan complies with the provisions of this title;

(3) the debtor is not prohibited by law from taking any action necessary to carry out the plan;

(4) except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that on the effective date of the plan each holder of a claim of a kind specified in 507(a)(2) of title 11, United States Code, will receive on account of such claim cash equal to the allowed amount of such claim;

(5) any legislative, regulatory, or electoral approval necessary under applicable law in order to carry out any provision of the plan has been obtained, or such provision is expressly conditioned on such approval;

(6) the plan is feasible and in the best interests of creditors, which shall require the court to consider whether available remedies under the non-bankruptcy laws and constitution of the territory would result in a greater recovery for the creditors than is provided by such plan; and

S. 2328—36

(7) the plan is consistent with the applicable Fiscal Plan certified by the Oversight Board under title II.

(c) CONFIRMATION FOR DEBTORS WITH A SINGLE CLASS OF CLAIMS.—If all of the requirements of section 314(b) of this title and section 1129(a) of title 11, United States Code, incorporated into this title by section 301 other than sections 1129(a)(8) and 1129(a)(10) are met with respect to a plan—

(1) with respect to which all claims are substantially similar under section 301(e) of this title;

(2) that includes only one class of claims, which claims are impaired claims; and

(3) that was not accepted by such impaired class,

the court shall confirm the plan notwithstanding the requirements of such sections 1129(a)(8) and 1129(a)(10) of title 11, United States Code if the plan is fair and equitable and does not discriminate unfairly with respect to such impaired class.

### SEC. 315. ROLE AND CAPACITY OF OVERSIGHT BOARD.

(a) ACTIONS OF OVERSIGHT BOARD.—For the purposes of this title, the Oversight Board may take any action necessary on behalf of the debtor to prosecute the case of the debtor, including—

(1) filing a petition under section 304 of this Act;

(2) submitting or modifying a plan of adjustment under sections 312 and 313; or

(3) otherwise generally submitting filings in relation to the case with the court.

(b) REPRESENTATIVE OF DEBTOR.—The Oversight Board in a case under this title is the representative of the debtor.

### SEC. 316. COMPENSATION OF PROFESSIONALS.

(a) After notice to the parties in interest and the United States Trustee and a hearing, the court may award to a professional person employed by the debtor (in the debtor's sole discretion), the Oversight Board (in the Oversight Board's sole discretion), a committee under section 1103 of title 11, United States Code, or a trustee appointed by the court under section 926 of title 11, United States Code—

(1) reasonable compensation for actual, necessary services rendered by the professional person, or attorney and by any paraprofessional person employed by any such person; and

(2) reimbursement for actual, necessary expenses.

(b) The court may, on its own motion or on the motion of the United States Trustee or any other party in interest, award compensation that is less than the amount of compensation that is requested.

(c) In determining the amount of reasonable compensation to be awarded to a professional person, the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—

(1) the time spent on such services;

(2) the rates charged for such services;

(3) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this chapter;

(4) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

S. 2328—37

(5) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the restructuring field; and

(6) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title or title 11, United States Code.

(d) The court shall not allow compensation for—

(1) unnecessary duplication of services; or

(2) services that were not—

(A) reasonably likely to benefit the debtor; or

(B) necessary to the administration of the case.

(e) The court shall reduce the amount of compensation awarded under this section by the amount of any interim compensation awarded under section 317 of this title, and, if the amount of such interim compensation exceeds the amount of compensation awarded under this section, may order the return of the excess to the debtor.

(f) Any compensation awarded for the preparation of a fee application shall be based on the level and skill reasonably required to prepare the application.

**SEC. 317. INTERIM COMPENSATION.**

A debtor's attorney, or any professional person employed by the debtor (in the debtor's sole discretion), the Oversight Board (in the Oversight Board's sole discretion), a committee under section 1103 of title 11, United States Code, or a trustee appointed by the court under section 926 of title 11, United States Code, may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered before the date of such an application or reimbursement for expenses incurred before such date as is provided under section 316 of this title.

# TITLE IV—MISCELLANEOUS PROVISIONS

**SEC. 401. RULES OF CONSTRUCTION.**

Nothing in this Act is intended, or may be construed—

(1) to limit the authority of Congress to exercise legislative authority over the territories pursuant to Article IV, section 3 of the Constitution of the United States;

(2) to authorize the application of section 104(f) of this Act (relating to issuance of subpoenas) to judicial officers or employees of territory courts;

(3) to alter, amend, or abrogate any provision of the Covenant To Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America (48 U.S.C. 1801 et seq.); or

(4) to alter, amend, or abrogate the treaties of cession regarding certain islands of American Samoa (48 U.S.C. 1661).

S. 2328—38

### SEC. 402. RIGHT OF PUERTO RICO TO DETERMINE ITS FUTURE POLITICAL STATUS.

Nothing in this Act shall be interpreted to restrict Puerto Rico's right to determine its future political status, including by conducting the plebiscite as authorized by Public Law 113–76.

### SEC. 403. FIRST MINIMUM WAGE IN PUERTO RICO.

Section 6(g) of the Fair Labor Standards Act of 1938 (29 U.S.C. 206(g)) is amended by striking paragraphs (2) through (4) and inserting the following:

"(2) In lieu of the rate prescribed by subsection (a)(1), the Governor of Puerto Rico, subject to the approval of the Financial Oversight and Management Board established pursuant to section 101 of the Puerto Rico Oversight, Management, and Economic Stability Act, may designate a time period not to exceed four years during which employers in Puerto Rico may pay employees who are initially employed after the date of enactment of such Act a wage which is not less than the wage described in paragraph (1). Notwithstanding the time period designated, such wage shall not continue in effect after such Board terminates in accordance with section 209 of such Act.

"(3) No employer may take any action to displace employees (including partial displacements such as reduction in hours, wages, or employment benefits) for purposes of hiring individuals at the wage authorized in paragraph (1) or (2).

"(4) Any employer who violates this subsection shall be considered to have violated section 15(a)(3) (29 U.S.C. 215(a)(3)).

"(5) This subsection shall only apply to an employee who has not attained the age of 20 years, except in the case of the wage applicable in Puerto Rico, 25 years, until such time as the Board described in paragraph (2) terminates in accordance with section 209 of the Act described in such paragraph.".

### SEC. 404. APPLICATION OF REGULATION TO PUERTO RICO.

(a) SPECIAL RULE.—The regulations proposed by the Secretary of Labor relating to exemptions regarding the rates of pay for executive, administrative, professional, outside sales, and computer employees, and published in a notice in the Federal Register on July 6, 2015, and any final regulations issued related to such notice, shall have no force or effect in the Commonwealth of Puerto Rico until—

(1) the Comptroller General of the United States completes the assessment and transmits the report required under subsection (b); and

(2) the Secretary of Labor, taking into account the assessment and report of the Comptroller General, provides a written determination to Congress that applying such rule to Puerto Rico would not have a negative impact on the economy of Puerto Rico.

(b) ASSESSMENT AND REPORT.—Not later than two years after the date of enactment of this Act, the Comptroller General shall examine the economic conditions in Puerto Rico and shall transmit a report to Congress assessing the impact of applying the regulations described in subsection (a) to Puerto Rico, taking into consideration regional, metropolitan, and non-metropolitan salary and cost-of-living differences.

(c) SENSE OF CONGRESS.—It is the sense of Congress that—

S. 2328—39

(1) the Bureau of the Census should conduct a study to determine the feasibility of expanding data collection to include Puerto Rico and the other United States territories in the Current Population Survey, which is jointly administered by the Bureau of the Census and the Bureau of Labor Statistics, and which is the primary source of labor force statistics for the population of the United States; and

(2) if necessary, the Bureau of the Census should request the funding required to conduct this feasibility study as part of its budget submission to Congress for fiscal year 2018.

**SEC. 405. AUTOMATIC STAY UPON ENACTMENT.**

(a) DEFINITIONS.—In this section:

(1) LIABILITY.—The term "Liability" means a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness for borrowed money, including rights, entitlements, or obligations whether such rights, entitlements, or obligations arise from contract, statute, or any other source of law related to such a bond, loan, letter of credit, other borrowing title, obligation of insurance, or other financial indebtedness in physical or dematerialized form, of which—

(A) the issuer, obligor, or guarantor is the Government of Puerto Rico; and

(B) the date of issuance or incurrence precedes the date of enactment of this Act.

(2) LIABILITY CLAIM.—The term "Liability Claim" means, as it relates to a Liability—

(A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

(B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

(b) IN GENERAL.—Except as provided in subsection (c) of this section, the establishment of an Oversight Board for Puerto Rico (i.e., the enactment of this Act) in accordance with section 101 operates with respect to a Liability as a stay, applicable to all entities (as such term is defined in section 101 of title 11, United States Code), of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Government of Puerto Rico that was or could have been commenced before the enactment of this Act, or to recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of this Act;

(2) the enforcement, against the Government of Puerto Rico or against property of the Government of Puerto Rico, of a judgment obtained before the enactment of this Act;

(3) any act to obtain possession of property of the Government of Puerto Rico or of property from the Government of Puerto Rico or to exercise control over property of the Government of Puerto Rico;

S. 2328—40

(4) any act to create, perfect, or enforce any lien against property of the Government of Puerto Rico;

(5) any act to create, perfect, or enforce against property of the Government of Puerto Rico any lien to the extent that such lien secures a Liability Claim that arose before the enactment of this Act;

(6) any act to collect, assess, or recover a Liability Claim against the Government of Puerto Rico that arose before the enactment of this Act; and

(7) the setoff of any debt owing to the Government of Puerto Rico that arose before the enactment of this Act against any Liability Claim against the Government of Puerto Rico.

(c) STAY NOT OPERABLE.—The establishment of an Oversight Board for Puerto Rico in accordance with section 101 does not operate as a stay—

(1) solely under subsection (b)(1) of this section, of the continuation of, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the Government of Puerto Rico that was commenced on or before December 18, 2015; or

(2) of the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power.

(d) CONTINUATION OF STAY.—Except as provided in subsections (e), (f), and (g) the stay under subsection (b) continues until the earlier of—

(1) the later of—

(A) the later of—

(i) February 15, 2017; or

(ii) six months after the establishment of an Oversight Board for Puerto Rico as established by section 101(b);

(B) the date that is 75 days after the date in subparagraph (A) if the Oversight Board delivers a certification to the Governor that, in the Oversight Board's sole discretion, an additional 75 days are needed to seek to complete a voluntary process under title VI of this Act with respect to the government of the Commonwealth of Puerto Rico or any of its territorial instrumentalities; or

(C) the date that is 60 days after the date in subparagraph (A) if the district court to which an application has been submitted under subparagraph 601(m)(1)(D) of this Act determines, in the exercise of the court's equitable powers, that an additional 60 days are needed to complete a voluntary process under title VI of this Act with respect to the government of the Commonwealth of Puerto Rico or any of its territorial instrumentalities; or

(2) with respect to the government of the Commonwealth of Puerto Rico or any of its territorial instrumentalities, the date on which a case is filed by or on behalf of the government of the Commonwealth of Puerto Rico or any of its territorial instrumentalities, as applicable, under title III.

(e) JURISDICTION, RELIEF FROM STAY.—

S. 2328—41

(1) The United States District Court for the District of Puerto Rico shall have original and exclusive jurisdiction of any civil actions arising under or related to this section.

(2) On motion of or action filed by a party in interest and after notice and a hearing, the United States District Court for the District of Puerto Rico, for cause shown, shall grant relief from the stay provided under subsection (b) of this section.

(f) TERMINATION OF STAY; HEARING.—Forty-five days after a request under subsection (e)(2) for relief from the stay of any act against property of the Government of Puerto Rico under subsection (b), such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (e)(2). A hearing under this subsection may be a preliminary hearing, or may be consolidated with the final hearing under subsection (e)(2). The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (e)(2) if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the thirty-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

(g) RELIEF TO PREVENT IRREPARABLE DAMAGE.—Upon request of a party in interest, the court, with or without a hearing, shall grant such relief from the stay provided under subsection (b) as is necessary to prevent irreparable damage to the interest of an entity in property, if such interest will suffer such damage before there is an opportunity for notice and a hearing under subsection (e) or (f).

(h) ACT IN VIOLATION OF STAY IS VOID.—Any order, judgment, or decree entered in violation of this section and any act taken in violation of this section is void, and shall have no force or effect, and any person found to violate this section may be liable for damages, costs, and attorneys' fees incurred in defending any action taken in violation of this section, and the Oversight Board or the Government of Puerto Rico may seek an order from the court enforcing the provisions of this section.

(i) GOVERNMENT OF PUERTO RICO.—For purposes of this section, the term "Government of Puerto Rico", in addition to the definition set forth in section 5(11) of this Act, shall include—

(1) the individuals, including elected and appointed officials, directors, officers of and employees acting in their official capacity on behalf of the Government of Puerto Rico; and

(2) the Oversight Board, including the directors and officers of and employees acting in their official capacity on behalf of the Oversight Board.

(j) NO DEFAULT UNDER EXISTING CONTRACTS.—

(1) Notwithstanding any contractual provision or applicable law to the contrary and so long as a stay under this section is in effect, the holder of a Liability Claim or any other claim (as such term is defined in section 101 of title 11, United States Code) may not exercise or continue to exercise any

S. 2328—42

remedy under a contract or applicable law in respect to the Government of Puerto Rico or any of its property—

(A) that is conditioned upon the financial condition of, or the commencement of a restructuring, insolvency, bankruptcy, or other proceeding (or a similar or analogous process) by, the Government of Puerto Rico, including a default or an event of default thereunder; or

(B) with respect to Liability Claims—

(i) for the non-payment of principal or interest; or

(ii) for the breach of any condition or covenant.

(2) The term "remedy" as used in paragraph (1) shall be interpreted broadly, and shall include any right existing in law or contract, including any right to—

(A) setoff;

(B) apply or appropriate funds;

(C) seek the appointment of a custodian (as such term is defined in section 101(11) of title 11, United States Code);

(D) seek to raise rates; or

(E) exercise control over property of the Government of Puerto Rico.

(3) Notwithstanding any contractual provision or applicable law to the contrary and so long as a stay under this section is in effect, a contract to which the Government of Puerto Rico is a party may not be terminated or modified, and any right or obligation under such contract may not be terminated or modified, solely because of a provision in such contract is conditioned on—

(A) the insolvency or financial condition of the Government of Puerto Rico at any time prior to the enactment of this Act;

(B) the adoption of a resolution or establishment of an Oversight Board pursuant to section 101 of this Act; or

(C) a default under a separate contract that is due to, triggered by, or a result of the occurrence of the events or matters in paragraph (1)(B).

(4) Notwithstanding any contractual provision to the contrary and so long as a stay under this section is in effect, a counterparty to a contract with the Government of Puerto Rico for the provision of goods and services shall, unless the Government of Puerto Rico agrees to the contrary in writing, continue to perform all obligations under, and comply with the terms of, such contract, provided that the Government of Puerto Rico is not in default under such contract other than as a result of a condition specified in paragraph (3).

(k) EFFECT.—This section does not discharge an obligation of the Government of Puerto Rico or release, invalidate, or impair any security interest or lien securing such obligation. This section does not impair or affect the implementation of any restructuring support agreement executed by the Government of Puerto Rico to be implemented pursuant to Puerto Rico law specifically enacted for that purpose prior to the enactment of this Act or the obligation of the Government of Puerto Rico to proceed in good faith as set forth in any such agreement.

S. 2328—43

(l) PAYMENTS ON LIABILITIES.—Nothing in this section shall be construed to prohibit the Government of Puerto Rico from making any payment on any Liability when such payment becomes due during the term of the stay, and to the extent the Oversight Board, in its sole discretion, determines it is feasible, the Government of Puerto Rico shall make interest payments on outstanding indebtedness when such payments become due during the length of the stay.

(m) FINDINGS.—Congress finds the following:

(1) A combination of severe economic decline, and, at times, accumulated operating deficits, lack of financial transparency, management inefficiencies, and excessive borrowing has created a fiscal emergency in Puerto Rico.

(2) As a result of its fiscal emergency, the Government of Puerto Rico has been unable to provide its citizens with effective services.

(3) The current fiscal emergency has also affected the long-term economic stability of Puerto Rico by contributing to the accelerated outmigration of residents and businesses.

(4) A comprehensive approach to fiscal, management, and structural problems and adjustments that exempts no part of the Government of Puerto Rico is necessary, involving independent oversight and a Federal statutory authority for the Government of Puerto Rico to restructure debts in a fair and orderly process.

(5) Additionally, an immediate—but temporary—stay is essential to stabilize the region for the purposes of resolving this territorial crisis.

(A) The stay advances the best interests common to all stakeholders, including but not limited to a functioning independent Oversight Board created pursuant to this Act to determine whether to appear or intervene on behalf of the Government of Puerto Rico in any litigation that may have been commenced prior to the effectiveness or upon expiration of the stay.

(B) The stay is limited in nature and narrowly tailored to achieve the purposes of this Act, including to ensure all creditors have a fair opportunity to consensually renegotiate terms of repayment based on an accurate financial information that is reviewed by an independent authority or, at a minimum, receive a recovery from the Government of Puerto Rico equal to their best possible outcome absent the provisions of this Act.

(6) Finally, the ability of the Government of Puerto Rico to obtain funds from capital markets in the future will be severely diminished without congressional action to restore its financial accountability and stability.

(n) PURPOSES.—The purposes of this section are to—

(1) provide the Government of Puerto Rico with the resources and the tools it needs to address an immediate existing and imminent crisis;

(2) allow the Government of Puerto Rico a limited period of time during which it can focus its resources on negotiating a voluntary resolution with its creditors instead of defending numerous, costly creditor lawsuits;

S. 2328—44

    (3) provide an oversight mechanism to assist the Government of Puerto Rico in reforming its fiscal governance and support the implementation of potential debt restructuring;

    (4) make available a Federal restructuring authority, if necessary, to allow for an orderly adjustment of all of the Government of Puerto Rico's liabilities; and

    (5) benefit the lives of 3.5 million American citizens living in Puerto Rico by encouraging the Government of Puerto Rico to resolve its longstanding fiscal governance issues and return to economic growth.

    (c) VOTING ON VOLUNTARY AGREEMENTS NOT STAYED.—Notwithstanding any provision in this section to the contrary, nothing in this section shall prevent the holder of a Liability Claim from voting on or consenting to a proposed modification of such Liability Claim under title VI of this Act.

### SEC. 406. PURCHASES BY TERRITORY GOVERNMENTS.

    The text of section 302 of the Omnibus Insular Areas Act of 1992 (48 U.S.C. 1469e), is amended to read as follows: "The Governments of the Commonwealth of Puerto Rico, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, and the United States Virgin Islands are authorized to make purchases through the General Services Administration.".

### SEC. 407. PROTECTION FROM INTER-DEBTOR TRANSFERS.

    (a) PROTECTION OF CREDITORS.—While an Oversight Board for Puerto Rico is in existence, if any property of any territorial instrumentality of Puerto Rico is transferred in violation of applicable law under which any creditor has a valid pledge of, security interest in, or lien on such property, or which deprives any such territorial instrumentality of property in violation of applicable law assuring the transfer of such property to such territorial instrumentality for the benefit of its creditors, then the transferee shall be liable for the value of such property.

    (b) ENFORCEABILITY.—A creditor may enforce rights under this section by bringing an action in the United States District Court for the District of Puerto Rico after the expiration or lifting of the stay of section 405, unless a stay under title III is in effect.

### SEC. 408. GAO REPORT ON SMALL BUSINESS ADMINISTRATION PROGRAMS IN PUERTO RICO.

    Section 15 of the Small Business Act (15 U.S.C. 644) is amended by adding at the end the following new subsection:

    "(t) GAO REPORT ON SMALL BUSINESS ADMINISTRATION PROGRAMS IN PUERTO RICO.—Not later than one year after the date of enactment of this subsection, the Comptroller General of the United States shall submit to the Committee on Small Business of the House of Representatives and the Committee on Small Business and Entrepreneurship of the Senate a report on the application and utilization of contracting activities of the Administration (including contracting activities relating to HUBZone small business concerns) in Puerto Rico. The report shall also identify any provisions of Federal law that may create an obstacle to the efficient implementation of such contracting activities.".

### SEC. 409. CONGRESSIONAL TASK FORCE ON ECONOMIC GROWTH IN PUERTO RICO.

(a) ESTABLISHMENT.—There is established within the legislative branch a Congressional Task Force on Economic Growth in Puerto Rico (hereinafter referred to as the "Task Force").

(b) MEMBERSHIP.—The Task Force shall be composed of eight members as follows:

(1) One member of the House of Representatives, who shall be appointed by the Speaker of the House of Representatives, in coordination with the Chairman of the Committee on Natural Resources of the House of Representatives.

(2) One member of the House of Representatives, who shall be appointed by the Speaker of the House of Representatives, in coordination with the Chairman of the Committee on Ways and Means of the House of Representatives.

(3) One member of the House of Representatives, who shall be appointed by the Minority Leader of the House of Representatives, in coordination with the ranking minority member of the Committee on Natural Resources of the House of Representatives.

(4) One member of the House of Representatives, who shall be appointed by the Minority Leader of the House of Representatives, in coordination with the ranking minority member of the Committee on Ways and Means of the House of Representatives.

(5) One member of the Senate, who shall be appointed by the Majority Leader of the Senate, in coordination with the Chairman of the Committee on Energy and Natural Resources of the Senate.

(6) One member of the Senate, who shall be appointed by the Majority Leader of the Senate, in coordination with the Chairman of the Committee on Finance of the Senate.

(7) One member of the Senate, who shall be appointed by the Minority Leader of the Senate, in coordination with the ranking minority member of the Committee on Energy and Natural Resources of the Senate.

(8) One member of the Senate, who shall be appointed by the Minority Leader of the Senate, in coordination with the ranking minority member of the Committee on Finance of the Senate.

(c) DEADLINE FOR APPOINTMENT.—All appointments to the Task Force shall be made not later than 15 days after the date of enactment of this Act.

(d) CHAIR.—The Speaker shall designate one Member to serve as chair of the Task Force.

(e) VACANCIES.—Any vacancy in the Task Force shall be filled in the same manner as the original appointment.

(f) STATUS UPDATE.—Between September 1, 2016, and September 15, 2016, the Task Force shall provide a status update to the House and Senate that includes—

(1) information the Task Force has collected; and

(2) a discussion on matters the chairman of the Task Force deems urgent for consideration by Congress.

(g) REPORT.—Not later than December 31, 2016, the Task Force shall issue a report of its findings to the House and Senate regarding—

S. 2328—46

(1) impediments in current Federal law and programs to economic growth in Puerto Rico including equitable access to Federal health care programs;

(2) recommended changes to Federal law and programs that, if adopted, would serve to spur sustainable long-term economic growth, job creation, reduce child poverty, and attract investment in Puerto Rico;

(3) the economic effect of Administrative Order No. 346 of the Department of Health of the Commonwealth of Puerto Rico (relating to natural products, natural supplements, and dietary supplements) or any successor or substantially similar order, rule, or guidance of the Commonwealth of Puerto Rico; and

(4) additional information the Task Force deems appropriate.

(h) CONSENSUS VIEWS.—To the greatest extent practicable, the report issued under subsection (f) shall reflect the shared views of all eight Members, except that the report may contain dissenting views.

(i) HEARINGS AND SESSIONS.—The Task Force may, for the purpose of carrying out this section, hold hearings, sit and act at times and places, take testimony, and receive evidence as the Task Force considers appropriate. If the Task Force holds hearings, at least one such hearing must be held in Puerto Rico.

(j) STAKEHOLDER PARTICIPATION.—In carrying out its duties, the Task Force shall consult with the Puerto Rico Legislative Assembly, the Puerto Rico Department of Economic Development and Commerce, and the private sector of Puerto Rico.

(k) RESOURCES.—The Task Force shall carry out its duties by utilizing existing facilities, services, and staff of the House of Representatives and Senate, except that no additional funds are authorized to be appropriated to carry out this section.

(l) TERMINATION.—The Task Force shall terminate upon issuing the report required under subsection (f).

## SEC. 410. REPORT.

Not later than 18 months after the date of the enactment of this Act, the Comptroller General shall submit a report to the Committee on Natural Resources of the House of Representatives and the Committee on Energy and Natural Resources of the Senate describing—

(1) the conditions which led to the level of debt, which should be analyzed, per capita and based upon overall economic activity;

(2) how actions of the territorial government improved or impaired the territory's financial conditions; and

(3) recommendations on non-fiscal actions, or policies that would not imperil America's homeland and national security, that could be taken by Congress or the Administration to avert future indebtedness of territories, while respecting sovereignty and constitutional parameters.

## SEC. 411. REPORT ON TERRITORIAL DEBT.

(a) REPORT REQUIRED.—Not later than one year after the date of the enactment of this Act, and thereafter not less than once every two years, the Comptroller General of the United States shall submit to Congress a report on the public debt of each territory, including—

S. 2328—47

(1) the historical levels of each territory's public debt, current amount and composition of each territory's public debt, and future projections of each territory's public debt;

(2) the historical levels of each territory's revenue, current amount and composition of each territory's revenue, and future projections of each territory's revenue;

(3) the drivers and composition of each territory's public debt;

(4) the effect of Federal laws, mandates, rules, and regulations on each territory's public debt; and

(5) the ability of each territory to repay it's public debt.

(b) MATERIALS.—The government of each territory shall make available to the Comptroller General of the United States all materials necessary to carry out this section.

**SEC. 412. EXPANSION OF HUBZONES IN PUERTO RICO.**

(a) IN GENERAL.—

(1) Section 3(p)(4)(A) of the Small Business Act (15 U.S.C. 632(p)(4)(A)) is amended to read as follows:

"(A) QUALIFIED CENSUS TRACT.—

"(i) IN GENERAL.—The term 'qualified census tract' has the meaning given that term in section 42(d)(5)(B)(ii) of the Internal Revenue Code of 1986.

"(ii) EXCEPTION.—For any metropolitan statistical area in the Commonwealth of Puerto Rico, the term 'qualified census tract' has the meaning given that term in section 42(d)(5)(B)(ii) of the Internal Revenue Code of 1986 as applied without regard to subclause (II) of such section, except that this clause shall only apply—

"(I) 10 years after the date that the Administrator implements this clause, or

"(II) the date on which the Financial Oversight and Management Board for the Commonwealth of Puerto Rico created by the Puerto Rico Oversight, Management, and Economic Stability Act ceases to exist,

whichever event occurs first.".

(2) REGULATIONS.—The Administrator of the Small Business Administration shall issue regulations to implement the amendment made by paragraph (1) not later than 90 days after the date of the enactment of this Act.

(b) IMPROVING OVERSIGHT.—

(1) GUIDANCE.—Not later than 270 days after the date of the enactment of this Act, the Administrator of the Small Business Administration shall develop and implement criteria and guidance on using a risk-based approach to requesting and verifying information from entities applying to be designated or recertified as qualified HUBZone small business concerns (as defined in section 3(p)(5) of the Small Business Act (15 U.S.C. 632(p)(5))).

(2) ASSESSMENT.—Not later 1 year after the date on which the criteria and guidance described in paragraph (1) is implemented, the Comptroller General of the United States shall begin an assessment of such criteria and guidance. Not later than 6 months after beginning such an assessment, the Comptroller General shall submit a report to the Committee on

S. 2328—48

Small Business and Entrepreneurship of the Senate and the Committee on Small Business of the House of Representatives that includes—

(A) an assessment of the criteria and guidance issued by the Administrator of the Small Business Administration in accordance with paragraph (1);

(B) an assessment of the implementation of the criteria and guidance issued by the Administrator of the Small Business Administration in accordance with paragraph (1);

(C) an assessment as to whether these measures have successfully ensured that only qualified HUBZone small business concerns are participating in the HUBZone program under section 31 of the Small Business Act (15 U.S.C. 657a);

(D) an assessment as to whether the reforms made by the criteria and guidance implemented under paragraph (1) have resulted in job creation in the Commonwealth of Puerto Rico; and

(E) recommendations on how to improve controls in the HUBZone program.

**SEC. 413. DETERMINATION ON DEBT.**

Nothing in this Act shall be interpreted to restrict—

(1) the ability of the Puerto Rico Commission for the Comprehensive Audit of the Public Credit to file its reports; or

(2) the review and consideration of the Puerto Rico Commission's findings by Puerto Rico's government or an Oversight Board for Puerto Rico established under section 101.

# TITLE V—PUERTO RICO INFRASTRUCTURE REVITALIZATION

**SEC. 501. DEFINITIONS.**

In this title:

(1) ACT 76.—The term "Act 76" means Puerto Rico Act 76–2000 (3 L.P.R.A. 1931 et seq.), approved on May 5, 2000, as amended.

(2) CRITICAL PROJECT.—The term "Critical Project" means a project identified under the provisions of this title and intimately related to addressing an emergency whose approval, consideration, permitting, and implementation shall be expedited and streamlined according to the statutory process provided by Act 76, or otherwise adopted pursuant to this title.

(3) ENERGY COMMISSION OF PUERTO RICO.—The term "Energy Commission of Puerto Rico" means the Puerto Rico Energy Commission as established by Subtitle B of Puerto Rico Act 57–2014.

(4) ENERGY PROJECTS.—The term "Energy Projects" means those projects addressing the generation, distribution, or transmission of energy.

(5) EMERGENCY.—The term "emergency" means any event or grave problem of deterioration in the physical infrastructure for the rendering of essential services to the people, or that endangers the life, public health, or safety of the population or of a sensitive ecosystem, or as otherwise defined by section

S. 2328—49

1 of Act 76 (3 L.P.R.A. 1931). This shall include problems in the physical infrastructure for energy, water, sewer, solid waste, highways or roads, ports, telecommunications, and other similar infrastructure.

(6) ENVIRONMENTAL QUALITY BOARD.—The term "Environmental Quality Board" means the Puerto Rico Environmental Quality Board, a board within the executive branch of the Government of Puerto Rico as established by section 7 of Puerto Rico Act 416–2004 (12 L.P.R.A. 8002a).

(7) EXPEDITED PERMITTING PROCESS.—The term "Expedited Permitting Process" means a Puerto Rico Agency's alternate procedures, conditions, and terms mirroring those established under Act 76 (3 L.P.R.A. 1932) and pursuant to this title shall not apply to any Federal law, statute, or requirement.

(8) GOVERNOR.—The term "Governor" means the Governor of Puerto Rico.

(9) INTERAGENCY ENVIRONMENTAL SUBCOMMITTEE.—The term "Interagency Environmental Subcommittee" means the Interagency Subcommittee on Expedited Environmental Regulations as further described by section 504.

(10) LEGISLATURE.—The term "Legislature" means the Legislature of Puerto Rico.

(11) PLANNING BOARD.—The term "Planning Board" means the Puerto Rico Planning Board, a board within the executive branch of the Government of Puerto Rico established by Puerto Rico Act 75–1975 (23 L.P.R.A. 62 et seq.).

(12) PROJECT SPONSOR.—The term "Project Sponsor" means a Puerto Rico Agency or private party proposing the development of an existing, ongoing, or new infrastructure project or Energy Project.

(13) PUERTO RICO AGENCY OR AGENCIES.—The terms "Puerto Rico Agency" or "Puerto Rico Agencies" means any board, body, board of examiners, public corporation, commission, independent office, division, administration, bureau, department, authority, official, person, entity, municipality, or any instrumentality of Puerto Rico, or an administrative body authorized by law to perform duties of regulating, investigating, or that may issue a decision, or with the power to issue licenses, certificates, permits, concessions, accreditations, privileges, franchises, except the Senate and the House of Representatives of the Legislature and the judicial branch.

(14) PUERTO RICO ELECTRIC POWER AUTHORITY.—The term "Puerto Rico Electric Power Authority" means the Puerto Rico Electric Power Authority established by Puerto Rico Act 83–1941.

**SEC. 502. POSITION OF REVITALIZATION COORDINATOR.**

(a) ESTABLISHMENT.—There is established, under the Oversight Board, the position of the Revitalization Coordinator.

(b) APPOINTMENT.—

(1) IN GENERAL.—The Revitalization Coordinator shall be appointed by the Governor as follows:

(A) Prior to the appointment of the Revitalization Coordinator and within 60 days of the appointment of the full membership of the Oversight Board, the Oversight Board shall submit to the Governor no less than three nominees for appointment.

S. 2328—50

(B) In consultation with the Oversight Board, not later than 10 days after receiving the nominations under subparagraph (A), the Governor shall appoint one of the nominees as the Revitalization Coordinator. Such appointment shall be effective immediately.

(C) If the Governor fails to select a Revitalization Coordinator, the Oversight Board shall, by majority vote, appoint a Revitalization Coordinator from the list of nominees provided under paragraph (A).

(2) QUALIFICATIONS.—In selecting nominees under paragraph (1)(A), the Oversight Board shall only nominate persons who—

(A) have substantial knowledge and expertise in the planning, predevelopment, financing, development, operations, engineering, or market participation of infrastructure projects, provided that stronger consideration may be given to candidates who have experience with Energy Projects and the laws and regulations of Puerto Rico that may be subject to an Expedited Permitting Process;

(B) does not currently provide goods or services to the government of Puerto Rico (and, as applicable, is not the spouse, parent, child, or sibling of a person who provides or has provided goods and services to the government of Puerto Rico in the preceding 3 calendar years); and

(C) shall not be an officer, employee of, or former officer or employee of the government of Puerto Rico in the preceding 3 calendar years.

(3) COMPENSATION.—The Revitalization Coordinator shall be compensated at an annual rate determined by the Oversight Board sufficient in the judgment of the Oversight Board to obtain the services of a person with the skills and experience required to discharge the duties of the position, but such compensation shall not exceed the annual salary of the Executive Director.

(c) ASSIGNMENT OF PERSONNEL.—The Executive Director of the Oversight Board may assign Oversight Board personnel to assist the Revitalization Coordinator.

(d) REMOVAL.—

(1) IN GENERAL.—The Revitalization Coordinator may be removed for any reason, in the Oversight Board's discretion.

(2) TERMINATION OF POSITION.—Upon the termination of the Oversight Board pursuant to section 209 of this Act, the position of the Revitalization Coordinator shall terminate.

SEC. 503. CRITICAL PROJECTS.

(a) IDENTIFICATION OF PROJECTS.—

(1) PROJECT SUBMISSION.—Any Project Sponsor may submit, so long as the Oversight Board is in operation, any existing, ongoing, or proposed project to the Revitalization Coordinator. The Revitalization Coordinator shall require such submission to include—

(A) the impact the project will have on an emergency;

(B) the availability of immediate private capital or other funds, including loan guarantees, loans, or grants to implement, operate, or maintain the project;

S. 2328—51

(C) the cost of the project and amount of Puerto Rico government funds, if any, necessary to complete and maintain the project;

(D) the environmental and economic benefits provided by the project, including the number of jobs to be created that will be held by residents of Puerto Rico and the expected economic impact, including the impact on ratepayers, if applicable;

(E) the status of the project if it is existing or ongoing; and

(F) in addition to the requirements found in subparagraphs (A) through (E), the Revitalization Coordinator may require such submission to include any or all of the following criteria that assess how the project will—

(i) reduce reliance on oil for electric generation in Puerto Rico;

(ii) improve performance of energy infrastructure and overall energy efficiency;

(iii) expedite the diversification and conversion of fuel sources for electric generation from oil to natural gas and renewables in Puerto Rico as defined under applicable Puerto Rico laws;

(iv) promote the development and utilization of energy sources found on Puerto Rico;

(v) contribute to transitioning to privatized generation capacities in Puerto Rico;

(vi) support the Energy Commission of Puerto Rico in achievement of its goal of reducing energy costs and ensuring affordable energy rates for consumers and business; or

(vii) achieve in whole or in part the recommendations, if feasible, of the study in section 505(d) of this title to the extent such study is completed and not inconsistent with studies or plans otherwise required under Puerto Rico laws.

(2) IDENTIFICATION OF RELEVANT PUERTO RICO AGENCIES.—Within 20 days of receiving a project submission under paragraph (1), the Revitalization Coordinator shall, in consultation with the Governor, identify all Puerto Rico Agencies that will have a role in the permitting, approval, authorizing, or other activity related to the development of such project submission.

(3) EXPEDITED PERMITTING PROCESS.—

(A) SUBMISSION OF EXPEDITED PERMITTING PROCESS.—Not later than 20 days after receiving a project submission, each Puerto Rico Agency identified in paragraph (1) shall submit to the Revitalization Coordinator the Agency's Expedited Permitting Process.

(B) FAILURE TO PROVIDE EXPEDITED PERMITTING PROCESS.—If a Puerto Rico Agency fails to provide an Expedited Permitting Process within 20 days of receiving a project submission, the Revitalization Coordinator shall consult with the Governor to develop within 20 days an Expedited Permitting Process for the Agency.

(C) IMPLEMENTATION AND PRIORITIZATION.—The Revitalization Coordinator shall require Puerto Rico Agencies to implement the Expedited Permitting Process for Critical Projects. Critical Projects shall be prioritized to

S. 2328—52

the maximum extent possible in each Puerto Rico Agency regardless of any agreements transferring or delegating permitting authority to any other Territorial Instrumentality or municipality.

(b) CRITICAL PROJECT REPORT.—

(1) IN GENERAL.—For each submitted project, the Revitalization Coordinator in consultation with the Governor and relevant Puerto Rico Agencies identified in subsection (a)(2) shall develop a Critical Project Report within 60 days of the project submission, which shall include:

(A) An assessment of how well the project meets the criteria in subsection (a)(1).

(B) A recommendation by the Governor whether the project should be considered a Critical Project. If the Governor fails to provide a recommendation during the development of the Critical Project Report, the failure shall constitute a concurrence with the Revitalization Coordinator's recommendation in subparagraph (E).

(C) In the case of a project that may affect the implementation of Land-Use Plans, as defined by Puerto Rico Act 550–2004, a determination by the Planning Board will be required within the 60-day timeframe. If the Planning Board determines such project will be inconsistent with relevant Land-Use Plans, then the project will be deemed ineligible for Critical Project designation.

(D) In the case of an Energy Project that will connect with the Puerto Rico Electric Power Authority's transmission or distribution facilities, a recommendation by the Energy Commission of Puerto Rico, if the Energy Commission determines such Energy Project will affect an approved Integrated Resource Plan, as defined under Puerto Rico Act 54–2014. If the Energy Commission determines the Energy Project will adversely affect an approved Integrated Resource Plan, then the Energy Commission shall provide the reasons for such determination and the Energy Project shall be ineligible for Critical Project designation, provided that such determination must be made during the 60-day timeframe for the development of the Critical Project Report.

(E) A recommendation by the Revitalization Coordinator whether the project should be considered a Critical Project.

(2) PUBLIC INVOLVEMENT.—Immediately following the completion of the Critical Project Report, the Revitalization Coordinator shall make such Critical Project Report public and allow a period of 30 days for the submission of comments by residents of Puerto Rico specifically on matters relating to the designation of a project as a Critical Project. The Revitalization Coordinator shall respond to the comments within 30 days of closing the coming period and make the responses publicly available.

(3) SUBMISSION TO OVERSIGHT BOARD.—Not later than 5 days after the Revitalization Coordinator has responded to the comments under paragraph (2), the Revitalization Coordinator shall submit the Critical Project Report to the Oversight Board.

(c) ACTION BY THE OVERSIGHT BOARD.—Not later than 30 days after receiving the Critical Project Report, the Oversight Board,

S. 2328—53

by majority vote, shall approve or disapprove the project as a Critical Project, if the Oversight Board—

(1) approves the project, the project shall be deemed a Critical Project; and

(2) disapproves the project, the Oversight Board shall submit to the Revitalization Coordinator in writing the reasons for disapproval.

### SEC. 504. MISCELLANEOUS PROVISIONS.

(a) CREATION OF INTERAGENCY ENVIRONMENTAL SUB-COMMITTEE.—

(1) ESTABLISHMENT.—Not later than 60 days after the date on which the Revitalization Coordinator is appointed, the Interagency Environmental Subcommittee shall be established and shall evaluate environmental documents required under Puerto Rico law for any Critical Project within the Expedited Permitting Process established by the Revitalization Coordinator under section 503(a)(3).

(2) COMPOSITION.—The Interagency Environmental Subcommittee shall consist of the Revitalization Coordinator, and a representative selected by the Governor in consultation with the Revitalization Coordinator representing each of the following agencies: The Environmental Quality Board, the Planning Board, the Puerto Rico Department of Natural and Environmental Resources, and any other Puerto Rico Agency determined to be relevant by the Revitalization Coordinator.

(b) LENGTH OF EXPEDITED PERMITTING PROCESS.—With respect to a Puerto Rico Agency's activities related only to a Critical Project, such Puerto Rico Agency shall operate as if the Governor has declared an emergency pursuant to section 2 of Act 76 (3 L.P.R.A. 1932). Section 12 of Act 76 (3 L.P.R.A. 1942) shall not be applicable to Critical Projects. Furthermore, any transactions, processes, projects, works, or programs essential to the completion of a Critical Project shall continue to be processed and completed under such Expedited Permitting Process regardless of the termination of the Oversight Board under section 209.

(c) EXPEDITED PERMITTING PROCESS COMPLIANCE.—

(1) WRITTEN NOTICE.—A Critical Project Sponsor may in writing notify the Oversight Board of the failure of a Puerto Rico Agency or the Revitalization Coordinator to adhere to the Expedited Permitting Process.

(2) FINDING OF FAILURE.—If the Oversight Board finds either the Puerto Rico Agency or Revitalization Coordinator has failed to adhere to the Expedited Permitting Process, the Oversight Board shall direct the offending party to comply with the Expedited Permitting Process. The Oversight Board may take such enforcement action as necessary as provided by section 104(l).

(d) REVIEW OF LEGISLATURE ACTS.—

(1) SUBMISSION OF ACTS TO OVERSIGHT BOARD.—Pursuant to section 204(a), the Governor shall submit to the Oversight Board any law duly enacted during any fiscal year in which the Oversight Board is in operation that may affect the Expedited Permitting Process.

(2) FINDING OF OVERSIGHT BOARD.—Upon receipt of a law under paragraph (1), the Oversight Board shall promptly review

S. 2328—54

whether the law would adversely impact the Expedited Permitting Process and, upon such a finding, the Oversight Board may deem such law to be significantly inconsistent with the applicable Fiscal Plan.

(e) ESTABLISHMENT OF CERTAIN TERMS AND CONDITIONS.—No Puerto Rico Agency may include in any certificate, right-of-way, permit, lease, or other authorization issued for a Critical Project any term or condition that may be permitted, but is not required, by any applicable Puerto Rico law, if the Revitalization Coordinator determines the term or condition would prevent or impair the expeditious construction, operation, or expansion of the Critical Project. The Revitalization Coordinator may request a Puerto Rico Agency to include in any certificate, right-of-way, permit, lease, or other authorization, a term or condition that may be permitted in accordance with applicable laws if the Revitalization Coordinator determines such inclusion would support the expeditious construction, operation, or expansion of any Critical Project.

(f) DISCLOSURE.—All Critical Project reports, and justifications for approval or rejection of Critical Project status, shall be made publicly available online within 5 days of receipt or completion.

SEC. 505. FEDERAL AGENCY REQUIREMENTS.

(a) FEDERAL POINTS OF CONTACT.—At the request of the Revitalization Coordinator and within 30 days of receiving such a request, each Federal agency with jurisdiction over the permitting, or administrative or environmental review of private or public projects in Puerto Rico, shall name a Point of Contact who will serve as that agency's liaison with the Revitalization Coordinator.

(b) FEDERAL GRANTS AND LOANS.—For each Critical Project with a pending or potential Federal grant, loan, or loan guarantee application, the Revitalization Coordinator and the relevant Point of Contact shall cooperate with each other to ensure expeditious review of such application.

(c) EXPEDITED REVIEWS AND ACTIONS OF FEDERAL AGENCIES.— All reviews conducted and actions taken by any Federal agency relating to a Critical Project shall be expedited in a manner consistent with completion of the necessary reviews and approvals by the deadlines under the Expedited Permitting Process, but in no way shall the deadlines established through the Expedited Permitting Process be binding on any Federal agency.

(d) TRANSFER OF STUDY OF ELECTRIC RATES.—Section 9 of the Consolidated and Further Continuing Appropriations Act, 2015 (48 U.S.C. 1492a) is amended—

(1) in subsection (a)(5), by inserting ", except that, with respect to Puerto Rico, the term means, the Secretary of Energy" after "Secretary of the Interior"; and

(2) in subsection (b)—

(A) by inserting "(except in the case of Puerto Rico, in which case not later than 270 days after the date of enactment of the Puerto Rico Oversight, Management, and Economic Stability Act)" after "of this Act"; and

(B) by inserting "(except in the case of Puerto Rico)" after "Empowering Insular Communities activity".

SEC. 506. JUDICIAL REVIEW.

(a) DEADLINE FOR FILING OF A CLAIM.—A claim arising under this title must be brought no later than 30 days after the date of the decision or action giving rise to the claim.

S. 2328—55

(b) EXPEDITED CONSIDERATION.—The District Court for the District of Puerto Rico shall set any action brought under this title for expedited consideration, taking into account the interest of enhancing Puerto Rico's infrastructure for electricity, water and sewer services, roads and bridges, ports, and solid waste management to achieve compliance with local and Federal environmental laws, regulations, and policies while ensuring the continuity of adequate services to the people of Puerto Rico and Puerto Rico's sustainable economic development.

**SEC. 507. SAVINGS CLAUSE.**

Nothing in this title is intended to change or alter any Federal legal requirements or laws.

# TITLE VI—CREDITOR COLLECTIVE ACTION

**SEC. 601. CREDITOR COLLECTIVE ACTION.**

(a) DEFINITIONS.—In this title:

(1) ADMINISTRATIVE SUPERVISOR.—The term "Administrative Supervisor" means the Oversight Board established under section 101.

(2) AUTHORIZED TERRITORIAL INSTRUMENTALITY.—The term "Authorized Territorial Instrumentality" means a covered territorial instrumentality authorized in accordance with subsection (e).

(3) CALCULATION AGENT.—The term "Calculation Agent" means a calculation agent appointed in accordance with subsection (k).

(4) CAPITAL APPRECIATION BOND.—The term "Capital Appreciation Bond" means a Bond that does not pay interest on a current basis, but for which interest amounts are added to principal over time as specified in the relevant offering materials for such Bond, including that the accreted interest amount added to principal increases daily.

(5) CONVERTIBLE CAPITAL APPRECIATION BOND.—The term "Convertible Capital Appreciation Bond" means a Bond that does not pay interest on a current basis, but for which interest amounts are added to principal over time as specified in the relevant offering materials and which converts to a current pay bond on a future date.

(6) INFORMATION AGENT.—The term "Information Agent" means an information agent appointed in accordance with subsection (i).

(7) INSURED BOND.—The term "Insured Bond" means a bond subject to a financial guarantee or similar insurance contract, policy or surety issued by a monoline insurer.

(8) ISSUER.—The term "Issuer" means, as applicable, the Territory Government Issuer or an Authorized Territorial Instrumentality that has issued or guaranteed at least one Bond that is Outstanding.

(9) MODIFICATION.—The term "Modification" means any modification, amendment, supplement or waiver affecting one or more series of Bonds, including those effected by way of exchange, repurchase, conversion, or substitution.

S. 2328—56

(10) OUTSTANDING.—The term "Outstanding," in the context of the principal amount of Bonds, shall be determined in accordance with subsection (b).

(11) OUTSTANDING PRINCIPAL.—The term "Outstanding Principal" means—

(A) for a Bond that is not a Capital Appreciation Bond or a Convertible Capital Appreciation Bond, the outstanding principal amount of such Bond; and

(B) for a Bond that is a Capital Appreciation Bond or a Convertible Capital Appreciation Bond, the current accreted value of such Capital Appreciation Bond or a Convertible Capital Appreciation Bond, as applicable.

(12) POOL.—The term "Pool" means a pool established in accordance with subsection (d).

(13) QUALIFYING MODIFICATION.—The term "Qualifying Modification" means a Modification proposed in accordance with subsection (g).

(14) SECURED POOL.—The term "Secured Pool" means a Pool established in accordance with subsection (d) consisting only of Bonds that are secured by a lien on property, provided that the inclusion of a Bond Claim in such Pool shall not in any way limit or prejudice the right of the Issuer, the Administrative Supervisor, or any creditor to recharacterize or challenge such Bond Claim, or any purported lien securing such Bond Claim, in any other manner in any subsequent proceeding in the event a proposed Qualifying Modification is not consummated.

(15) TERRITORY GOVERNMENT ISSUER.—The term "Territory Government Issuer" means the Government of Puerto Rico or such covered territory for which an Oversight Board has been established pursuant to section 101.

(b) OUTSTANDING BONDS.—In determining whether holders of the requisite principal amount of Outstanding Bonds have voted in favor of, or consented to, a proposed Qualifying Modification, a Bond will be deemed not to be outstanding, and may not be counted in a vote or consent solicitation for or against a proposed Qualifying Modification, if on the record date for the proposed Qualifying Modification—

(1) the Bond has previously been cancelled or delivered for cancellation or is held for reissuance but has not been reissued;

(2) the Bond has previously been called for redemption in accordance with its terms or previously become due and payable at maturity or otherwise and the Issuer has previously satisfied its obligation to make, or provide for, all payments due in respect of the Bond in accordance with its terms;

(3) the Bond has been substituted with a security of another series; or

(4) the Bond is held by the Issuer or by an Authorized Territorial Instrumentality of the Territory Government Issuer or by a corporation, trust or other legal entity that is controlled by the Issuer or an Authorized Territorial Instrumentality of the Territory Government Issuer, as applicable.

For purposes of this subsection, a corporation, trust or other legal entity is controlled by the Issuer or by an Authorized Territorial Instrumentality of the Territory Government Issuer if the Issuer or an Authorized Territorial Instrumentality of the Territory

S. 2328—57

Government Issuer, as applicable, has the power, directly or indirectly, through the ownership of voting securities or other ownership interests, by contract or otherwise, to direct the management of or elect or appoint a majority of the board of directors or other persons performing similar functions in lieu of, or in addition to, the board of directors of that legal entity.

(c) CERTIFICATION OF DISENFRANCHISED BONDS.—Prior to any vote on, or consent solicitation for, a Qualifying Modification, the Issuer shall deliver to the Calculation Agent a certificate signed by an authorized representative of the Issuer specifying any Bonds that are deemed not to be Outstanding for the purpose of subsection (b) above.

(d) DETERMINATION OF POOLS FOR VOTING.—The Administrative Supervisor, in consultation with the Issuer, shall establish Pools in accordance with the following:

(1) Not less than one Pool shall be established for each Issuer.

(2) A Pool that contains one or more Bonds that are secured by a lien on property shall be a Secured Pool.

(3) The Administrative Supervisor shall establish Pools according to the following principles:

(A) For each Issuer that has issued multiple Bonds that are distinguished by specific provisions governing priority or security arrangements, including Bonds that have been issued as general obligations of the Territory Government Issuer to which the Territory Government Issuer pledged the full or good faith, credit, and taxing power of the Territory Government Issuer, separate Pools shall be established corresponding to the relative priority or security arrangements of each holder of Bonds against each Issuer, as applicable, provided, however, that the term "priority" as used in this section shall not be understood to mean differing payment or maturity dates.

(B) For each Issuer that has issued senior and subordinated Bonds, separate Pools shall be established for the senior and subordinated Bonds corresponding to the relative priority or security arrangements.

(C) For each Issuer that has issued multiple Bonds, for at least some of which a guarantee of repayment has been provided by the Territory Government Issuer, separate Pools shall be established for such guaranteed and non-guaranteed Bonds.

(D) Subject to the other requirements contained in this section, for each Issuer that has issued multiple Bonds, for at least some of which a dedicated revenue stream has been pledged for repayment, separate Pools for such Issuer shall be established as follows—

(i) for each dedicated revenue stream that has been pledged for repayment, not less than one Secured Pool for Bonds for which such revenue stream has been pledged, and separate Secured Pools shall be established for Bonds of different priority; and

(ii) not less than one Pool for all other Bonds issued by the Issuer for which a dedicated revenue stream has not been pledged for repayment.

S. 2328—58

(E) The Administrative Supervisor shall not place into separate Pools Bonds of the same Issuer that have identical rights in security or priority.

(4) Notwithstanding the preceding provisions of this subsection, solely with respect to a preexisting voluntary agreement as described in section 104(i)(3) of this Act, such voluntary agreement may classify Insured Bonds and uninsured bonds in different Pools and provide different treatment thereof so long as the preexisting voluntary agreement has been agreed to by—

(A) holders of a majority in amount of all uninsured bonds outstanding in the modified Pool; and

(B) holders (including insurers with power to vote) of a majority in amount of all Insured Bonds.

(e) AUTHORIZATION OF TERRITORY INSTRUMENTALITIES.—A covered territorial instrumentality is an Authorized Territorial Instrumentality if it has been specifically authorized to be eligible to avail itself of the procedures under this section by the Administrative Supervisor.

(f) INFORMATION DELIVERY REQUIREMENT.—Before solicitation of acceptance or rejection of a Modification under subsection (h), the Issuer shall provide to the Calculation Agent, the Information Agent, and the Administrative Supervisor, the following information—

(1) a description of the Issuer's economic and financial circumstances which are, in the Issuer's opinion, relevant to the request for the proposed Qualifying Modification, a description of the Issuer's existing debts, a description of the impact of the proposed Qualifying Modification on the territory's or its territorial instrumentalities' public debt;

(2) if the Issuer is seeking Modifications affecting any other Pools of Bonds of the Territory Government Issuer or its Authorized Territorial Instrumentalities, a description of such other Modifications;

(3) if a Fiscal Plan with respect to such Issuer has been certified, the applicable Fiscal Plan certified in accordance with section 201; and

(4) such other information as may be required under applicable securities laws.

(g) QUALIFYING MODIFICATION.—A Modification is a Qualifying Modification if one of the following processes has occurred:

(1) CONSULTATION PROCESS.—

(A) the Issuer proposing the Modification has consulted with holders of Bonds in each Pool of such Issuer prior to soliciting a vote on such Modification;

(B) each exchanging, repurchasing, converting, or substituting holder of Bonds of any series in a Pool affected by that Modification is offered the same amount of consideration per amount of principal, the same amount of consideration per amount of interest accrued but unpaid and the same amount of consideration per amount of past due interest, respectively, as that offered to each other exchanging, repurchasing, converting, or substituting holder of Bonds of any series in a Pool affected by that Modification (or, where a menu of instruments or other consideration is offered, each exchanging, repurchasing, converting, or substituting holder of Bonds of any series

in a Pool affected by that Modification is offered the same amount of consideration per amount of principal, the same amount of consideration per amount of interest accrued but unpaid and the same amount of consideration per amount of past due interest, respectively, as that offered to each other exchanging, repurchasing, converting, or substituting holder of Bonds of any series in a Pool affected by that Modification electing the same option under such menu of instruments); and

(C) the Modification is certified by the Administrative Supervisor as being consistent with the requirements set forth in section 104(i)(1) and is in the best interests of the creditors and is feasible.

(2) VOLUNTARY AGREEMENT PROCESS.—The Administrative Supervisor has issued a certification that—

(A) the requirements set forth in section 104(i)(2) and section 601(g)(1)(B) have been satisfied; or

(B) the Modification is consistent with a restructuring support or similar agreement to be implemented pursuant to the law of the covered territory executed by the Issuer prior to the establishment of an Oversight Board for the relevant territory.

(h) SOLICITATION.—

(1) Upon receipt of a certification from the Administrative Supervisor under subsection (g), the Information Agent shall, if practical and except as provided in paragraph (2), submit to the holders of any Outstanding Bonds of the relevant Issuer, including holders of the right to vote such Outstanding Bonds, the information submitted by the relevant Issuer under subsection (f)(1) in order to solicit the vote of such holders to approve or reject the Qualifying Modification.

(2) If the Information Agent is unable to identify the address of holders of any Outstanding Bonds of the relevant Issuer, the Information Agent may solicit the vote or consent of such holders by—

(A) delivering the solicitation to the paying agent for any such Issuer or Depository Trust Corporation if it serves as the clearing system for any of the Issuer's Outstanding Bonds; or

(B) delivering or publishing the solicitation by whatever additional means the Information Agent, after consultation with the Issuer, deems necessary and appropriate in order to make a reasonable effort to inform holders of any Outstanding Bonds of the Issuer which may include, notice by mail, publication in electronic media, publication on a website of the Issuer, or publication in newspapers of national circulation in the United States and in a newspaper of general circulation in the territory.

(i) WHO MAY PROPOSE A MODIFICATION.—For each Issuer, a Modification may be proposed to the Administrative Supervisor by the Issuer or by one or more holders of the right to vote the Issuer's Outstanding Bonds. To the extent a Modification proposed by one or more holders of the right to vote Outstanding Bonds otherwise complies with the requirements of this title, the Administrative Supervisor may accept such Modification on behalf of the Issuer, in which case the Administrative Supervisor will

S. 2328—60

instruct the Issuer to provide the information required in subsection (f).

(j) VOTING.—For each Issuer, any Qualifying Modification may be made with the affirmative vote of the holders of the right to vote at least two-thirds of the Outstanding Principal amount of the Outstanding Bonds in each Pool that have voted to approve or reject the Qualifying Modification, provided that holders of the right to vote not less than a majority of the aggregate Outstanding Principal amount of all the Outstanding Bonds in each Pool have voted to approve the Qualifying Modification. The holder of the right to vote the Outstanding Bonds that are Insured Bonds shall be the monoline insurer insuring such Insured Bond to the extent such insurer has granted the right to vote Insured Bonds for purposes of directing remedies or consenting to proposed amendments or modifications as provided in the applicable documents pursuant to which such Insured Bond was issued and insured.

(k) CALCULATION AGENT.—For the purpose of calculating the principal amount of the Bonds of any series eligible to participate in such a vote or consent solicitation and tabulating such votes or consents, the Territory Government Issuer may appoint a Calculation Agent for each Pool reasonably acceptable to the Administrative Supervisor.

(l) INFORMATION AGENT.—For the purpose of administering a vote of holders of Bonds, including the holders of the right to vote such Bonds, or seeking the consent of holder of Bonds, including the holders of the right to vote such Bonds, to a written action under this section, the Territory Government Issuer may appoint an Information Agent for each Pool reasonably acceptable to the Administrative Supervisor.

(m) BINDING EFFECT.—

(1) A Qualifying Modification will be conclusive and binding on all holders of Bonds whether or not they have given such consent, and on all future holders of those Bonds whether or not notation of such Qualifying Modification is made upon the Bonds, if—

(A) the holders of the right to vote the Outstanding Bonds in every Pool of the Issuer pursuant to subsection (j) have consented to or approved the Qualifying Modification;

(B) the Administrative Supervisor certifies that—

(i) the voting requirements of this section have been satisfied;

(ii) the Qualifying Modification complies with the requirements set forth in section 104(i)(1); and

(iii) except for such conditions that have been identified in the Qualifying Modification as being non-waivable, any conditions on the effectiveness of the Qualifying Modification have been satisfied or, in the Administrative Supervisor's sole discretion, satisfaction of such conditions has been waived;

(C) with respect to a Bond Claim that is secured by a lien on property and with respect to which the holder of such Bond Claim has rejected or not consented to the Qualifying Modification, the holder of such Bond—

(i) retains the lien securing such Bond Claims; or

S. 2328—61

(ii) receives on account of such Bond Claim, through deferred cash payments, substitute collateral, or otherwise, at least the equivalent value of the lesser of the amount of the Bond Claim or of the collateral securing such Bond Claim; and

(D) the district court for the territory or, for any territory that does not have a district court, the United States District Court for the District of Hawaii, has, after reviewing an application submitted to it by the applicable Issuer for an order approving the Qualifying Modification, entered an order that the requirements of this section have been satisfied.

(2) Upon the entry of an order under paragraph (1)(D), the conclusive and binding Qualifying Modification shall be valid and binding on any person or entity asserting claims or other rights, including a beneficial interest (directly or indirectly, as principal, agent, counterpart, subrogee, insurer or otherwise) in respect of Bonds subject to the Qualifying Modification, any trustee, any collateral agent, any indenture trustee, any fiscal agent, and any bank that receives or holds funds related to such Bonds. All property of an Issuer for which an order has been entered under paragraph (1)(D) shall vest in the Issuer free and clear of all claims in respect of any Bonds of any other Issuer. Such Qualifying Modification will be full, final, complete, binding, and conclusive as to the territorial government Issuer, other territorial instrumentalities of the territorial government Issuer, and any creditors of such entities, and should not be subject to any collateral attack or other challenge by any such entities in any court or other forum. Other than as provided herein, the foregoing shall not prejudice the rights and claims of any party that insured the Bonds, including the right to assert claims under the Bonds as modified following any payment under the insurance policy, and no claim or right that may be asserted by any party in a capacity other than holder of a Bond affected by the Qualifying Modification shall be satisfied, released, discharged, or enjoined by this provision.

(n) JUDICIAL REVIEW.—

(1) The district court for the territory or, for any territory that does not have a district court, the United States District Court for the District of Hawaii shall have original and exclusive jurisdiction over civil actions arising under this section.

(2) Notwithstanding section 106(e), there shall be a cause of action to challenge unlawful application of this section.

(3) The district court shall nullify a Modification and any effects on the rights of the holders of Bonds resulting from such Modification if and only if the district court determines that such Modification is manifestly inconsistent with this section.

**SEC. 602. APPLICABLE LAW.**

In any judicial proceeding regarding this title, Federal, State, or territorial laws of the United States, as applicable, shall govern and be applied without regard or reference to any law of any international or foreign jurisdiction.

S. 2328—62

# TITLE VII—SENSE OF CONGRESS REGARDING PERMANENT, PRO-GROWTH FISCAL REFORMS

### SEC. 701. SENSE OF CONGRESS REGARDING PERMANENT, PRO-GROWTH FISCAL REFORMS.

It is the sense of the Congress that any durable solution for Puerto Rico's fiscal and economic crisis should include permanent, pro-growth fiscal reforms that feature, among other elements, a free flow of capital between possessions of the United States and the rest of the United States.

*Speaker of the House of Representatives.*

*Vice President of the United States and*
*President of the Senate.*